CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Defendants,
MARACHART SHIPPING CO. LTD.;
SWORD TRADING S.A., AMBIENT
SHIPHOLDING CO. S.A. and TOUGH
TRADER MARITIME PTE LTD.
366 Main Street
Port Washington, New York 110050
Telephone:   516-767-3600
Telefax:       516-767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
FAR EASTERN SHIPPING CO., PLC

            Plaintiff,       07 CV 9887 (PAC)

  - against -


SEA TRANSPORT CONTRACTORS LIMITED,
MARACHART SHIPPING CO., LTD.,
SWORD TRADING S.A., AMBIENT
SHIPHOLDING CO., S.A., and
TOUGH TRADER MARITIME PTE LTD.,

            Defendants.
-------------------------------------------------------------x

**DECLARATION OF ANASTASIOS RAISIS IN SUPPORT
OF MOTION TO VACATE PROCESS OF MARITIME ATTACHMENT**

ANASTASIOS G. RAISIS declares and states as follows:

**INTRODUCTION**

1. As set forth in ¶s 37 & 38 of the Amended Complaint, I am the sole shareholder and President of the Board of Directors of the Defendant, Sea Transport Contractors Ltd.

2. I am the legal representative of both Marachart Shipping Co Ltd and Sea Transport Contractors Ltd. in Greece. Neither of these companies was formed in Greece, but both are legally – but, separately – registered to do business in Greece.

3. In my experience, 99% of Greek shipping companies are off-shore entities registered in Greece under CL.89/1967. CL 89/1967 is a specific feature of the Greek law that was designed to further the Greek economy by encouraging shipping companies to keep their operations, and jobs, in Greece.

4. I am particularly familiar with the operations of defendants, Sea Transport Contractors Ltd. and Marachart Shipping Co., Ltd.

5. To a lesser extent, I am generally familiar with the operations of the remaining defendants Sword Trading S.A. ("Sword"), Ambient Shipholding Co. S.A. ("Ambient") and Tough Trader Maritime PTE Ltd. ("Tough Trader").

6. I present this declaration solely to address the allegations of Alter Ego as set forth in the Amended Complaint (dated 14 January 2008), and to specifically clarify the facts which, for the most part, are incorrectly stated, mischaracterized and misrepresented in the Amended Verified Complaint.

7.  I do not address the merits of the claims asserted by Plaintiff, FESCO, because the merits of such claims will be addressed in London either in arbitration or before the High Court, but, for the sake of good order, I do specifically reserve all rights to contest the merits of such claims.

### BACKGROUND

8.  As a preliminary point to address the allegation in ¶ 41 of the Amended Complaint, the "Raissis[1] Group of Companies" no longer exists. This "Group" originally consisted of my grandfather's company L. Raissis Shipping Agency in Beirut/Lebanon and Maraship (L. Raissis Sons) in Greece. After the bombing of L. Raissis Shipping Agency's offices in Beirut in 1975, the "Group" ceased to exist.

9.  Maraship (L. Raissis Sons), which later became Marachart Shipping Co Ltd., was the branch office of L. Raissis Shipping Agency in Greece. The office was opened in Greece in 1964, and it has been consistently doing business in Greece since that time.

### MARACHART

10. Marachart Shipping Co Ltd. ("Marachart") is actually a company organized and existing under the Laws of Cyprus, but it is legally registered in Greece under CL. 89/1967.

11. Marachart follows all corporate formalities that are part and parcel of its corporate existence, including articles of incorporation, issuance of stock, election of corporate directors and it maintains separate corporate records for itself.

---

[1] My family name is often spelled "Raissis" in English to achieve the correct pronunciation, but my official identity documents spell my family name as "Raisis" because that is the literal translation from Greek to Latin characters.

3

12. As set forth in ¶ 33 of the Amended Complaint, Marachart's place of business is at 5, Kapodistriou street, Metamorfosi, 144 52 Athens, Greece.

13. Since its inception, Marachart has been engaged in the shipping business as a broker and manager of ocean going dry cargo vessels.

14. Marachart does not operate as a charterer or a disponent owner of ocean going vessels meaning that it does not carry cargo for others.

15. Marachart does not own any ocean going vessels, but, in addition to its brokering business, Marachart has a ship management business whereby it provides commercial and technical management services to a number of dry cargo vessels for various vessel owning companies in exchange for the management of fees.

16. As a general proposition, Marachart earns revenue in the form of commissions from its brokering activities and in the form of management fees from its vessel management operations.

17. No funds are ever put into Marachart's accounts or taken out of Marachart's accounts for personal rather than corporate purposes.

### SEA TRANSPORT CONTRACTORS

18. Sea Transport Contractors Ltd. "STC" is not, nor has it ever been, a member of the Raissis Group of Companies.

19. I personally established STC in 1997 as a company that could enter into Contracts of Affreightment with the shippers of individual dry cargoes and, whereby, STC would carry such cargoes, meaning that STC would charter vessels to carry the cargoes in its capacity as charterer or disponent Owner of the vessels in exchange for payments of hire and/or freight.

20. STC is a company organized and existing under the Laws of Liberia, but it is legally registered in Greece under CL. 89/1967. STC does not have any parent companies or subsidiary companies, and STC follows all corporate formalities that are part and parcel of its corporate existence under the Laws of Liberia and Greece, including articles of incorporation, issuance of stock, election of corporate directors and it maintains separate corporate records for itself.

21. As a general proposition, STC earns revenue based on the freight differential between that which is paid by shippers of cargo and the freight or hire that STC has to pay to charter the carrying vessels from their owning companies.

22. No funds are ever put into STC's accounts or taken out of STC's accounts for personal rather than corporate purposes.

23. STC has never, and does not now, own any vessels and, unlike Marachart, STC does not provide commercial or technical management for vessels.

24. Contrary to the allegations set forth in ¶ 60 of the Amended Complaint, I did not establish STC so that the Raissis Group could charter vessels while attempting to shield the Group's assets. Instead, I established STC to pursue business opportunities that Marachart was neither structured for nor equipped to pursue. Indeed, Marachart never considered acting as a disponent owner, itself, because such activity would naturally raise conflicts with its other brokerage and management clients with whom relationships had been built over the course of its more than 40 years in the shipping business.

25. Contrary to the allegations set forth in ¶ 33 of the Amended Complaint, STC's place of business in Greece is not 5 Kapodistriou street, but is at 8 F. Ginosati Street and Ivis, 144 52 Athens, Greece. STC does not share an address or offices with Marachart or the remaining defendants Sword, Ambient or Tough Trader.

26. Contrary to the allegations set forth in ¶ 33, Marachart and STC do not share the same trading address, but Marachart is the broker for STC and, naturally, communications to STC are often sent to or from its broker.

27. Contrary to the allegations set forth in ¶ 34 of the Amended Complaint, George Raisis is not a shareholder of STC, but he is on the Board of Directors as is Mr. Mr. Christos Tolios.

28. The current board of directors of defendant STC consists of myself, Anastasios Raisis, Mr. George Raisis and Mr. Chiristos Tolios.

29. None of the employees of STC are, or were, employees of Marachart, Sword, Ambient or Tough Trader.

30. Neither Mr. George Raisis nor Mr. Christos Tolios were ever employees of STC, but they had been employees of Marachart. Both of them are retired from Marachart, and they have retired from well before STC ever chartered the M/V CHELYABINSK.

### THE RELATIONSHIP BETWEEN STC AND MARACHART

31. Marachart is not the parent of STC, nor is STC the parent of Marachart. On the contrary, STC and Marchart are two distinct stand alone business entities that are engaged in different aspects of the shipping business.

32. There is, of course, a commercial relationship between STC and Marachart in that I have always had STC use Marachart as its exclusive broker to fix, i.e. charter, vessels for the STC cargoes and/or contracts.

33. STC and Marachart do, however, always deal with each other at arms length in a manner that is consistent with any normal broker/client arrangement.

34. Other than providing its normal brokering services and making recommendations on market conditions or business opportunities, Marachart has absolutely no say in the operations or business decisions made by STC.

35. Contrary to the allegations set forth in ¶ 61, i & j, STC and Marachart do not commingle funds nor do they guarantee or pay debts of one another without adequate consideration.

36. The businesses of STC and Marachart, while complimentary, are completely different from each other and they make their own profits based on the revenues from the different services they provide to different clients.

37. Marachart has never guaranteed any debts of STC, and the only debts of STC that Marachart has ever paid were paid by Marachart in its capacity as agent for STC and STC's funds were always used as opposed to Marachart's.

38. STC does not have any property that was ever used by Marachart as its own and, additionally, STC does not have any property that was ever used by the remaining defendants, Sword, Ambient or Tough Trader.

39. STC and Marachart maintain separate books, maintain separate bank accounts and file separate tax returns.

### THE CHARTER OF THE M/V CHELYABINSK

40. With respect to the charter of the M/V CHELYABINSK, and consistent with its core business, STC had a contract with Rustal Trading to carry a cargo of rice to

Africa. Marachart, in its capacity as broker and a fully disclosed agent of STC, found the vessel to carry the rice for STC, negotiated the charter with FESCO on behalf of STC and, ultimately, "fixed" the M/V CHELYABINSK to carry the rice cargo for the account of STC.

41. Part of a broker's normal duties in the shipping business is to follow up on the operations of the vessels that are fixed on behalf a client such as STC while the vessel is carrying the cargo from one place to another. All of the shipping brokers that I am aware of, including Marachart, regularly perform such post-fixture operations as agents for their clients.

42. As part of its normal post-fixture duties, Marachart stayed involved with the M/V CHELYABINSK and, naturally, it was involved with the claims that have been asserted herein against STC. At all times, however, the Plaintiff FESCO knew that Marachart was acting as an agent for a disclosed principal, *i.e.* STC, and, therefore, it is disingenuous for FESCO to now claim in ¶ 63 of he Amended Complaint that STC was the agent for undisclosed principals, including Marchart, Sword, Ambient or Tough Trader. It was, in fact, the other way around with regard to STC and Marchart, FESCO knew that and FESCO's allegations to the contrary are nothing more than misrepresentations of fact.

43. As set forth in ¶ 43 of the Amended Complaint, Captain John Mavrommatis is an employee of Marachart, and his title is Port Captain and Operations Manager for dry cargo.

44. As part of his normal duties for Marachart, Captain John Mavrommatis monitors and overseas the operation of a voyage by a vessel that has been "fixed" by Marachart for a client/principal such as STC.

45. As alleged in Amended Complaint at ¶ 43, Marachart was giving instructions and communicating with FESCO in connection with the M/V

CHELYABINSK, but, contrary to the implications made by FESCO in its allegations and as FESCO well knows, all such communications were part of the arrangement between STC and its broker, Marachart, whereby Marachart was to follow-up the operations of all vessels it fixed for STC. FESCO's suggestion that such communications are suggestive of an alter ego relationship is irresponsible on the part of FESCO, and such a suggestion amounts to nothing more that misrepresentation of facts to the Court.

46. Contrary to the mischaracterization of the facts, as set forth in ¶ 43 of the Amended Complaint, Capt. John Mavrommatis was authorized by STC to sign any documents, including Letters of Indemnity ("LOI"), relevant to a charter on its behalf, as this was part of Marachart's post fixture services.

47. Again contrary to the mischaracterization of the facts, as set forth in ¶ 43 of the Amended Complaint, Captain John Mavrommatis was going to sign the LOI's requested by FESCO on behalf of STC, but FESCO would not accept LOI's signed by by Captain Mavrommatis and, instead, insisted that the LOI's be signed by an actual representative of STC. Consequently, I, Anastasios Raisis signed the LOI's given to FESCO, in my capacity as director of STC and the LOI's were issued on STC stationary. It is, therefore, disengenous for FESCO to allege that Marachart was the alter ego of STC when FESCO would not accept the authority of Marachart's employee to bind STC as an agent for STC. For the sake of good order, I attach herewith at Exhibit A copies of all the LOI's that I issued on behalf of STC.

48. Consistent with the brokerage agreement between STC and Marachart and Marachart's post-fixture duties, all communications with the M/V CHELYABINSK and the Owner of that vessel, Plaintiff FESCO, were strictly for and on behalf of the charterer, STC.

49. To address the specific allegation and mischaracterization of the facts regarding the payments of hire to the Plaintiff, as set forth in ¶ 42 of the Amended Complaint, for the most part, STC was collecting its own freights and hire for the

carriage of cargo on the M/V CHELYABINSK, but but on one or two occasions Marachart collected the freights and hires, as agent for STC, and Marachart remitted a payment of hire to FESCO from those funds in its capacity as agent/broker, but Marachart never commingled any funds belonging to STC with its own.

### THE REMAINING DEFENDANTS: SWORD, AMBIENT AND TOUGH TRADER

50. Sword, Ambient and Tough Trader, are all ship owning companies, but it is absolutely false to say they exist for the specific purpose of owning the non-existent "Raissis Group" assets and the allegations set forth in ¶ 59 of the Amended Complaint are not true.

51. In point of fact, neither Ambient nor Tough Trader even existed at the time that the dispute between STC and plaintiff, FESCO, arose and, therefore, FESCO's allegations as set forth in ¶ 59 of the Amended Complaint are preposterous.

52. Marachart was the manager of the M.V. GRAIN TRADER (owned by Sword Trading S.A.), and Marachart is now the manager of the M/V PIONEER TRADER (owned by Ambient Shipholding Co. S.A.) and the manager of the M/V TOUGH TRADER (owned by Tough Trader Maritime Pte. Ltd.).

53. Pursuant to standard ship management contracts, as detailed below, Marachart provided for the M/V GRAIN TRADER, and still does for the M/V PIONEER TRADER and M/V TOUGH TRADER, commercial and technical management services,

54. Neither Sword, Ambient nor Tough Trader are in any way related to or affiliated with STC, and Sword, Ambient and Tough Trader were not in any way, even remotely, involved with the charter party contract between Plaintiff, FESCO, and Defendant, STC.

55. Sword is a company organized under the Laws of Panama. The address and principal place of business for Sword is at Calle 41 Bella Vista, Edificio P.H.Bonanza Plaza, Panama 5, Republic of Panama.

56. Neither STC nor Marachart have ever shared the Panama address or offices with Sword nor have they shared overhead or employees

57. Sword was the owner of the vessel known as the M/V GRAIN TRADER.

58. Marachart Shipping Co Ltd was the Manager of M/V GRAIN TRADER pursuant to a Management Agreement between Marachart and Sword dated 28th August 2003.

59. Marachart is no longer the manager of the M/V GRAIN TRADER because the M/V GRAIN TRADER was sold by Sword in October 2007.

60. Contrary to the allegations contained in ¶ 49 of the Amended Complaint, Marachart was not the parent company of Sword nor was Marachart the beneficial owner of the M/V GRAIN TRADER. I cannot say where the Lloyd's MIU website received such information, but the information is wrong.

61. Ambient is a company organized and existing under the Laws of the Republic of Marshall Islands. The address and principal place of business for Ambient is at Trust Company Complex, Ajetalke Road, Ajetalke Island, Marshall Islands MH96960.

62. Neither STC nor Marachart have ever shared the Marshall Islands address or offices with Ambient nor have they shared overhead or employees.

63. Ambient is the owner of the vessel known as the M/V PIONEER TRADER.

11

64. Marachart is the Manager of M/V "PIONEER TRADER" pursuant to a Management Agreement between Marachart and Ambient dated 22nd February 2007.

65. Tough Trader is a company organized and existing under the Laws of Singapore. Tough Trader's business address is 4 Battery Road #15-01 Bank of China Building, Singapore, and it does not maintain an address or offices in Greece.

66. Neither STC nor Marachart share the Singapore address or offices with Tough Trader nor have they shared overhead or employees.

67. Tough Trader is the owner of the vessel known as M/V TOUGH TRADER.

68. Marachart is the manager of M/V TOUGH TRADER pursuant to a Management Agreement that was entered into by Marachart and Tough Trader and dated 13th November 2006.

69. Contrary to the mischaracterization of the facts set forth in ¶ 52 of the Amended Complaint, the fact that Marachart may have received or paid money for any of the vessels that are, or were, under its management is not uncommon and it does not support any inference the Marachart dominates either Sword, Ambient or Tough Trader. As part of its duties under the management agreements with the various vessel Owners, Marachart necessarily has to collect money earned by vessels for the owning companies and, likewise, it has to pay money on behalf of the vessel owners to meet the various obligations of its managed vessels with respect to such things as repairs, vendors servicing the vessels, insurance, technical services, etc. These duties are all set out in the management contracts and, after all, the whole function of a manager is to manage in exchange for a fee. For the avoidance of doubt, Marachart never receives any hires and/or freights due to the vessel Owners into its own account, but, instead, such funds are kept separate from Marachart's accounts as is the custom and practice in the ship management industry.

70. Sword, Ambient and Tough Trader each maintain their own individual earnings accounts at Bank Laiki (now Marfin Egnatia Bank) in Greece.

71. The payment of management fees in respect of the management of the M/V GRAIN TRADER, M/V PIONEER TRADER and M/V TOUGH TRADER were all made pursuant to individual management agreements between Marachart and individual defendants Sword, Ambient and Tough Trader whereby the management contract set forth the responsibilities and functions of Marachart and the fee that each of these other defendants would pay to Marachart for its management services.

### FINAL POINTS

72. Contrary to the mischaracterization of the facts alleged in ¶ 40 of the Amended Complaint, the expression that Anastasios Raisis "was the controlling mind behind STC" was input within quotation marks in my Statement before the New York District Court in the case of STC v. ICS because the expression had been slanderously and incorrectly used by ICS to describe that a third party with whom they had differences was "the controlling mind behind STC".

73. It is, however, true that I am the president of the Board of Directors and the legal representative in Greece for STC, so I do have the powers to take decisions for STC and act for STC. As but one example of my acting for STC, and as set forth in ¶ 37 herein, I issued the LOI's to Plaintiff FESCO in my capacity as President of the Board of Directors of STC.

74. The Court should further be aware that another ship owner has previously, but unsuccessfully, attempted to make the case that Marachart, STC, and Anastasios Raisis were alter egos, and FESCO is well aware of the case.

75.     In February of 2006, Orient Shipping Rotterdam B.V. ("Orient") asserted a claim for breach of charter party relating the vessel M/V FUTURE CONFIDENCE against STC.

76.     Similar to the case before this New York court, Orient asserted a claim against STC in connection with the shipment of cargo to African ports, Orient refused STC's instructions to discharge the cargo in Luanda and Swiss banks, i.e. Credit Suisse and Banque Cantonale de Geneve, were asserting claims of ownership to the cargo on board the M/V FUTURE CONFIDENCE.

77.     Almost identical to the case before this court, in the case styled <u>Orient Shipping Rotterdam B.V. v. Marachart, STC and Anastasios Raisis</u>, the petitioner Orient Shipping initiated a "Security Measure Procedure," whereby the petitioner asserted a maritime claim and was seeking a provisional attachment of the property of the respondents in the amount of 1,000,000.00 Euros. STC was, of course, a contractual partner with Orient, but Orient saw fit to sue Marachart and Anastasios Raisis as well on the basis that STC and Marachart were beneficially owned by Anastasios Raisis and, in essence, belonged to Anastasios Raisis.

78.     The case styled <u>Orient Shipping Rotterdam B.V. v. Marachart, STC and Anastasios Raisis</u> was presented to the Court of First Instance at Piraeus, Greece on February 10, 2006 and the matter was heard by Judge Maria Andrikopoulo.

79.     Judge Maria Andrikopoulo rejected the petition of Orient, and she specifically held that, in spite of the allegations made by Orient, neither Marachart nor Anastasios Raisis could be held liable for the acts or contractual obligations of respondent STC. *See*, Exhibit B, at page 5, a true and correct copy of the Court's judgment and a translation of the Court's judgment.

80. Apart from rejecting the alter ego claims asserted by Orient, Judge Andrikopoulo went on to consider the merits of the claim and she concluded" "the petition should be dismissed since it is unfounded …". *See*, Exhibit B, at page 13.

I declare under penalty of perjury under the Laws of the United States of America, including 28 U.S.C. §1746, that the foregoing is true and correct.

_____
Anastasios G. Raisis