CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Defendants,
MARACHART SHIPPING CO. LTD.,
SWORD TRADING S.A., AMBIENT
SHIPHOLDING CO. S.A. and TOUGH
TRADER MARITIME PTE LTD.
366 Main Street
Port Washington, New York 110050
Telephone:    516-767-3600
Telefax:    516-767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
FAR EASTERN SHIPPING CO., PLC,    :
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiff,    :    07 CV 9887 (PAC)
　　　　　　　　　　　　　　　　　　　:
　　　　- against -    :
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
SEA TRANSPORT CONTRACTORS LIMITED,    :
MARACHART SHIPPING CO., LTD.,    :
SWORD TRADING S.A., AMBIENT    :
SHIPHOLDING CO., S.A., and    :
TOUGH TRADER MARITIME PTE LTD.,    :
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendants.    :
-------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MARACHART SHIPPING CO. LTD., SWORD TRADING S.A., AMBIENT
SHIPHOLDING CO. S.A. and TOUGH TRADER MARITIME PTE LTD.
<u>MOTION TO VACATE THE PROCESS OF MARITIME ATTACHMENT</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………...……….......ii

TABLE OF AUTHORITIES ………………………………………….....................iii

PRELIMINARY STATEMENT...…………………….………………....…………….1

STATEMENT OF FACTS……………………………………………………….......2

LEGAL ARGUMENT…………………………………………...................................3

    I.    A HEARING ON THIS APPLICATION SHOULD BE
        SET WITHIN THREE (3) COURT DAYS OF ITS FILING…………….3

    II.    THE PLAINTIFF, FESCO, HAS THE BURDEN TO SHOW
        WHY THE ATTACHMENT SHOULD NOT BE VACATED…………..4

    III.    THE PLAINTIFF, FESCO, CANNOT MEET ITS BURDEN
        TO MAINTAIN THE ATTACHMENT AS AGAINST THE
        ALTER EGO DEFENDANTS MARACHART, SWORD,
        AMBIENT OR TOUGH TRADER…………………………………………5

        A)    A PARTY SEEKING TO VEIL PIERCE BEARS A "HEAVY BURDEN."……6

        B)    PERMITTING A PREJUDGMENT ATTACHMENT OVER A
            SEPARATE ENTITY'S PROPERTY ON MERE ALLEGATIONS OF
            ALTER EGO IS CONTRARY TO THE ESTABLISHED 'PRESUMPTION
            OF SEPARATENESS' AFFORDED TO RELATED CORPORATIONS AND
            THAT ESTABLISHED PRINCIPLE OF LAW PRE-DATES EITHER
            WINTER STORM OR AQUA STOLI…………………………………......8

        C)    EVEN UNDER THE GENEROUS STANDARDS THAT HAVE BEEN
            APPLIED BY THE COURTS, THE PLAINTIFF'S CLAIM FOR VEIL
            PIERCING AS AGAINST MARACHART AND THE OTHER
            DEFENDANTS FAILS BECAUSE THE PLAINTIFF'S CONCLUSORY
            ALLEGATIONS DO NOT SUFFICIENTLY PLEAD AN ALTER EGO CLAIM
            AGAINST MARACHART OR AGAINST THE OTHERS………………...12

        D)    MARACHART, SWORD, AMBIENT AND TOUGH TRADER ARE
            NOT ALTER EGOS OF STC AND THE CORPORATE VEIL CANNOT
            BE PIERCED……………………………………………...………..19

CONCLUSION………………………………………………………………...............22

## <u>TABLE OF AUTHORITIES</u>

**PAGE**

### CASES

<u>American Renaissance Lines, Inc. v. Saxis Steamship Co.,</u>
    502 F.2d 674 (2nd Cir. 1974)………………………………………...……………..7

<u>Aqua Stoli Shipping Ltd. v. Gardiner Smith Pty Ltd.,</u>
    460 F.3d 434 (2d Cir. 2006).............................................................................5, 8, 9

<u>Billy v. Consolidated Machine Tool Corp.,</u>
    51 N.Y.2d 152, 412 N.E.2d 934, 432 N.Y.S.2d 879 (N.Y. 1980).……6, 16, 20, 21

<u>Brave Bulk Transport v. Spot On Shipping, Ltd.,</u>
    2007 U.S. Dist LEXIS 69751 (S.D.N.Y. Sept 17, 2007)………………….……..13

<u>Cargill Investor Services, Inc. v. Cooperstein,</u>
    587 F. Supp. 13 (S.D.N.Y. 1984)………………………………………………….7

<u>David v. Glemby,</u>
    717 F.Supp. 162 (S.D.N.Y. 1986)………………..………………………...……...6

<u>De Jesus v. Sears, Roebuck & Co.,</u>
    87 F.3d 65 (2d Cir. 1996)………………………………………………………...13

<u>Dolco Invs., Ltd. v. Moonriver Dev., Ltd.,</u>
    2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. Apr. 26, 2007)…....4, 5, 6, 12, 15, 16, 17

<u>Feszczyszyn v. General Motors Corp.,</u>
    248 A.D.2d 939, 669 N.Y.S.2d 1010 (N.Y. App. Div. 1998)…………………...13

<u>Gartner v. Snyder,</u>
    607 F.2d 582 (2d Cir. 1979)……………………………………………….....7

<u>Janki Bai Sahu v. Union Carbide Corp.,</u>
    2006 U.S. Dist. LEXIS 84475 (S.D.N.Y. Nov. 20, 2006)……………………….7

<u>Kashfi v. Philbro-Salomon Inc.,</u>
    628 F. Supp. 727 (S.D.N.Y. 1986)………………………………………………..7

<u>Kirno Hill Corp.,</u>
    618 F.2d 982 (2d Cir. 1980)…………………...……………………………13

<u>Lowendahl v. Baltimore & O. R. Co.,</u>
    247 A.D. 144, 287 N.Y.S. 62 (App. Div. 1936)………………………………20

Maersk, Inc. v. Neewra, Inc.,
    443 F. Supp. 2d 519 (S.D.N.Y. 2006)……………………………………5, 10, 19

Matter of Arbitration between Holborn Oil Trading, Ltd. v. Interpol Bermuda Ltd.,
    774 F. Supp. 840 (S.D.N.Y. 1991)………………………………………...……13

Pardo v. Wilson Line of Washington, Inc.,
    134 U.S. App. D.C. 249, 414 F.2d 1145 (D.C. Cir. 1969)………………...……7

Route Holding Inc. v. Int'l Oil Overseas Inc.,
    No. 06 Civ 3428 (S.D.N.Y. Sept. 29, 2006)……………………………………...9

Salam International Transport & Trading Co. PLC v. Igen Sea Shipping,
    06 Civ. 2841 (RMB) (S.D.N.Y. May 25, 2006)…………………………12, 15, 16

Secil Maritima U.E.E. v. Malev Shipping, et al.,
    No. 06 Civ. 6345 (S.D.N.Y. Oct. 10, 2006)……………………………………….9

Securities Investor Protection Corp. v. Stratton Oakmont, Inc.,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999)………………………………………….10

Sonito Shipping Co., Ltd. v. Sun United Maritime, Ltd.,
    2007 U.S. Dist. LEXIS 19531 (S.D.N.Y. Mar. 19, 2007)…………………..……11

SPL Shipping Ltd. v. Gujarat Cheminex Ltd.,
    2007 U.S. Dist. LEXIS 18562 (S.D.N.Y. Mar. 15, 2007)………………………..8, 9

Tide Line, Inc. v. Eastrade Commodities, Inc.,
    2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug. 15, 2006)…………………..8, 9, 10

TNS Holdings, Inc. v. MKI Sec. Corp.,
    92 N.Y.2d 335, 703 N.E.2d 749, 680 N.Y.S.2d 891 (N.Y. 1998)……………….…..7

Truglia v. KFC Corp.,
    692 F. Supp. 271 (S.D.N.Y. 1998)…………………………………………………20

Ullises Shipping Corp. v. FAL Shipping Co., Ltd.,
    415 F. Supp. 2d 318 (S.D.N.Y. 2006)
    *overruled on other grounds,* Aqua Stoli Shipping Ltd. v. Gardiner
    Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006) …………………………13, 16, 17

Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Limited,
    2006 U.S. Dist. LEXIS 77033(S.D.N.Y. Oct. 23, 2006)…………………..9, 16, 19

Walkovszky v. Carlton,
    18 N.Y.2d 414, 223 N.E.2d 6, 276 N.Y.S.2d 585 (1966)………………………..21

William Wrigley Jr. Co. v. Waters,
    890 F.2d 594 (2d Cir. 1989)………………………………………………6

Williams v. McAllister Bros., Inc.,
    534 F.2d 19 (2d Cir. 1976)………………………………………………...6

Winter Storm Shipping, Ltd. v. TPI,
    310 F.3d 263 (2d Cir. N.Y. 2002)
    *cert. denied* 539 U.S. 927 (2003)………………………………………5, 8

Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,
    933 F.2d 131 (2d Cir. 1991)………………………………………20, 21

World Reach Shipping Ltd. v. Industrial Carriers, Inc.,
    2006 U.S. Dist. LEXIS 83224 (S.D.N.Y. Nov. 9. 2006)………………....…9

**STATUTES and RULES**

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims,
    Rule B…………………………………………………1, 5, 6, 8, 11, 13, 17

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims,
    Rule E…………………………………………………2, 3, 5, 8, 19

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims,
    Rule E(4)(f)…………………………………………………3, 4, 5, 9

Southern District of New York, Local Rules,
    Rule E.1…………………………………………………..………..3

**OTHER AUTHORITIES**

29 James W.N. Moore, MOORE'S FEDERAL PRACTICE, § 7.05.04 [5] (3rd Ed. 2005)……..4

## PRELIMINARY STATEMENT

This Memorandum of Law is presented on behalf of defendants Marachart Shipping Co., Ltd. (hereinafter "Marachart"), Sword Trading, S.A. (hereinafter "Sword"), Ambient Shipholding Co., S.A. (hereinafter "Ambient") and Tough Trader Maritime Pte Ltd. (hereinafter "Tough Trader") in support of the defendants' petition for vacatur of the Process of Maritime Attachment that has been issued in this matter against the property of defendants Marachart, Sword, Ambient and Tough Trader.

The plaintiff, Far Eastern Shipping Co., PLC. (hereinafter "FESCO"), does not assert any direct maritime claim against defendants Marachart, Sword, Ambient and Tough Trader. The only maritime claims to have been asserted in this case lay against the contractual defendant Sea Transport Contractors Limited (hereinafter "STC") to whom FESCO chartered its vessel, the M/V CHELYABINSK, in 2005. Nonetheless, and before FESCO has initiated arbitration proceedings against its contractual partner, STC, before FESCO's indemnity claims against STC have ripened and certainly before STC's liability has been established in connection with any of FESCO's unliquidated claim against STC, FESCO improperly employed the Rule B attachment procedure to restrain the property of Marachart, Sword, Ambient and Tough Trader. The gravamen of the allegations against Marachart, Sword, Ambient and Tough Trader are that they are alter egos of the putative defendant STC and, therefore, any ultimate decision of a London arbitration panel or a court in London will be binding on defendants Marachart, Sword, Ambient and Tough Trader.

FESCO's position is ill-conceived, FESCO's position is unsupported and FESCO's prejudgment attachment of the property of Marachart, Sword, Ambient and Tough Trader is nothing more than an abuse of legal process that should not be condoned by this Court. As will

be more fully developed in the arguments below, the Process of Attachment must be vacated as against defendants Marachart, Sword, Ambient and Tough Trader because:

> (1) Veil piercing is a rare exception to the well-settled American principle of limited liability for individual and corporate shareholders;
>
> (2) It is beyond the bounds of sound law to permit a plaintiff to maintain the drastic remedy of prejudgment attachment over an alleged alter ego's property based on loose, and unsupported, allegations of fraud and domination;
>
> (3) Even under the overly loose standards that have been applied by the district courts for the Southern District of New York at Rule E hearings, Plaintiff's allegations against Marachart, Sword, Ambient and Tough Trader are woefully insufficient to maintain a prejudgment maritime attachment; and, finally,
>
> (4) Marachart, Sword, Ambient and Tough Trader are not the alter egos of STC, nor are they the alter egos of each other.

In sum, the Plaintiff's attachment does not meet the requirements of Rule B and it is contrary to all notions of fundamental fairness. Accordingly, the Defendants' motion to vacate the attachment as against Marachart, Sword, Ambient and Tough Trader must be granted.

## STATEMENT OF FACTS

The facts pertaining to the instant Motion to Vacate the Process of Maritime Attachment and Garnishment and Dismiss the Complaint as against Marachart, Sword, Ambient and Tough Trader are more fully set forth in the accompanying declaration of Anastasios Raisis, dated February 14, 2008. Rather than restate the facts fully herein, this Memorandum of Law will make reference to, and will discuss as appropriate, the facts set forth in the accompanying Declaration of Anatasisos Raisis. Citation to the Raisis Declaration will refer to "Raisis Declaration at ¶ -."

2

## LEGAL ARGUMENT

### POINT I

### A HEARING ON THIS APPLICATION
### SHOULD BE SET WITHIN THREE (3) COURT DAYS OF ITS FILING

To ensure the constitutionality of the attachment mechanism provided for under Rule B, Supplemental Admiralty Rule E (4)(f) and the Local Rules of this Court provide for a prompt adversary hearing following any attachment. The purpose of the Rule E hearing is to permit an opportunity for any person claiming an interest in the attached property, to be heard and for prompt post-attachment scrutiny by the Court. Supplemental Rule E (4)(f)[1].

Supplemental Admiralty Rule E (4)(f) provides that any person claiming an interest in the attached property is "entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Supp. Rule E (4)(f). The Local Rule of the Southern District of New York is more specific to the extent that it provides:

> The adversary hearing following arrest or attachment of garnishment that is called for in supplemental Rule E(4)(f) shall be conducted within three (3) court days, unless otherwise ordered.
> S.D.N.Y. Local Rule E.1.

In the case at hand, the Plaintiff FESCO has not restrained any property belonging to either STC or Marachart. The Plaintiff FESCO has, however, restrained the property of the defendants Sword, Ambient and Tough Trader. The funds that are being held pursuant to the Process of Attachment are as follows: Garnishee Bank of New York has restrained funds of Tough Trader in the amount of $137,002.59 on Feb. 5, 2008; Garnishee Deutsche Bank has restrained funds of Ambient Shipholding Co. S.A. in the amount of $4,423.00; and, Garnishee

---

[1] The Advisory Committee Notes to the 1985 Amendments to the Rule state: "Rule E (4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing to the shipowner a prompt post-seizure hearing at which he can *attack the Complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings*". (emphasis added).

Bank J.P. Morgan has restrained funds of Tough Trader in the amount of $145,590.30. Under

these circumstances, the Defendants Marachart, Sword, Ambient and Tough Trader

respectfully submit that pursuant to the Rules, which speak in mandatory terms, a hearing

should be set down for a date as soon as practicable.

## POINT II

### THE PLAINTIFF, FESCO, HAS THE BURDEN
### TO SHOW WHY THE ATTACHMENT SHOULD NOT BE VACATED

Supplemental Admiralty Rule E (4)(f) of the Federal Rules of Civil Procedure

provides:

> Whenever property is arrested or attached, any person claiming an interest in it
> shall be entitled to a prompt hearing at which the plaintiff shall be required to
> show why the arrest or attachment should not be vacated or other relief
> consistent with these rules.

F.R.C.P., Supplemental Rules for Admiralty and Maritime Claims, Rule E (4)(f),
(emphasis added).

It is clear from the text of Rule E (4)(f) that plaintiff, FESCO is required to defend the

attachment, and the case law reinforces the point that plaintiff, FESCO, bears the burden of

proof to demonstrate why the attachment should not be vacated. *See e.g.*, Dolco Investments,

Ltd. v. Moonriver Development, Ltd., 2007 U.S. Dist. LEXIS 31101 * 7 (S.D.N.Y. Apr. 26,

2007). Given the nature of the attachment mechanism, which results in the freezing of assets

without any prior opportunity to be heard and before liability is established, both the Courts

and legal commentators have recognized that the burden placed on an attaching Plaintiff at the

Rule E hearing is considerable. *See e.g.*, 29 James W.N. Moore, MOORE'S FEDERAL PRACTICE,

§ 7.05.04 [5] (3rd Ed. 2005).

At the Rule E (4)(f) hearing, the defendant can attack "the complaint, the arrest, the

security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. Supp.

Rule E (4)(f), Advisory Committee's note; *see also*, Maersk, Inc. v. Neewra, 443 F.Supp. 2d

519, 527 (S.D.N.Y. 2006) and Dolco Investments, Ltd., 2007 U.S. Dist. LEXIS 31101 * 7.


## POINT III

### THE PLAINTIFF, FESCO, CANNOT MEET ITS BURDEN
### TO MAINTAIN THE ATTACHMENT AS AGAINST THE ALTER EGO
### DEFENDANTS MARACHART, SWORD, AMBIENT OR TOUGH TRADER

Under Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd., in a Rule E(4) (f) inquiry

challenging a Rule B attachment, the plaintiff has the burden to show not only that it has met

the filing and service requirements of Rules B and E, but also that: (1) it has a *prima facie*

admiralty claim; (2) the named defendants cannot be found within the district; (3) the

defendant's property was within the district; and (4) there is no statutory or maritime law bar

to the attachment. Aqua Stoli, 460 F.3d 434, 455 (2d Cir.2006). Further, and as noted by the

Court of Appeal, the district courts have equitable discretion to vacate maritime attachments in

limited situations even if the maritime attachment complies with the technical requirements of

Rule B. Aqua Stoli, 460 F. 3d at 445-45 (The Court of Appeals established three nonexclusive

equitable grounds for which vacatur may be appropriate.).

For the case at hand, the defendants Marachart, Sword, Ambient and Tough Trader do

not assert that they can be "found" in the Southern District, but they do concede that Sword,

Ambient and Tough Trader's property[2] is in the district and has been restrained. However, the

defendants petition this Court to consider that that there is a fundamental flaw with respect to

the FESCO attachment against the property of defendants Marachart, Sword, Ambient and

Tough Trader. FESCO does not have a *prima facie* admiralty claim against any one of these

---

[2] The property is funds that were being electronically transferred ("EFT's") by intermediary banks located within
the Southern District of New York. EFT's to or from a defendant can be attached despite the litigants' having no
connection to the district at all, save that they happened to be a participant in a wire transfer of U.S. dollars.
Winter Storm v. TPI, 310 F.3rd 263 (2d Cir. 2002).

parties. Instead, FESCO asserts its *prima facie* admiralty claim against defendant STC, with whom it had a contractual agreement, but then FESCO proceeds to expand the scope of its claim by tarring Marachart, Sword, Ambient and Tough Trader with the same underlying claim premised on allegations of alter ego that are entirely conclusory and unsupported. This is a classic case of boot strapping in the sense that FESCO brings its claim against STC under one procedural rule, Supplemental Rule B, but then asks the Court to jump from there to another procedural device, *i.e.* veil piercing, as a basis for restraining the property of other defendants against whom FESCO has no direct claim. FESCO's effort is completely improper, and it must be rejected by this Court for the following reasons:

A)    A PARTY SEEKING TO VEIL PIERCE BEARS A "HEAVY BURDEN."

Veil piercing is a rare exception to the well-settled American principle of limited liability for individual and corporate shareholders. *See,* David v. Glemby Co., 717 F. Supp. 162, 166 (S.D.N.Y. 1986); Billy v. Consolidated Machine Tool Corp., 51 N.Y.2d 152, 163, 412 N.E.2d 934, 432 N.Y.S.2d 879 (N.Y. 1980); and, Dolco Investments, 2007 U.S. Dist. LEXIS * 23 & 24 (Judge Sweet noted: "Under the doctrine of limited liability, a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, …".). Indeed, the avoidance of personal liability for obligations incurred by a business enterprise is one of the fundamental purposes of doing business in the corporate form." Billy, 51 N.Y.2d at 163; *accord,* William Wrigley Jr. Co. v. Waters, 890 F.2d 594, 600 (2d Cir. 1989). Consequently, the controlling precedent in this Circuit is that there is a "'presumption of separateness' afforded to related corporations." Williams v. McAllister Bros., Inc., 534 F.2d 19, 22 (2d Cir. 1976) (citations omitted), which has correctly led to a "reluct[ance] to disregard the separate existence of related corporations by piercing the corporate veil" on the

6

part of the district courts. <u>Kashfi v. Philbro-Salomon Inc.</u>, 628 F. Supp. 727, 732-33 (S.D.N.Y. 1986).

Courts start with the presumption of corporate regularity, and will only disregard the corporate form when the party seeking to veil pierce makes a ***substantial*** showing that the subject corporation is really a dummy or decoy corporation, *see* <u>Pardo v. Wilson Line of Washington, Inc.</u>, 134 U.S. App. D.C. 249, 414 F.2d 1145 (D.C. Cir. 1969) (applying New York law), or where the subject corporation's "separate identity [is] so disregarded that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego," <u>Gartner v. Snyder,</u> 607 F.2d 582 (2d Cir. 1979).

This controlling precedent applies to maritime claims. In <u>American Renaissance Line, Inc. v. Saxis Steamship Co.,</u> the Court of Appeals, citing several cases, held: "absent findings of fraud or bad faith, a corporation, such as Renaissance, is entitled to a presumption of separateness from a sister corporation, such as Multifacs, even if both are owned and controlled by the same individuals." 502 F.2d 674, 677 (2nd Cir. 1974). Thus, the party seeking to veil pierce bears a "heavy burden." <u>TNS Holdings, Inc. v. MKI Sec. Corp.,</u> 92 N.Y.2d 335, 339, 703 N.E.2d 749, 680 N.Y.S.2d 891 (N.Y. 1998); *see also,* <u>Cargill Investor Services, Inc. v. Cooperstein,</u> 587 F. Supp. 13, 15 (S.D.N.Y. 1984); and, <u>Janki Bai Sahu v. Union Carbide Corp.,</u> 2006 U.S. Dist. LEXIS 84475 * 15 (S.D.N.Y. Nov. 20, 2006)(To pierce the corporate veil, a "high level" of domination must be proven.)

    **B)**    PERMITTING A PREJUDGMENT ATTACHMENT OVER A SEPARATE
         ENTITY'S PROPERTY ON MERE ALLEGATIONS OF ALTER EGO IS
         CONTRARY TO THE ESTABLISHED 'PRESUMPTION OF SEPARATENESS'
         AFFORDED TO RELATED CORPORATIONS AND THAT ESTABLISHED
         PRINCIPLE OF LAW PRE-DATES EITHER <u>WINTER STORM</u> OR <u>AQUA STOLI</u>

Following the Court of Appeals decision in the case entitled <u>Aqua Stoli</u>, a number of

the district courts in the Southern District of New York have adopted a *laissez-faire* approach

toward the attachment of a party's property based solely on allegations of alter ego. *See e.g.*,

<u>Tide Line, Inc. v. Eastrade Commodities, Inc.</u>, 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug.

15, 2006) and <u>SPL Shipping Ltd. v. Gujarat Cheminex Ltd.</u>, 2007 U.S. Dist. LEXIS 18562

(S.D.N.Y. Mar. 15, 2007).

The hands-off <u>Tide Line</u> approach is, however, not grounded by any controlling

precedent and, most certainly, it was not mandated by the Court of Appeals' decisions in

either <u>Winter Storm</u> or <u>Aqua Stoli</u>[3]. Instead, the only justification for such a loose approach

rests with a misperceived *implication* of the Court of Appeals' holding in <u>Aqua Stoli</u> with

respect to a question that was never actually addressed by the Second Circuit in <u>Aqua Stoli</u>.

Judge Woods, in the first case to address an attachment of an alter ego's property post <u>Aqua</u>

<u>Stoli</u>, set off the *laissez-faire* approach in respect of alter ego claims with the following

rationale: "Although <u>Aqua Stoli</u> does not explicitly address this "probable cause" or

"reasonable grounds" standard, the decision's emphasis … implies that the "probable cause"

or "reasonable grounds" standard is improper insofar as it purports to go beyond this limited

inquiry." <u>Tide Line v. Eastrade Commodities, Inc.</u>, 2006 U.S. Dist. LEXIS 95870 * 15

(S.D.N.Y. Aug, 15, 2006). Following that line of logic, a number of the district courts stepped

even further into the pale of legal reason when several of them followed <u>Tide Line</u> to conclude

that pleadings alone were sufficient to resist vacatur of a maritime attachment at a Rule E

---

[3] <u>Winter Storm</u>, decided in 2002, and <u>Aqua Stoli</u>, decided in 2006, are the two most recent decisions from the Court of Appeals for the 2nd Circuit to have addressed the issues involving a Rule B maritime attachment.

hearing so long as there was some allegation that the corporate form was disregarded. *See e.g.*, Secil Maritima U.E.E. v. Malev Shipping, et al., No. 06 Civ. 6345 (S.D.N.Y. Oct. 10, 2006)(transcript of Rule E(4)(f) hearing denying vacatur motion); Route Holding Inc. v. Int'l Oil Overseas Inc., No. 06 Civ. 3428 (S.D.N.Y. Sept. 29, 2006)(Order denying vacatur of maritime attachment); World Reach Shipping Ltd. v. Industrial Carriers, Inc., 2006 U.S. Dist. LEXIS 83224 *10 (S.D.N.Y. Nov. 9. 2006)(Unsupported pleadings that stated Blue Coast was the alter ego of ICI because ICI dominates and disregards Blue Coast's corporate form were found to be sufficient to state a *prima facie* case of alter ego.) and, SPL Shipping Ltd., 2007 U.S. Dist. LEXIS 18562 *8-10

Contrary to Judge Woods' interpretation of the implications of Aqua Stoli, the rule of law announced by Aqua Stoli, and, indeed, the only rule of law that came from the Court of Appeals in Aqua Stoli, is that the district courts were not to engage in broad equitable inquiries with respect to a maritime plaintiff's "need" or "needs-plus[4]" for an attachment of property to secure a potential judgment. Aqua Stoli, 460 F.3d at 446. In Aqua Stoli, the Court of Appeals never addressed the question of whether a maritime attachment was valid solely on allegations of alter ego when no direct maritime claim was asserted against the alter ego defendant. *See*, Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping, 2006 U.S. Dist. LEXIS 77033 * 8, fn. 5(S.D.N.Y. Oct. 23, 2006)(" The Circuit in Aqua Stoli had no occasion to clarify the "valid prima facie admiralty claim" inquiry or the "reasonable grounds" standard.").

The decisions of the district courts in cases such as Tide Line and its progeny rest on a hollow foundation that is completely against the grain of the well-settled American principle of limited liability for individual and corporate shareholders and the concomitant presumption

---

[4] The "needs plus" test involved weighing the hardship to the defendant against the benefit to the plaintiff. Aqua Stoli, 460 F. 3d at 439.

9

of separateness normally afforded corporations, even if both are owned and controlled by the same individuals. Consequently, it is respectfully submitted that this Court should not blindly follow Tide Line and its progeny because such decisions turn well settled principles of law upside down. Instead, this Court should approach the Complaint, and the allegations therein, with guarded measure and be mindful of the late Judge Casey's caution which was: the ease with which a *prima facie* case for attachment can be made creates a real risk of abuse of the maritime remedy. Maersk, Inc. v. Neewra, Inc., 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006). Judge Casey's caution is most compelling in cases, like the one at hand, where the plaintiff seeks a prejudgment restraint of property with broad conclusory claims of alter ego that fly in the face of the settled notion of corporate separate existence and limited liability for individual and corporate shareholders.

To properly understand just how much the Tide Line cases upset traditional notions of corporate separateness, it cannot be over emphasized that "piercing the corporate veil . . . is not, in and of itself, an independent cause of action but a procedural device through which a plaintiff may assert facts and circumstances to persuade the court to impose" a subsidiary's obligation on the parent. Securities Investor Protection Corp. v. Stratton Oakmont, Inc., 234 B.R. 293, 321 (Bankr. S.D.N.Y. 1999). With proper consideration of that point, it is clear that FESCO has no independent maritime cause of action against Marachart, Sword, Ambient or Tough Trader, but is simply relying on a procedural device to impose a liability that has not yet been established against the alleged subsidiary. It is also clear that the problem for FESCO with its case against Marachart, Sword, Ambient and Tough Trader is that, right now, the alleged subsidiary, *i.e.* STC, is not under any obligation to the plaintiff FESCO other than the obligation to respond to arbitration proceedings that FESCO may, but according to the complaint, has not yet commenced. *See*, Amended Complaint at ¶ 64.

10

Apparently, FESCO has no intention of seeking to arbitrate against Marachart, Sword, Ambient or Tough Trader. *See,* Amended Complaint at ¶ 64. In all likelihood, FESCO would not be able pursue any of those parties in any London arbitration proceedings or before the High Court because FESCO's underlying claims, *i.e.* breach of charter party and breach of obligatios under Letters of Indemnity, are solely for breach of contract and there is no contractual relationship between FESCO and Marachart, Sword, Ambient or Tough Trader. Unless FESCO can proceed directly against Marachart, Sword, Ambient or Tough Trader in arbitration and/or in the London High Court, it naturally follows that any alter ego liability of defendants Marachart, Sword, Ambient or Tough Trader is contingent on two things happening. First, FESCO must arbitrate with STC and establish that STC is liable for a breach of the maritime claims arising from the charter of the M/V CHELYABINSK or proceed in the London High Court to establish STC's alleged breach of the letters of indemnity. Second, FESCO must then prove that Marachart, Sword, Ambient or Tough Trader dominated STC such that those parties are liable for the obligations of STC as determined by an arbitration panel or the High Court. The upshot is that, by improperly employing the Rule B procedure, FESCO seeks to sidestep the whole due process so as to restrain the assets of Marachart, Sword, Ambient and Tough Trader for what is nothing more than a contingent claim.

In general, courts in this circuit have not been receptive to contingent claims as bases for maritime arrests for attachments and have consistently held that a Rule B attachment is not proper where the liability of a defendant to the plaintiff is contingent. *See e.g.*, <u>Sonito Shipping Co., Ltd. v. Sun United Maritime, Ltd.</u>, 2007 U.S. Dist. LEXIS 19531 * 20 & 21 (S.D.N.Y. Mar. 19, 2007)(Citing cases, Judge Haight vacated an attachment where the claim against the defendant was for indemnity and the obligation to indemnify only arose once the underlying claim was met.). While <u>Sonito</u> and the other cases that have applied this logic, *i.e.* satisfaction of a condition precedent before an obligation arises, did so in the context of

11

indemnity claims for cargo damage, it is submitted that the same reasoning is even more compelling in the context of an alter ego claim. In this case, for example, it is clear that any liability of Marachart, Sword, Ambient or Tough Trader is contingent on FESCO succeeding with its breach of contract claim against STC and, then, going on to prove that Marachart, Sword, Ambient or Tough Trader actually dominated STC. That requires two contingencies to be satisfied and, thus, the argument is even more compelling here than in the case where the district courts have refused to permit prejudgment attachments.

Because the controlling precedent in this Circuit mandates a presumption of separateness for distinct business entities like Marachart, Sword, Ambient and Tough Trader, the controlling precedent predates the cases permitting the attachment of EFT payments and FESCO's claim against the alleged alter egos is highly contingent, permitting FESCO to maintain its attachment is beyond all sound legal reasoning.

**C)** **EVEN UNDER THE GENEROUS STANDARDS THAT HAVE BEEN APPLIED BY THE COURTS, THE PLAINTIFF'S CLAIM FOR VEIL PIERCING AS AGAINST MARACHART AND THE OTHER DEFENDANTS FAILS BECAUSE THE PLAINTIFF'S CONCLUSORY ALLEGATIONS DO NOT SUFFICIENTLY PLEAD AN ALTER EGO CLAIM AGAINST MARACHART OR AGAINST THE OTHERS.**

Even under the generous standards used by the district courts to evaluate alter ego claims in connection with a maritime attachment, the better reasoned cases have at least required the Plaintiff to allege sufficient facts to support the claim that the alter ego defendants have so dominated and disregarded the subsidiary's form before allowing the attachment to stand. *See e.g.*, Salam International Transport & Trading Co. PLC v. Igen Sea Shipping, 06 Civ. 2841 (RMB) (S.D.N.Y. May 25, 2006); Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Limited, 2006 U.S. Dist. LEXIS 77033 * 20 (S.D.N.Y. Oct. 23, 2006); Dolco Investments, Ltd. v. Moonriver Development, Ltd., 2007 U.S. Dist. LEXIS 31101 * 7

(S.D.N.Y. Apr. 26, 2007); and, <u>Brave Bulk Transport v. Spot On Shipping, Ltd.</u>, 2007 U.S.

Dist LEXIS 69751 *2 (S.D.N.Y. Sept 17, 2007)(A Rule B attachment cannot be sustained in

the absence of some specific facts demonstrating the type of corporate domination and control

sufficient to pierce the corporate veil). The operative word here is "facts" that will support the

elements of a claim for alter ego, as opposed to mere conclusory allegations.

   The elements of the claim for piercing the corporate veil are well established in

maritime law. The veil will be pierced only if a corporation was used by another entity or

individual to "perpetrate a fraud" or was "so dominated" and its corporate form "disregarded"

such that it primarily transacted the other entity's or individual's business. <u>Kirno Hill Corp.</u>,

618 F.2d 982, 985 (2d Cir. 1980); *accord*, <u>Matter of Arbitration between Holborn Oil Trading,</u>

<u>Ltd. v. Interpol Bermuda Ltd.</u>, 774 F. Supp. 840, 844 (S.D.N.Y. 1991) ("Federal common law

in the Second Circuit involves a two pronged test for piercing the corporate veil: the party

sought to be charged must have used its alter ego 'to perpetrate a fraud or have so dominated

and disregarded [its alter ego's] corporate form' that the alter ego was actually carrying on the

controlling party's business instead of its own.") (*quoting* <u>Kirno Hill Corp.</u>, 618 F.2d at 985);

*and see,* <u>Ullises Shipping Corp. v. FAL Shipping Co. Ltd.</u>, 415 F. Supp. 2d 318, 323

(S.D.N.Y. 2006) ("Federal common law allows piercing of the corporate veil where (1) a

corporation uses its alter ego to perpetrate a fraud or (2) where it so dominates and disregards

its alter ego's corporate form that the alter ego was actually carrying on the controlling

corporation's business instead of its own.") (internal quotation marks omitted). "Under that

standard, '. . . [a]ctual domination, rather than the opportunity to exercise control, must be

shown.'" <u>Ullises Shipping Corp.</u>, 415 F. Supp. 2d at 323 (*quoting* <u>De Jesus v. Sears, Roebuck</u>

<u>& Co.</u>, 87 F.3d 65, 69 (2d Cir. 1996); *and see,* <u>Feszczyszyn v. General Motors Corp.</u>, 248

A.D.2d 939, 669 N.Y.S.2d 1010, 1012 (N.Y. App. Div. 1998)( "[T]he mere existence of a

parent-subsidiary corporate relationship is insufficient to establish a unity of interest between

the two corporations" absent a showing of "complete dominion and control [over] the subsidiary's daily operations.").

To maintain an attachment over an alter ego, therefore, the Plaintiff must present concrete facts that will satisfy the elemental base for an alter ego claim, namely fraud or a high level of domination. Plaintiff, FESCO, fails to meet that requirement with its loose and convoluted allegations of a controlling "Group" that exists for the nefarious purpose of cheating creditors. Indeed, and consistent with normal practice in the shipping business which involves ship owning companies, brokers and charterers, the FESCO allegations are benign and in no way support an inference that either Marachart, Sword, Ambient or Tough Trader exercised such a high level of interference in STC's business that any corporate veil between existing between STC and Marachart, Sword, Ambient or Tough Trader should be pierced.

In the case at hand, other than the loose allegation that "each of the defendants is a sham and exists solely for the purpose of evading liabilities and defrauding creditors," *see*, Amended Complaint at ¶ 62, the Amended Complaint is absolutely barren of any specifics or facts to support such an inflammatory accusation, *see generally*, Amended Complaint at ¶s 32 to 62, and, therefore, the allegation is completely irresponsible with respect to the suggestion of fraud. Nor does Plaintiff FESCO make any specific factual allegations to support an inference that Marachart, Sword, Ambient or Tough Trader actually ***dominated*** defendant STC in connection with the charter of the M/V CHELYABINSK or, otherwise, in the day to day business of STC. For example, the best Plaintiff FESCO offers in the way of factual allegations is that: a) defendants utilized the same address, *see*, Amended Complaint at ¶s 3 to 7 & 33; two of the shareholders and directors of Marachart were also shareholders of the putative defendant STC, *see*, Amended Complaint at ¶s 34 – 39; on one occasion, Marachart made a hire payment to FESCO, *see*, Amended Complaint at ¶34; and, an employee of Marachart signed letters of indemnity on behalf of STC, *see*, Amended Complaint at ¶ 43.

14

Such allegations (some of which are just plain wrong, *see* Raisis Declaration, or deliberate mischaracterizations), in and of themselves, do not support any inference of complete or high level of domination over STC. Without any supportable factual allegations to show the type and nature of domination and control that Marachart, and the other defendants, supposedly exercised over STC, this Court cannot accept FESCO's allegations as grounds to support any inference that Marachart exercised complete dominion and control over STC's operations such that STC's veil should be pierced to impose STC's liability on Marachart.

In Dolco Investments, the plaintiff made similar generalized allegations, but Judge Sweet would have none of it. He vacated the attachment, and he dismissed the action with respect to the alter ego defendant GML Ltd. 2007 U.S. Dist. LEXIS 31101 * 1 & 2. Specifically, Judge Sweet found that Dolco failed to meet its burden because it did not include any factual allegations that defendant GML exercised complete domination over the putative defendant, Moonriver. 2007 U.S. Dist. LEXIS * 28. Judge Sweet specifically found that, other than the conclusory allegation of domination, the Complaint simply alleged that GML paid Moonriver's debts to Dolco "from time to time," but did not make any other factual allegations with respect to intermingling of funds or other factors relevant to an alter ego inquiry. 2007 U.S. Dist. LEXIS * 28. In other words, Judge Sweet vacated the attachment and dismissed the case against GML because the plaintiff did not allege "sufficient facts" to make a case that GML so dominated and disregarded Moonriver's form that GML, rather than Moonriver, conducted Moonriver's business.

A similar result was reached by Judge Berman in Salam International. In that case, Judge Berman granted defendant Hassan Ali's motion to vacate the attachment because: there was no evidence that Hassan Ali used the putative defendant, Igen Sea, for a fraudulent purpose; there was no evidence that the putative defendants Igen Sea lacked the "formalities and paraphernalia that are part and parcel of the corporate existence;" there was no evidence

15

of "inadequate capitalization;" and there was no evidence of overlap in ownership, officers, directors and personnel. 06 Civ. 2841 (RMB) (S.D.N.Y. May 25, 2006). In other words, in much the same as Judge Sweet later did in <u>Dolco</u>, Judge Berman recognized that the plaintiff's allegations were conclusory and, thereby, insufficient to maintain a prejudgment attachment.

Despite the thirty (30) separate paragraphs in the Alter Ego count of FESCO's Amended Complaint, FESCO's claim against Marachart is actually less supported than was the claim against GML in the <u>Dolco</u> Case. For example, in <u>Dolco</u> it was alleged that GML paid Moonriver's debts to Dolco "from time to time", but FESCO can only allege that Marachart made one single hire payment to FESCO, *see*, Amended Complaint at ¶ 42, and that payment was made pursuant to the normal business of Marachart as agent and broker for STC, *see* Raisis Declaration at ¶ 49. Apart from that single explainable payment, FESCO offers no allegation that Marachart consistently engaged in pattern of paying STC's debts and, in point of fact, there is no absolutely no evidence that funds were intermingled between the two companies. *See,* Raisis Declaration at ¶s 33, 37, 39 & 49, *and compare*, <u>Wajilam</u>, 2006 U.S. Dist. LEXIS 77033 at * 20 (ATL-BVI's regular practice of receiving charter hire and freights through Via Sistina was an indication, for financial purposes, of total disregard of the corporate form.). Apart from that, the majority of the plaintiff's allegations regarding the addresses and offices of the defendants are just plain wrong, *see*, Raisis Declaration at ¶s 12, 25, 26, 55, 56, 61, 62, 65 & 66, and the factual allegations regarding similar persons being involved with both Marachart's and STC's board of directors does little to establish a factual basis for inferring that Marachart so dominated and disregarded STC's form that Marachart, rather than STC, actually conducted STC's business. Mere ownership of a controlling number of shares in the subsidiary is "never" enough on its own to demonstrate the level of direct intervention necessary for a factual claim of domination, *see e.g.*, <u>Billy</u>, 51 N.Y.2d at 163; <u>Kirno Hill Corp.</u>, 618 F.2d at 985; *and see*, <u>Ullises Shipping Corp. v. FAL Shipping Co., Ltd.</u>,

415 F. Supp. 2d 318 (S.D.N.Y. 2006)(Granting a motion to vacate a Rule B Maritime attachment presented by FAL Energy where it was alleged that FAL Energy was the alter ego of the putative defendant, the Court said: "It is not sufficient that FAL Energy and the other FAL defendants share common ownership.").

All in all, Plaintiff FESCO's allegations are nothing more than a loose hodgepodge of inflammatory conclusions that do not establish a legally sufficient factual basis to support the claim that Marachart so dominated STC in connection with the charter of the M/V CHELYABINSK that Marachart should be held responsible for claims asserted against STC in connection with that charter agreement and, thereby, subject to a prejudgment attachment of its property. Other than showing that Marachart and STC have a commercial relationship and alleging that Marachart once made a payment on behalf of STC, there are no other factual allegations that show any corporate formalities were ignored, that STC was inadequately capitalized, that Marachart and STC intermingled funds, that STC had no discretion to conduct its own discrete business or that Marachart ever guaranteed the debts of STC. *See generally*, Amended Complaint, *and compare*, Raisis Declaration. Indeed, the folly of the position advanced by FESCO is exposed with reference to the Amended Complaint which, itself, concedes that Marachart and STC exist for different reasons in that Marachart is a broker and manager of dry cargo vessels, but STC was created for the purpose of taking on Contracts of Affreightment and shipping cargo just like it did in connection with the charter of the M/V CHELYABINSK. *See*, Amended Complaint at ¶ 58. Under these circumstances of this case and consistent with Judge Sweet's analysis in Dolco, the attachment must be vacated as against Marachart.

FESCO's claim against the other alter ego defendants, *i.e.* Sword, Ambient and Tough Trader, rests on even wetter sand such that the claim against Sword, Ambient and Tough Trader can be summarily dismissed. To be clear, FESCO makes absolutely no allegations that

Sword, Ambient or Tough Trader controlled or dominated STC, which it the legal requirement

for an alter ego claim. Instead, FESCO attempts to confuse the issue by lumping Sword,

Ambient and Tough Trader all together in with Marachart and proceeds to argue for a hazy

alter ego relationship between Marachart and Sword, Ambient and Tough Trader. FESCO

oversteps its bounds because the only relevant inquiry with respect to Sword, Ambient or

Tough Trader is whether any one of those individual defendants exercised domination and

control over the defendant STC against whom FESCO has an arguable claim for breach of

contract.

Even if the Court were to accept FESCO's conclusory allegations with respect to

Sword, Ambient and Tough Trader as gospel truth, the fact of the matter is that FESCO's

Amended Complaint does not make any allegations to support any inference that Sword,

Ambient or Tough Trader acted fraudulently or otherwise dominated STC in connection with

the charter of the M/V CHELYABINSK or any other business of STC. As alleged by FESCO,

Sword, Ambient and Tough Trader are companies that own vessels, including the M/V

GRAIN TRADER, the M/V PIONEER TRADER and the M/V TOUGH TRADER, and those

companies are associated with the "Raisis group." *See,* Amended Complaint at ¶s 44 to 59.

While it is alleged that the thee vessels owned by Sword, Ambient and Tough Trader were

under the management and control of Marachart and Marachart was the corporate guarantor of

the ship owning companies in respect of a loan agreement, it must be recognized by the Court

that there is a big difference between the fact that Marachart managed the vessels owned by

Sword, Ambient and Tough Trader pursuant to management contracts and the implication that

FESCO seeks, which is: Marachart somehow dominated and controlled the actual vessel

owning companies. FESCO strains all credibility when it seeks to persuade the Court to make

the jump from the fact that Marachart managed vessels to the conclusion that Marachart

dominated and controlled the owning companies. The relevant point is that the Amended

Complaint is devoid of any factual allegation that Sword, Ambient or Tough Trader somehow dominated and controlled STC. *See generally*, Amended Complaint at ¶s 44 to 59. Moreover, the Amended Complaint does not demonstrate any connection whatsoever between STC and Sword, Ambient or Tough Trader other than the too thin reed that those vessel owing companies were joint borrowers on a loan from Laiki Bank which was used to refinance a debt at EFG Eurobank which happened to be the bank from which STC and Marachart made hire payments to FESCO in connection with the charter of the M/V CHELYABINSK. *See*, Amended Complaint at ¶ 57. Such a woefully thin allegation is insufficient, as a matter of law, to support any inference that Sword, Ambient or Tough Trader so dominated and disregarded STC's form that Sword, Ambient or Tough Trader, rather than STC, conducted STC's business with FESCO. Consequently, the Process of Attachment must be vacated as against those parties and the Amended Complaint dismissed as against those parties.

### D) MARACHART, SWORD, AMBIENT AND TOUGH TRADER ARE NOT ALTER EGOS OF STC AND THE CORPORATE VEIL CANNOT BE PIERCED

Rule E hearings are broad in scope. A court also may consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing. Wajilam, 2006 U.S. Dist. LEXIS 77033 at * 8, *citing*, Maersk, Inc. v. Neewra, Inc., 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006).

For the case at hand, it is respectfully submitted that the Court should consider the accompanying Declaration of Anastasios Raisis because he accurately explains the nature of the nature of the relationship between the various defendants and he unqualifiedly refutes several of the so-called "factual" allegations that have been presented by the Plaintiff, FESCO, in its Amended Complaint. As but one example, Mr. Raisis conclusively confirms that there is no such "Raissis Group" as FESCO so grandly alleges. *See*, Raisis Declaration at ¶ 8.

Furthermore, as Mr. Raisis makes clear, Marachart and STC do not operate from the same offices, they are completely independent entities, they do have a commercial relationship, but one, *i.e.* Marachart the broker, works for the other, *i.e.* STC the client. *See*, Raisis Declaration at ¶s10 to 39.

The Court of Appeals for the Second Circuit has enumerated ten factors that would tend to show that defendant was a dominated corporation. In Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 139 (2d Cir. 1991), the Court identified the factors to be: (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

Courts examine the above-listed factors with the following core requirement in mind: "At the very least, there must be direct intervention by the parent in the management of the subsidiary to such an extent that 'the subsidiary's paraphernalia of incorporation, directors and officers' are completely ignored." Billy, 51 N.Y.2d at 163, *quoting*, Lowendahl v. Baltimore & O. R. Co., 247 A.D. 144, 287 N.Y.S. 62, 73-74 (App. Div. 1936); *and see*, Truglia v. KFC Corp., 692 F. Supp. 271, 275 (S.D.N.Y. 1998) ("The mere assertion that a corporate parent is

or was involved in the decision-making process of its subsidiary, or that it controlled the legitimate policies of its subsidiary, will not shift liabilities among distinct corporate entities.") The burden is on the plaintiff to demonstrate such direct intervention on the part of the parent. *See,* Walkovszky v. Carlton, 18 N.Y.2d 414, 223 N.E.2d 6, 276 N.Y.S.2d 585 (1966).

Other than the single point that there is some overlap of directors for STC and Marachart, none of the other Wm. Passalacqua factors are present. *See generally*, Raisis Declaration, *and compare*, Billy, 51 N.Y.2d at 163 (Mere ownership of a controlling number of shares in the subsidiary is "never" enough on its own to demonstrate the level of direct intervention necessary for veil piercing.). In sum, with respect to STC and Marachart, Plaintiff cannot prevail with its claim to pierce the corporate veil of STC to hold Marachart liable. STC was no "mere instrumentality," but rather a functioning corporate entity distinct both formally and practically from STC, and FESCO was in no way defrauded, since it clearly knew that Marachart was only a broker for STC with respect to the charter of the M/V CHELYABINSK.

Most importantly, perhaps, is that the instant action is not the first time that a party has sought to lay claims of alter ego against Marachart in connection with STC. *See*, Raisis Declaration at ¶ 79. The Court of First Instance in Piraeus, Greece rejected the claim that Marachart was an alter ego of STC, *See*, Raisis Declaration at ¶ 79, and this Court must reach the same conclusion.

With respect to the other defendants, *i.e.* Sword, Ambient and Tough Trader, they are not the alter egos of STC, they are not the alter egos of Marachart and they are not the alter egos of each other. Instead, as detailed by Mr. Raisis, they are all independent ship owners who maintain their own places of business and their own accounts. *See*, Raisis Declaration at ¶s 50 to 71. FESCO's bold allegations that they are all joint borrowers on a loan agreement with Laiki Bank (Hellas) S.A., *see* Amended Complaint at ¶ 53, that they are all part of

21

"Group", *see* Amended Complaint at ¶ 53, and that their respective vessels are all entered with the Swedish Club, *see*, Amended Complaint at ¶ 57, are of little consequence. For one thing, these points do nothing to create an inference that Sword, Ambient or Tough Trader were dominating STC and that is the only relevant inquiry when a party such as FESCO seeks to hold defendants such as Sword, Ambient and Tough Trader liable for the obligations of STC on a theory of alter ego liability. For another, FESCO's allegations with respect to the loan, the "Group" and the Swedish Club is simply a reflection of the fact the vessels are part of the fleet managed by Marachart and, like any other business would, the Owners of the several vessels rely on the power of the fleet as a whole for purposes of borrowing and insurance. Such normal business practice does not, however, raise an inference that Sword, Ambient and Tough Trader or the fleet manager, Marachart, are alter egos of each other. Most certainly, it does not raise any inference whatsoever that Sword, Ambient and Tough Trader are the alter ego of STC.

## CONCLUSION

The evidence in this case establishes nothing more than the simple fact that STC, Marachart, Sword, Ambient and Tough Trader are all legitimate and independent business entities that conduct their own individual business and they do not intervene, influence or dominate the business of the others. Additionally, FESCO has no direct maritime claim against Marachart, Sword, Ambient or Tough Trader and its alter ego allegations against these defendants, individually and collectively, are insufficient as a matter of law to maintain a prejudgment attachment. The Process of Maritime Attachment, as against Marachart, Sword, Ambient and Tough Trader, must be vacated and the Court should order all garnishees to release any funds that have already been restrained.

Dated: Port Washington, New York
      February 14, 2008

CHALOS O'CONNOR & DUFFY, LLP
Attorneys for Defendants
MARACHART SHIPPING CO., LTD.
SWORD TRADING, S.A., AMBIENT
SHIPHOLDING CO., S.A. and TOUGH
TRADER MARITIME PTE LTD.

By: _____
Owen F. Duffy (OD-3144)
366 Main Street
Port Washington, New York
11050
Tel:     516-767-3600
Telefax: 516-767-3605
Email: ofd@codus-law.com

To:    Via ECF
       Clerk of the Court
       United States District Court
       Southern District of New York
       500 Pearl Street
       New York, New York
       10007

To:    Via ECF
       BLANK ROME LLP
       Attorneys for the Plaintiff,
       FAR EASTERN SHIPPING CO., PLC
       405 Lexington Avenue
       New York, NY 10174
       Tel: (212) 885-5000
       Fax: (212) 885-5001

       Attn: Thomas H. Belknap, Esq.

23