BLANK ROME, LLP
Attorneys for Plaintiff
FAR EASTERN SHIPPING CO. PLC.
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Thomas H. Belknap, Jr.
Tel: (212) 885-5000
Fax: (212) 885-5001
tbelknap@blankrome.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAR EASTERN SHIPPING CO. PLC., <br><br> Plaintiff, <br><br> -against- <br><br> SEA TRANSPORT CONTRACTORS LIMITED, MARACHART SHIPPING CO. LTD. and, SWORD TRADING S.A., AMBIENT SHIPHOLDING CO., S.A. and TOUGH TRADER MARITIME PTE LTD., <br><br> Defendants. | Docket No.: 07 Civ. 9887 (PAC) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION
BY SEA TRANSPORT CONTRACTORS INC. TO VACATE ATTACHMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT...................................................................................................1

FACTS ..........................................................................................................................................1

ARGUMENT.................................................................................................................................1

POINT I    DEFENDANT CONCEDES THAT AT LEAST $1.5 MILLION OF
PLAINTIFF'S CLAIM ARE RIPE.................................................................................3

POINT II    DEFENDANTS' OBJECTIONS TO THE RIPENESS OF THE
REMAINDER OF PLAINTIFF'S CLAIM ARE WITHOUT MERIT........................4

CONCLUSION...........................................................................................................................12

601650.00603/6619895v.1

## TABLE OF AUTHORITIES

**FEDERAL CASES**          Page

Bottiglieri Di Navigazione SpA v. Tradeline, 472 F. Supp. 2d 588 (S.D.N.Y. 2007) .................................................................................................................. 9

Dolco Investments, Ltd. v. Moonriver Development, Ltd., 2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. 2007) ................................................................................. 2

Dongbu Express Co. Ltd. v. Navios Corp., 1997 A.M.C. 34 (S.D.N.Y. 1996) ................. 3

Navalmar (U.K.) Ltd. v. Welspun Gujasat Stahl Rohryn, Ltd., 485 F. Supp. 2d 399 (S.D.N.Y. 2007) ............................................................................................. 4

OGI Oceangate Transport Co. Ltd. v. RP Logistics Pvt. Ltd., 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. 2007) ................................................................................. 2

Proton Shipping, Inc. v. Sovarex S.A., 2006 U.S. Dist. LEXIS 2389 (S.D.N.Y. 2006) .................................................................................................................. 3

SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562 (S.D.N.Y. 2007) .................................................................................................. 2

Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. 2006) .................................................................................................. 2

Transportes Navieros y Terrestes, S.A. DE D.V. v. Fairmount Heavy Transport N.V., 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. 2007) ....................................... 2

601650.00603/6619895v.1

## PRELIMINARY STATEMENT

Plaintiff, Far Eastern Shipping Co. Plc. ("FESCO"), submits this memorandum of law and the accompanying affidavit of Thomas H. Belknap, Jr. dated February 28, 2008 (the "Belknap Aff.") in opposition to the motion by Sea Transport Contractors Inc. ("STC") to vacate plaintiff's attachments in this matter.

## FACTS

The relevant facts underlying FESCO's claims in this matter are fully set forth in the Amended Complaint. (Belknap Aff. Ex. 1). As is detailed below, FESCO respectfully contends that defendant's motion should be decided solely on the basis of the allegations contained in the Amended Complaint, and no additional evidence should be considered at this stage. Nevertheless, to the extent it considers that it should consider additional evidence outside the pleadings, the Court is also respectfully referred to the accompanying Belknap Aff., to which are appended several exhibits which support the allegations contained in the Amended Complaint.

Pursuant to the Amended Order of Attachment issued in this matter on plaintiff has attached the following funds to date: (1) $137,002.59 of funds of Tough Trader at Bank of New York; (2) $3,423 of funds of Ambient at Deutsche Bank; and (3) $145,590.30 of funds of Tough Trader at J.P. Morgan Chase Bank.

## ARGUMENT

Defendant's motion to vacate FESCO's attachments in this matter is without merit and should be denied.

The background behind Rule B of the Federal Rules of Civil Procedure, the basic application of the rule in a hearing pursuant to Rule E(4) (f), and the applicable burden upon FESCO at this stage of the proceedings are all discussed in detail in FESCO's memorandum of law submitted in

opposition to the parallel motion by Marachart *et al.* to vacate the attachments against them as alter egos of STC, and that discussion is fully incorporated herein by reference. In sum, it suffices for present purposes to state that the substantial majority of recent decisions have held that at a Rule E(4) (f) hearing plaintiff need only show that it has stated a *prima facie* valid maritime claim in its complaint in order to sustain an attachment under Rule B. Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870, *15 (S.D.N.Y. 2006) (For a plaintiff to show that "it has a valid *prima facie* admiralty claim against the defendant, in the context of maritime attachment, it appears that a plaintiff need not prove anything beyond its Verified Complaint, pursuant to Supplemental Rules B and E."). See also SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562, * 10 (S.D.N.Y. 2007) (Noting that the analysis in Tide Line "is consistent with the limited inquiry contemplated by Aqua Stoli and comports with a basic definition of the term "*prima facie*" and holding that the court "will look only to Plaintiff's pleadings, and not to any evidence submitted by the parties, to determine whether Plaintiff has made a legally sufficient claim for piercing the corporate veil."); Dolco Investments, Ltd. v. Moonriver Dev., Ltd., 2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. 2007) ("The Court agrees with the weight of authority in this district, and will apply the *prima facie* standard, as it more closely comports with the Second Circuit's rejection of the 'broader Rule E(4) (f) inquiry' that the reasonable grounds test would necessarily include."); See also Transportes Navieros y Terrestes, S.A. DE D.V. v. Fairmount Heavy Transport N.V., 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. 2007) (same); OGI Oceangate Transp. Co. Ltd. v. RP Logistics Pvt. Ltd., 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. 2007) (same).

## POINT I

### DEFENDANT CONCEDES THAT AT LEAST
### $1.5 MILLION OF PLAINTIFF'S CLAIM ARE RIPE

Although STC contends that part of FESCO's claim is an unripe "indemnity" claim that does not meet the *prima facie* pleading requirement, STC fully concedes (Br. 4) that FESCO's claim for $699,642.57 for failure to pay charter hire and for bunkers, itemized in paragraph 66 of the Amended Complaint, is "ripe." It also concedes that FESCO has stated a *prima facie* claim for $185,645, as itemized in paragraph 68 of the Amended Complaint, for costs expended relating to the cargo interests' arrest of FESCO's ship in Singapore, as well as for $653,675.81, as itemized in paragraph 71 of the Amended Complaint, for fees and costs incurred to the date of the Amended Complaint relating to defense of the cargo claims. Thus, by defendant's own concession, (Br. 4), the Court's order of attachment against STC must stand at least up to $1,538,963.30. Inasmuch as plaintiff has only attached $287,015.89 to date, there is therefore no dispute between the parties that the present attachments are not implicated by STC's motion.

Beyond the figures explicitly conceded by STC, it is well established that a party may also seek an attachment to secure an expected award of attorneys' fees, arbitrators' fees and interest. See, Dongbu Express Co. Ltd. v. Navios Corp., 1997 A.M.C. 34 (S.D.N.Y. 1996); Proton Shipping, Inc. v. Sovarex S.A., 2006 U.S. Dist. Lexis 2389 (S.D.N.Y. 2006). In the present case, plaintiff has claimed at ¶72 (a) (a) of the Amended Complaint for $274,439 of interest on the elements of its claim which defendant concedes are presently ripe. Additionally, it is reasonable to estimate that at least $100,000 of the attorneys' fees and arbitrators' fee claimed in ¶¶ 72(c) and (d) of the Amended Complaint would be awarded in FESCO's favor were it to prevail on only the above claims against STC in London arbitration. Thus, based on STC's admissions, a further $374,439 must be

considered to be conceded by defendant STC as being "ripe" for those purposes. This brings the concededly ripe claim amount to $1,913,402.30.

### POINT II

### DEFENDANTS' OBJECTIONS TO THE RIPENESS OF THE REMAINDER OF PLAINTIFF'S CLAIM ARE WITHOUT MERIT

Defendant STC objects to the ripeness of the balance of FESCO's claims, relating to the cargo claims and associated fees and costs incurred in respect thereof. These objections lack merit.

FESCO's claim for $164,000, itemized in paragraph 70 of the Amended Complaint, relating to a cargo damage claim which is pending against FESCO and for which FESCO has given full security to the cargo interests, clearly is sufficiently ripe to support an attachment. See Navalmar (U.K.) Ltd. v. Welspun Gujasat Stahl Rohryn, Ltd., 485 F. Supp. 2d 399 (S.D.N.Y. 2007). That case, discussing in detail the "indemnity" line of cases cited by defendant at Br. 3-4, held that plaintiff's cargo indemnity claim against a vessel charterer was sufficiently ripe where the plaintiff had already given security to the cargo interests on the claim. As that court explained, "[t]he entire point of an attachment, as a provisional remedy before trial, is to secure a plaintiff's claim before it can be adjudicated. In a world of shifting assets, numerous thinly-capitalized subsidiaries, flags of convenience and flows of currencies, maritime attachments have particular importance." Id. at 404. Equally, in the present case, where FESCO has had to give security to the cargo interests, it should be entitled to get security from STC in respect of the claim.

Indeed, under the analysis of Navalmar, the entirety of plaintiff's cargo-related claims are ripe, particularly given that the cargo interests on the mis-delivery claim have already commenced numerous suits against FESCO and have actively pursued security against FESCO, including arresting the ship in Lome and a sister ship in Singapore. (See Amended Complaint ¶¶ 20-22).

While it is true that these efforts of the cargo interests have thus far been thwarted (subject to a pending appeal in Singapore), (Amended Complaint ¶¶ 22), there can be no dispute that these claims are not only "real" but are being actively and aggressively pursued against FESCO. As such, FESCO should be entitled to security from STC in respect of these claims.

There is another critical distinction between the present case and the cases on which defendant relies in its motion, and that is the Letter of Indemnity given to FESCO by STC in respect of the cargo which is the subject of these claims. In the LOI, defendant specifically undertook as follows:

> 1. To indemnify you, your servants and agents and to hold all of you harmless in respect of *any liability*, loss, damage or expense of whatever nature which you may sustain by reason of the ship proceeding and giving delivery of the cargo in accordance with our request.
>
> 2. *In the event of any proceedings being commenced against you* or any of your servants or agents in connection with the ship proceeding and giving delivery of the cargo as aforesaid, *to provide you or them on demand with sufficient funds to defend same.*
>
> 3. *If, in connection with the delivery of the cargo as aforesaid, the ship, or any other ship or property in the same or associated ownership, management or control, should be arrested* or detained or should the arrest or detention thereof be threatened, or should there be any interference in the use or trading of the vessel ... *to provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of each such ship or property or to remove such interference and to indemnify you in respect of any liability, loss, damage or expense caused by such arrest* or detention or threatened arrest or detention or such interference, *whether or not such arrest or detention or threatened arrest or detention or such interference may be justified.*

(See Amended Complaint ¶ 14; Belknap Aff. Ex. 3) (emphasis added).

Plaintiff has <u>already</u> breached each of these three undertakings. As such, under English law it is clear that plaintiff's claims are presently ripe and should support an attachment under Rule B.[1]

In <u>Telfair Shipping Corp. v Intersea Carriers S.A. (The "Caroline P")</u>, [1984] 2 Lloyd's Rep. 466,[2] a vessel charterparty required the master to sign bills of lading "as presented" by the charterer. The terms of the bills of lading actually presented imposed obligations on the vessel owner in excess of those allowed for in the charterparty, and the owner consequently incurred liability under those obligations. The owner brought a claim against the charterer, in response to which the charterer asserted the defense of time bar. In considering when the owner's claim had accrued, the court identified at least three ways in which a person ("A") who has become liable to another ("B") may obtain redress from a third ("C"). <u>Id</u>. at 474.

The first is "by an action for damages for breach of contract", *i.e.* where A "will be in a position to claim that the incurring of his liability to B flowed directly from an act of C which constituted a breach of a contract between A and C". <u>Id</u>. at 474. In respect of such an action, the cause of action (and *a fortiori* the existence of a *prima facie* claim) "will date from the date of the breach of contract." <u>Id</u>. at 474. The second way A may obtain redress from C in respect of its liability to B is by a claim of "express indemnity" under a contractual provision. The third is "under an implied indemnity" such as would arise at common law irrespective of a contract. <u>Id</u>. at 474-75.

In <u>The Caroline P</u>, the issue was whether the time bar had run; consequently the dispute was

---

[1] Rule 44.1 of the Federal Rules of Civil Procedure provides that "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." In the present case, we have not submitted a declaration of an English solicitor or barrister, nor is one necessary. Nevertheless, in the event defendant elects to submit such evidence in reply, then plaintiff hereby reserves the right to submit such a declaration in further reply if it is considered to be warranted.

[2] Courtesy copies of the English court decisions will be supplied to the Court and opposing counsel along with a copy of these opposition papers.

over what was the *latest* date that the claim could have accrued. The Caroline P court readily acknowledged that "where a person is entitled to rely on an implied indemnity he can make a claim on such an indemnity in addition to making a claim based on some express provision of this contract with the indemnifier or . . . a claim for damages for breach of contract." Id. at 475 (emphasis added).

In the present case, as is detailed at ¶¶ 25-31 of Plaintiff's Amended Complaint, the claim has specifically been pled as one for breach of contract. In particular, Plaintiff has alleged that Defendant breached the Charter and the Letters of Indemnity (1) by giving invalid orders to proceed to Lome and deliver cargo; (2) by failing to indemnify FESCO in respect of "any liability, loss, damage or expense of whatsoever nature which FESCO might sustain by reason of delivering the cargo in accordance with [STC's] request; (3) by failing, once suit and arbitration were commenced by the cargo interests against FESCO, to provide it "with sufficient funds to defend the same," and (4) by failing to provide "such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property ... and to indemnify [FESCO] in respect of any liability, loss, damage or expense caused by such arrest or detention or threatened arrest ... whether or not such arrest or detention or such interference may be justified."

Moreover, the Letter of Indemnity is precisely the kind of express indemnity anticipated in The Caroline P which must be enforced pursuant to its terms. Id. at 474. As that Court noted:

> The second way [redress may be obtained] is by a claim on an express indemnity. In such a case the extent of the indemnity and the time at which the cause of action arises will depend on the construction of the contract. If the indemnity is an *indemnity against liability*, as it was held to be in Bosma v Larsen, the cause of action will come into existence when (A) here, Plaintiff] incurs a liability to (B) here, the cargo interests]. [Emphasis added.]

In Bosma v. Larsen, [1966] 1 Lloyd's Rep. 22, referred to in the above passage, the court considered the application of a time bar to a claim under a charterparty clause which provided that

-7-

the charterer was "to *indemnify the Owners against all consequences or liabilities* arising from the Master ... signing Bills of Lading or other documents or otherwise complying with such orders ...." Id. at 24 (emphasis added). In concluding that the claim at issue was timebarred, the Court observed as follows:

> It seems to me that the plain meaning of the expression to indemnify against "all liabilities" is that it imposes the obligation to indemnify against the *incurring* of a liability, not the discharge of that liability by payment or the determination of that liability by judicial process. Indemnity against liability seems to me to be different from reimbursement against sums paid in pursuance of a legal liability. The shipowner is damnified as soon as he comes under a liability. The damnification contemplated by the Clause is the incurring of the liability not the payment.

Id. at 28 (emphasis added). The Court then clarified its determination as follows:

> I accordingly conclude that on the agreed facts of this case the plaintiff's cause of action under Clause 9 [referenced above] of the charter-party arose at the date when the facts came into existence which created their liability to the cargo-owners or their insurers which facts came into existence before the date when the six-year period of limitation began and was not dependent upon either the determination of liability... or the plaintiff's payment ....

In the present case, paragraphs 1 and 3 of the Letter of Indemnity expressly provide that STC must indemnify FESCO "in respect of any liability." Under the above authority, therefore, claims under these paragraphs clearly are presently ripe. Paragraph 2 specifically speaks in terms of providing funds sufficient to defend claims against FESCO, and paragraph 3 speaks in terms of providing security to any party who arrests or even threatens to arrest FESCO's property, "whether or not such arrest or detention . . . may be justified." Clearly, these undertakings contemplate an immediate response by STC, and not merely a deferred right of action against STC in the event FESCO is ultimately held liable to some third party. Under these clauses, STC has a present contractual obligation to provide full security to the cargo interests once they attempted to arrest

-8-

FESCO's property. They have failed to do so, and that failure is a breach of the Letter of Indemnity, for which FESCO has a present cause of action and a claim equal to the claim against it asserted by the cargo interests.

The decision in <u>Bottiglieri Di Navigazione SpA v. Tradeline</u>, 472 F. Supp. 2d 588 (S.D.N.Y. 2007), <u>currently on appeal</u>, (Court of Appeals Docket No. 07-0850-cv), does not counsel a different result. In the first place, that decision did not involve claims under a letter of indemnity. Moreover, the decision in <u>Bottiglieri</u> was plainly incorrect as a matter of English law. Contrary to the holding in <u>Bottiglieri</u>, it is clear that distinguishing among the various theories of recovery outlined in <u>The Caroline P</u> turns on the allegations asserted by the plaintiff. It is for the plaintiff to frame its claim as one for breach of contract or for express or implied indemnity, and it is for the court to construe the claim on the basis of the allegations made. As <u>The Caroline P</u> court noted, after observing that the claim in that case could have been asserted as a breach of contract claim:

> But the case has been argued on the basis of an implied indemnity, the issue being as to the nature of such indemnity. Furthermore, it appears that where a person is entitled to rely on an implied indemnity he can make a claim on such an indemnity in addition to making a claim based on some express provision of his contract with the indemnifier or . . . a claim for damages for breach of contract.

<u>Id</u>. at 475.

The <u>Bottiglieri</u> court quoted at n. 14 from <u>Cathiship S.A. v. Altanasuns Ltd. (The "Catherine Helen")</u>, [1998] 2 Lloyd's Rep. 511, 517, noting that that decision supported the view that plaintiff's claim was presently ripe but interpreting it to mean that a breach without damages "is, without more, of no practical consequence . . . ." The <u>Bottiglieri</u> court's quotation was materially incomplete, however, because as <u>The Catherine Helen</u> court further observed:

> But what of the situation where there is a claim or potential claim for damages by the cargo-owner (who, as here, has demanded contractual

> security)? . . . The solution to the problem is in my view quite straightforward in that the shipowner can (a) make a claim in damages against the charterer for breach of contract and (b) further claim a declaration that he is entitled to be indemnified by the charterer under the charter-party in respect of claims successfully made against him by cargo-owners (on the basis mentioned above), such claim to be quantified once the amount for which the shipowner is liable is known.

Id. at 517-18. These decisions, when properly considered, thus fully support Plaintiff's position in the present case.

The decision in Total Liban S.A.L. v. Vitol Energy S.A., [1999] 2 Lloyds Rep. 700, further makes clear that there is no requirement under English law that a party's damages be fully quantified at the time a claim is asserted for a cause of action to be "ripe." In that case, C purchased a quantity of gasoline from B who had in turn purchased it from A. The gasoline tendered did not conform with that specified in the contracts, which caused C substantial losses. C sued B and B sued A. B was impecunious and would not have been able to fund any award made against it, so B agreed to assign its rights against A to C in exchange for C's agreement not to pursue B any further. In the litigation, A denied C's claim on the basis that C could not, by reason of the assignment, be in any better position than B and that, by reason of C's agreement not to pursue B, B had in fact suffered no loss. The question considered was as follows: "If A breaches its contract with B, so as to result in B being liable to C, does B have any claim for substantial damages against A (or is B entitled to equivalent declaratory relief) prior to B discharging its liability to C by payment?" Id. at 701.

The Total Liban court held, following a comprehensive review of the authorities, that B is "entitled to claim substantial damages from A (or equivalent declaratory relief) without first having discharged its liability to C by payment." Id. at 702. In more general terms, the court held that it would be contrary to basic principle, practical common-sense and commercial reality, as well as

-10-

binding authority, to have concluded that B could not claim against A until it had been found liable and had discharged its liability to C. Id. at 705. In summarizing its holdings, the Total Liban court noted as follows:

> (1) *In English law, the cause of action for breach of contact is complete on breach; in contract, unlike tort, loss or damage is not an ingredient of the cause of action.*
>
> (2) The question in contract of whether loss has been suffered, arises in the context of determining whether substantial damages may be claimed.
>
> (3) A legal liability owed by B to C, consequent upon and not too remote from A's breach of its contract with B, is capable of constituting recoverable loss entitling B to substantial damages from A. There is no rule of law, requiring B first to have paid C.
>
> \*   \*   \*
>
> (4) Difficulties in assessing damages should not be confused with rules governing recoverability; those difficulties, when they arise, which they do not here, are appropriately addressed by the techniques and range of options readily available to courts and tribunals.
>
> (5) There is nothing in any of this which does violence to the principle that damages are compensatory.

Id. at 714 (emphasis added).

From the foregoing, it is clear that all of FESCO's claims herein are presently ripe for adjudication; consequently, FESCO has stated a *prima facie* claim within the meaning of Rule B.

## CONCLUSION

For the foregoing reasons, defendant's motion to vacate the attachment should be DENIED, and this Court should grant FESCO such other and further relief as the Court may deem just and equitable.

Dated:  New York, New York
February 28, 2008

BLANK ROME, LLP
Attorneys for Plaintiff
FAR EASTERN SHIPPING CO. PLC.

By: /s/ *Thomas H. Belknap, Jr.*
Thomas H. Belknap, Jr. (TB 3188)
A Member of the Firm
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 885-5000
Fax: (212) 885-5001
tbelknap@blankrome.com