BLANK ROME, LLP
Attorneys for Plaintiff
FAR EASTERN SHIPPING CO. PLC.
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Thomas H. Belknap, Jr.
Tel:  (212) 885-5000
Fax:  (212) 885-5001
tbelknap@blankrome.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAR EASTERN SHIPPING CO. PLC.,

Docket No.:  07 Civ. 9887 (PAC)

Plaintiff,

-against-

SEA TRANSPORT CONTRACTORS LIMITED,
MARACHART SHIPPING CO. LTD. and, SWORD
TRADING S.A., AMBIENT SHIPHOLDING CO.,
S.A. and TOUGH TRADER MARITIME PTE LTD.,

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO THE MOTION BY MARACHART *ET AL* TO VACATE ATTACHMENT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT.............................................................................................1

FACTS .....................................................................................................................................1

ARGUMENT ..........................................................................................................................1

    A.    Background ................................................................................................2

    B.    The Basic Rule ..........................................................................................3

        POINT I PLAINTIFF'S BURDEN IS MERELY TO ESTABLISH THAT IT HAS PLED A *PRIMA FACIE* ALTER EGO CLAIM IN ITS COMPLAINT..............................................................................4

        POINT II PLAINTIFF FESCO HAS MET ITS PLEADING BURDEN IN THE PRESENT CASE..............................................................6

        POINT III IF THE COURT INTENDS TO CONSIDER THE EVIDENCE PROFERRED BY DEFENDANTS, THEN FESCO IS FIRST ENTITLED TO DISCOVERY OF DEFENDANTS .........................11

        POINT IV EVEN UNDER DEFENDANTS' PROPOSED HEIGHTENED SCRUTINY, FESCO'S ALTER EGO MUST STAND....................11

CONCLUSION.......................................................................................................................14

601650.00603/6617480v.1

## TABLE OF AUTHORITIES

### FEDERAL CASES

Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006)...2, 3, 4

Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co., 85 F.3d 44 (2d Cir.
    1996) ........................................................................................................................................2

Dolco Investments, Ltd. v. Moonriver Development, Ltd., , 486 F. Supp. 2d 261,
    2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. 2007) .....................................................5, 6, 7

FESCO Ocean Management Ltd. v. High Seas Shipping Ltd., 2007 U.S. Dist.
    LEXIS 19970 (S.D.N.Y. 2007)...........................................................................................9

Holborn Oil Trading, Ltd. v. Interpetrol Bermuda, Ltd., 774 F. Supp. 840
    (S.D.N.Y. 1991)...................................................................................................................8

Kirno Hill Corp. v. Holt, 618 F.2d 982 (2d Cir. 1980)........................................................6

MAG Portfolio Consultant, GmbH v. Merlin Biomed Group, LLC, 268 F.3d 58
    (2d Cir. 2001)......................................................................................................................8

Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 485 F. Supp. 2d
    399 (S.D.N.Y. 2007)............................................................................................................2

OGI Oceangate Transport Co. Ltd. v. RP Logistics Pvt. Ltd., 2007 U.S. Dist.
    LEXIS 46841 (S.D.N.Y. 2007)..........................................................................................5

Rhonda Ship Management Inc. v. Doha Asian Games Organising, Committee,
    2007 U.S. Dist. LEXIS 72694 (S.D.N.Y. 2007).............................................................6

Royal Swan Navigation Co. v. Global Container Lines, Ltd., 868 F. Supp. 599
    (S.D.N.Y. 1994)...................................................................................................................4

SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562
    (S.D.N.Y. 2007).............................................................................................................5, 9

T&O Shipping, Ltd. v. Source Link Co., Ltd., 2006 U.S. Dist. LEXIS 88153
    (S.D.N.Y. 2006).................................................................................................................10

Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870
    (S.D.N.Y. 2006)...........................................................................................................5, 6, 9

601650.00603/6617480v.1

**TABLE OF AUTHORITIES**

(continued)

Page

<u>Transportes Navieros y Terrestes, S.A. DE D.V. v. Fairmount Heavy Transport
N.V.</u>, 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. 2007) .....................................................5

<u>Ullises Shipping Corp. v. FAL Shipping Co.</u>, 415 F. Supp. 2d 318 (S.D.N.Y.
2006) ......................................................................................................................................4

<u>Wajilam Exports (Singapore) Pte. Ltd v. ATL Shipping Limited</u>, 475 F. Supp. 2d
275 (S.D.N.Y. 2006) ...............................................................................................7, 8, 9

<u>Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.</u>, 2007 U.S.
Dist. LEXIS 74477 (S.D.N.Y. 2007) ..............................................................................6

<u>World Reach Shipping Ltd. v. Industrial Carriers Inc.</u>, 2006 U.S. Dist. LEXIS
83224 (S.D.N.Y. 2006) ...............................................................................................7, 9

-iii-

## PRELIMINARY STATEMENT

Plaintiff, Far Eastern Shipping Co. Plc. ("FESCO"), submits this memorandum of law and the accompanying affidavit of Thomas H. Belknap, Jr. dated February 28, 2008 (the "Belknap Aff.") in opposition to the motion by Marachart Shipping Co. Ltd. ("Marachart"), Sword Trading S.A. ("Sword"), Ambient Shipholding Co., S.A. ("Ambient"), and Tough Trader Maritime Pte Ltd. ("Tough Trader") to vacate plaintiff's attachments in this matter.

## FACTS

The relevant facts underlying FESCO's claims in this matter are fully set forth in the Amended Complaint. (Belknap Aff. Ex. 1). As is detailed below, FESCO respectfully contends that defendant's motion should be decided solely on the basis of the allegations contained in the Amended Complaint, and no additional evidence should be considered at this stage. Nevertheless, to the extent the Court considers that it should consider additional evidence outside the pleadings, this Court is also respectfully referred to the accompanying Belknap Aff., to which are appended several exhibits which support the allegations contained in the Amended Complaint and which rebut the unsworn declaration of Anastasios Raisis submitted in support of defendant's motion to vacate.

Pursuant to the Amended Order of Attachment issued in this matter, plaintiff has attached the following funds to date: (1) $137,002.59 of funds of Tough Trader at Bank of New York; (2) $3,423 of funds of Ambient at Deutsche Bank; and (3) $145,590.30 of funds of Tough Trader at J.P. Morgan Chase Bank.

## ARGUMENT

Defendants' motion to vacate FESCO's attachments in this matter is without merit and should be denied.

## A.    Background

The provisional remedy of maritime attachment is "a feature of admiralty jurisprudence that antedates both the congressional grant of admiralty jurisdiction to the federal district courts and the promulgation of the first Supreme Court Admiralty Rules in 1844." Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 437 (2d Cir. 2006).  Maritime attachments have found favor in the courts because of the widely recognized fact that it is frequently more difficult to find property of parties to a maritime dispute than of parties to a traditional civil action.  "Maritime parties are peripatetic, and their assets are often transitory."  Aqua Stoli at 443.  Indeed, "[i]n a world of shifting assets, numerous thinly-capitalized subsidiaries, flags of convenience and flows of currencies, maritime attachments have particular importance."  Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 485 F. Supp. 2d 399 (S.D.N.Y. 2007) (citing Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co., 85 F.3d 44 (2d Cir. 1996)).  Thus, the policy underlying maritime attachment "has been to permit the attachment of assets wherever they can be found …."  Aqua Stoli at 443.  "This policy has been implemented by a relatively broad maritime attachment rule, under which the attachment is quite easily obtained."  Id.

Rule B of the Supplemental Rules for Admiralty and Maritime Claims, Fed. R. Civ. P. Supp. R. B, governs the procedure by which a party may attach another party's assets.  Rule B provides in relevant part:

> If a defendant is not found within the district, … a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process.…  The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment.  The clerk may issue supplemental process enforcing the court's order upon application without further court order.

"The order of attachment may be requested and granted *ex parte*, though notice of the attachment to the defendant via appropriate service is required." Aqua Stoli, 460 F.3d at 438. Supplemental Rule E(4) (f) provides for a prompt hearing as follows:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules ....

### B.    The Basic Rule

In Aqua Stoli, the Second Circuit Court of Appeals clarified the circumstances under which a Rule B attachment should be vacated. As that Court explained:

> We therefore hold that, in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. We also believe *vacatur* is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's *vacatur* power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

Id. at 445 (footnotes omitted).

Aqua Stoli made clear that "Rule B specifies the sum total of what must be shown for a valid maritime attachment." Aqua Stoli, 460 F.3d at 447. As the Aqua Stoli Court explained, so long as the technical requirements of Rules B and E are met, "an attachment should issue if the plaintiff shows that 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant

-3-

cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." <u>Aqua Stoli</u>, 460 F.3d at 445.

In so holding, the Second Circuit expressly rejected the reasoning of numerous district court decisions that had engaged in a broader inquiry under Rule E(4) (f), including those that adopted "a needs test, requiring the plaintiff to show that, even if the defendant cannot be found within the district, the attachment is necessary to obtain jurisdiction over a defendant or to secure a potential judgment." <u>Aqua Stoli</u> at 446. The Court also rejected the approach taken by the district court in <u>Royal Swan Navigation Co. v. Global Container Lines, Ltd.</u>, 868 F. Supp. 599 (S.D.N.Y. 1994), which "would impose a fact-intensive inquiry into the substantiality and nature of a defendant's presence in an adjacent district before deciding whether an attachment should be vacated." <u>Aqua Stoli</u> at 446-47.

## POINT I

### PLAINTIFF'S BURDEN IS MERELY TO ESTABLISH THAT IT HAS PLED A *PRIMA FACIE* ALTER EGO CLAIM IN ITS COMPLAINT

While the Second Circuit has not addressed the specific question of what a plaintiff must show to make out a "*prima facie*" admiralty claim, some district courts have held that a plaintiff must make an affirmative showing in the Rule E(4) (f) hearing that there exist "reasonable grounds" or "probable cause" for the attachment. <u>See</u> e.g., <u>Ullises Shipping Corp. v. FAL Shipping Co.</u>, 415 F. Supp. 2d 318 (S.D.N.Y. 2006). Under this standard, "although a minimal *prima facie* showing is sufficient to justify an attachment under Rule B, under Rule E(4) (f), [plaintiff] has the burden of presenting some evidence showing reasonable grounds for the attachment." <u>Id</u>. at 325.

Numerous more recent decisions have concluded, however, that this "reasonable grounds" inquiry is wholly inconsistent with the Second Circuit's holding in <u>Aqua Stoli</u> that a plaintiff need

-4-

only make a *prima facie* showing to sustain an attachment under Rule B. In Tide Line, Inc. v.

Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870, *15 (S.D.N.Y. 2006), the court observed

as follows:

> Although Aqua Stoli does not explicitly address this "probable cause"
> or "reasonable grounds" standard, the decision's emphasis that "Rule
> B specifies the sum total of what must be shown for a valid maritime
> attachment," – including a "valid *prima facie* admiralty claim against
> the defendant" – implies that the "probable cause" or "reasonable
> grounds" standard is improper insofar as it purports to go beyond this
> limited inquiry.
>
> For a plaintiff to show that "it has a valid *prima facie* admiralty claim
> against the defendant, in the context of maritime attachment, it
> appears that a plaintiff need not prove anything beyond its Verified
> Complaint, pursuant to Supplemental Rules B and E. [Citations
> omitted.]

See also SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562, * 10 (S.D.N.Y.

2007) (Noting that the analysis in Tide Line "is consistent with the limited inquiry contemplated by

Aqua Stoli and comports with a basic definition of the term "*prima facie*" and holding that the court

"will look only to Plaintiff's pleadings, and not to any evidence submitted by the parties, to

determine whether Plaintiff has made a legally sufficient claim for piercing the corporate veil.");

Dolco Investments, Ltd. v. Moonriver Dev., Ltd., 2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. 2007)

("The Court agrees with the weight of authority in this district, and will apply the *prima facie*

standard, as it more closely comports with the Second Circuit's rejection of the 'broader Rule E(4)

(f) inquiry' that the reasonable grounds test would necessarily include."). See also Transportes

Navieros y Terrestes, S.A. DE D.V. v. Fairmount Heavy Transport N.V., 2007 U.S. Dist. LEXIS

50260 (S.D.N.Y. 2007) (same); OGI Oceangate Transp. Co. Ltd. v. RP Logistics Pvt. Ltd., 2007 U.S.

Dist. LEXIS 46841 (S.D.N.Y. 2007) (same).

As the court explained in <u>Rhonda Ship Management Inc. v. Doha Asian Games Organising,</u>

<u>Committee</u>, 2007 U.S. Dist. LEXIS 72694, * 7-8 (S.D.N.Y. 2007):

> The majority of courts in this district have understood <u>Aqua Stoli</u> to
> require the application of the *prima facie* standard when considering
> the adequacy of a claim in a maritime vacatur motion. ...
>
> Under this standard, the Court looks only to the Complaint to
> determine whether the plaintiff has alleged a valid admiralty claim
> against the defendant. Maritime plaintiffs are not required to prove
> their cases at this stage of a Rule E(4) hearing. Moreover, <u>Aqua Stoli</u>
> implies that a plaintiff need not provide evidence to satisfy its burden
> under Rule E(4) (f). [Citations omitted.]

<u>See</u> also <u>Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.</u>, 2007 U.S. Dist. LEXIS

74477, * 22-23 (S.D.N.Y. 2007) (same).

FESCO has to date had no opportunity to obtain discovery from defendants on the alter ego

issues in this matter. This fact alone underscores the soundness of applying the *prima facie* pleading

standard at this stage of the proceedings. As explained by the <u>Wajilam</u> Court at 279:

> Discovery has not yet been had, and it would defeat the purpose of
> attachment—preserving defendants' assets in case plaintiff is able to
> prevail at trial or on summary judgment—to require at this stage that
> plaintiffs asserting a valid *prima facie* maritime claim prove that the
> facts in the complaint are true.

## POINT II

### <u>PLAINTIFF FESCO HAS MET ITS PLEADING BURDEN IN THE PRESENT CASE</u>

It is well established in this Circuit that under the federal maritime law, a corporate veil may

be pierced where it is shown that the corporation was used by another person or entity to "perpetuate

a fraud" <u>or</u> where it was "so dominated and its corporate form so dominated such that it primarily

transacted the other entity's or individual's business." <u>See, e.g.</u>, <u>Tide Line, Inc. v. Eastrade</u>

<u>Commodities, Inc.</u>, 2006 U.S. Dist. LEXIS 95870, *33 (S.D.N.Y. 2006) (quoting <u>Kirno Hill Corp. v.</u>

<u>Holt</u>, 618 F.2d 982, 985 (2d Cir. 1980)). <u>See also</u> <u>Dolco Investments, Ltd. v. Moonriver Dev., Ltd.</u>,

486 F. Supp. 2d 261, 271 (S.D.N.Y. 2007) ("Thus there are two distinct theories under which a maritime plaintiff may pierce the corporate veil: fraud and alter ego."); World Reach Shipping Ltd. v. Indus. Carriers Inc., 2006 U.S. Dist. LEXIS 83224, * 10 (S.D.N.Y. 2006) ("Federal common law allows piercing of the corporate veil where (1) a corporation uses its alter ego status to perpetrate a fraud or (2) where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own."); Wajilam Exports (Singapore) Pte. Ltd v. ATL Shipping Limited, 475 F. Supp. 2d 275, 282 (S.D.N.Y. 2006) (holding same).

Federal common law thus differs from New York law in that the pleading requirements for alter ego liability do not require allegations of both fraud and domination, but merely one or the other. Dolco Investments, Ltd. v. Moonriver Dev., Ltd., 486 F. Supp. 2d 261, 271 (S.D.N.Y. 2007) ("Under New York law, alter ego liability consists of both elements. However, it is the federal common law—not New York law—which governs this admiralty case. In the Second Circuit, federal common law requires that plaintiff allege only domination to state a claim for alter ego liability.") (citing ITEL Cont. Int'l Corp. v. Atlanttrafik Exp. Serv., Ltd., 909 F.2d 698, 703 (2d Cir. 1990)).

In pleading a claim in the Rule B attachment context, Supplemental Admiralty Rule E(2) (a) requires that the complaint must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." To be sure, this standard is somewhat higher than the basic "notice" pleading typically required in civil actions; nevertheless, it cannot be contended here (and indeed it has not been argued) that the defendants have been unable to commence an investigation of the facts and to frame a responsive

-7-

pleading. See e.g., Wajilm Exports, 475 F. Supp. 2d at 282 ("Although the pleading standard is higher in admiralty cases in which an attachment is sought than in other civil cases, Via Sistina can hardly argue that it has been unable to commence an investigation of the facts and frame a responsive pleading, because it has already done both. Moreover, the relevant allegations concern Via Sistina's own corporate relationships and practices, so there is no apparent reason why it should have difficulty investigating plaintiff's claims without more specifics than are provided in the Complaint.").[1] It is not, in other words, necessary to plead every single fact that may ultimately support a finding that one defendant is the alter ego of the other; rather, "plaintiff need only allege sufficient facts to support an *inference* that [one defendant] has so dominated and disregarded the [other defendant's] form that [the other defendant] primarily transacted [the defendant's] business rather than its own." Id. at 283 (emphasis added).

The Second Circuit has identified a number of factors that are relevant in evaluating alter ego claims: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of business discretion displayed by allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guaranty of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities. See MAG Portfolio Consultant, GmbH v. Merlin Biomed Group, LLC, 268 F.3d 58, 63 (2d Cir. 2001); Holborn Oil Trading, Ltd. v. Interpetrol Bermuda, Ltd., 774 F. Supp. 840, 844 (S.D.N.Y.

---

[1]     Allegations of alter ego not based on fraud are not subject to the stricter pleading requirements of Fed. R. Civ. P. 9(b). Wajilam at 283 n. 8; Dolco at 272.

1991) (applying these factors in the admiralty context); <u>Tide Line</u>, 2006 U.S. Dist. LEXIS 95870, *

35 (applying these factors in Rule B context); <u>Wajilam</u>, 475 F. Supp. 2d 275, 284 (same).

      As defendants fully concede (Br. 8-9), the courts of this district have not been quick to

vacate Rule B attachments based on alter ego allegations in a complaint, and such attachments have

been upheld on numerous occasions. <u>Wajilam</u>, 475 F.Supp. 2d 275 (upholding attachment where

complaint alleged that defendants routinely diverted funds in disregard of the companies' corporate

separateness); <u>FESCO Ocean Management Ltd. v. High Seas Shipping Ltd.</u>, 2007 U.S. Dist. LEXIS

19970 (S.D.N.Y. 2007) (upholding attachment where plaintiff alleged payments by one party on

behalf of another without contractual obligation to do so); <u>World Reach</u>, 2006 U.S. Dist. LEXIS

83224 (holding amended complaint stated *prima facie* case against alleged alter ego where it alleged

that it was acting as a paying agent in satisfying or arranging for third parties to satisfy the debts of

the controlled entity, made hire payments on behalf of the controlling company and was "intimately

involved in the specific details of the [Charter Agreement]."); <u>SPL Shipping Ltd v. Gujarat</u>

<u>Chiminex Ltd.</u>, 2007 U.S. Dist. LEXIS 18562 (S.D.N.Y. 2007) ("Plaintiff has essentially made three

allegations against Nirma:  first that Nirma has in this case, and other cases, made payments on

behalf of Gujarat to third parties; second, that there existed such unity of ownership and interest …

that no separation exists between Nirma and Gujarat, such that the corporate form has been

disregarded; and third, that Nirma has dominated and used Gujarat for their own purposes such that

there is no meaningful difference between the three entities and there has been an intermingling of

funds between the several entities.  Both factors are found among the list of factors a court may

consider when alter ego status has been pled, and are sufficient to state a valid admiralty claim.")

(internal quotation marks omitted); <u>Tide Line</u>, 2006 U.S. Dist. LEXIS 95870, * 44-46 (allowing

attachment to stand on amended complaint alleging that defendant was a shell corporation, was a

-9-

chartering arm through which the other defendant conducted its business, was wholly dominated, had no identifiable assets employees or assets, had payments made on its behalf, and had corporate and business functions performed for it by its controlling company); T&O Shipping, Ltd. v. Source Link Co., Ltd., 2006 U.S. Dist. LEXIS 88153 (S.D.N.Y. 2006) (denying motion to dismiss amended complaint where defendants were admittedly commonly owned and allegedly ignored corporate distinctness in contractual dealings with plaintiff and other parties).

In the present case, the allegations contained in the Amended Complaint more than adequately satisfy this Circuit's alter ego pleading requirements as to each of the defendants Marachart, Sword, Ambient and Tough Trader. It is clear, moreover, that the above allegations are far from "conclusory" or "general," as defendants would have this Court conclude, but are instead supported by specific and detailed factual allegations. As is more fully detailed at paragraphs 32-62 of the Amended Complaint, (Belknap Aff. Ex. 1), FESCO's allegations include specific details about common ownership, directorship and officers, (see ¶¶ 34, 35, 36, 37, 38, 39, 41, 44, 46, 47, 49, 50, 51, 55, 56, 57, 61); common office space, contact details and employees, (see ¶¶ 3, 4, 5, 6, 7, 33, 48, 61); common beneficial ownership, (see ¶¶ 53, 54, 55, 56, 57, 58, 59, 61); inadequate capitalization, (see ¶¶ 60, 61); failure to observe corporate formalities, (see ¶¶ 43, 44, 61); payment of others' debts, (see ¶¶ 42, 52, 54, 61); guaranteeing others' obligations without adequate consideration for doing so, (see ¶¶ 53, 54, 61); absence of independent business discretion, (see ¶¶ 43, 45, 60, 61); domination and control, (see ¶ 40, 44, 50, 51, 58, 59, 60, 61); transactions among the defendants not on arms' length terms, (see ¶¶ 45, 53, 61); and commingling of funds, (see ¶54, 61).

As the cases discussed above make perfectly clear, FESCO's alter ego allegations are more than adequate to survive defendants' motion to vacate the attachment. Accordingly, the motion should be denied.

-10-

## POINT III

### IF THE COURT INTENDS TO CONSIDER THE EVIDENCE PROFERRED BY DEFENDANTS, THEN FESCO IS FIRST ENTITLED TO DISCOVERY OF DEFENDANTS

If this Court were to consider the evidence submitted by defendants in the declaration of Anastasios Raisis, then it would effectively be converting defendants' application into a motion for summary judgment. To do so without first allowing FESCO the opportunity to obtain any discovery of defendants on these issues would be manifestly unfair. Accordingly, if the Court is inclined to consider this evidence, then it should allow FESCO a fair and adequate opportunity to obtain discovery from defendants on the alter ego issue before ruling on defendants' motion. This would include documentary discovery on the issues raised by the complaint and by defendants' objections, and it would particularly also include the deposition of Anastasios Raisis, as well as that of George Raisis, (see Amended Compl. ¶¶ 34, 35, 36, 39, 46, 48 and 50), and Christos Tolios). (see Amended Compl. ¶¶ 39 and 46).

## POINT IV

### EVEN UNDER DEFENDANTS' PROPOSED HEIGHTENED SCRUTINY, FESCO'S ALTER EGO MUST STAND

As the documents and evidence appended to the Belknap Affidavit make clear, even if this Court were to scrutinize the claims under the stricter standard defendants are proposing,[2] the outcome should be the same and the motion to vacate should be denied.

The evidence proferred by FESCO shows that Marachart made at least one hire payment on behalf of STC notwithstanding that STC was the contracting party, and not Marachart. (Belknap Aff. Ex. 8). It shows that Anastasios Raisis has admitted that he is the "controlling mind behind

-11-

STC." (Belknap Aff., Ex. 9, ¶ 10). It shows that Marachart and its employees routinely conducted the business of STC with disregard to the corporate formalities between the two companies, including signing letters of indemnity on behalf of STC. (Belknap Aff. ¶ 22 and Ex. 3). It shows that the companies all have common ownership and control and share the same accountant and advisor. (Belknap Aff., Ex. 9, ¶ 11). It shows that Sword, Ambient and Tough Trader all pledged their vessels as collateral on a revolving credit facility and that Marachart was their "corporate guarantor." (Belknap Aff., Ex. 11). It shows that the accounts of Sword, Ambient and Tough Trader were considered to be "joint accounts" for the purposes of the credit facility. Id. It shows that Sword, Ambient, Tough Trader and Marachart were all considered for the purposes of the credit facility as having "substantially the same beneficial ownership." Id. It shows that on multiple occasions Marachart made payments for Ambient and/or Tough Trader. (Belknap Aff., Ex. 10). It shows that Raisis specifically pitched to one of its customers the idea of using STC as a chartering party because it has no assets and so was immune from judgment. (Belknap Aff., Ex. 9, ¶ 33 and exhibit thereto). It shows that all of the defendants have common ownership and contact information. (Belknap Aff. Exs. 7, 9, 11). All of these facts, taken together, make a very substantial case that STC and the other defendants are all merely alter egos of each other and that Anastasios Raisis and the other shareholders have simply used these corporate shells to transact their own business as they see fit.

Defendants' evidence fails to rebut FESCO's evidence and allegations. Even if it were to be fully accepted by this Court, the Raisis Declaration fails even to address all of the allegations in the Amended Complaint, much less adequately to rebut them. In particular, Raisis conspicuously avoids

---

[2]    For all of defendants' objections to the *prima facie* standard of review followed in <u>Tide Line</u> and its progeny, defendants are vague at best as to what standard they consider the Court should apply at this stage in the proceedings.

-12-

any mention whatsoever of the allegations at ¶¶ 53-56 of the Amended Complaint relating to the group pledge of collateral on the vessel mortgage, with the obligations guaranteed by Marachart. He also fails to address the transfer of the M/V GRAIN TRADER for $1. (Amended Complaint ¶ 45). These are not the kinds of transactions that are entered by companies operating at arms length unless there is adequate consideration for doing so; no such consideration has been shown, and FESCO contends that none was given. Raisis further contends that Marachart's payment of STC's charter hire to FESCO was in its capacity "as agent," (Raisis Dec. ¶ 37), but he proffers no agency agreement nor evidence to document that this payment was accounted for on an arms-length basis.

Indeed, the defendants proffer no documents to counter the allegations in the complaint but instead rely merely on the self-serving words of Anastasios Raisis, shareholder in and beneficial owner of all of the defendants. The Raisis declaration is internally inconsistent. At ¶ 24 he states that he established STC "to pursue business opportunities that Marachart was neither structured nor equipped to pursue." And yet, at ¶ 32 he states that "I have always had STC use Marachart as its exclusive broker to fix, i.e., charter, vessels for the STC cargoes and/or contracts." At ¶ 34 he states that Marachart has no say in the business decisions of STC, but at ¶¶ 43-47 he indicates that Marachart was effectively making all such decisions and handling all day-to-day business of STC. Indeed, the evidence indicates that it was STC that was "not equipped" to do the business it was purportedly formed to do. At the least, the Raisis declaration raises at least as many questions as it purports to answer, and in any event it is insufficient to overcome the specific proof proffered by FESCO coupled with the good faith allegations asserted in the Amended Complaint.

Defendants' reliance (Br. 21) on a decision from a Greek court which purportedly denied the claim of some third party against Marachart and STC—in a matter in which FESCO was in no way involved and in no way participated—is frivolous. Defendants do not even contend—nor could

-13-

they—that that decision has any legally preclusive effect whatsoever in this action. Moreover, a cursory review of the decision in that case makes clear that the evidence before the Greek court was entirely different from the evidence proffered by FESCO in the present case. It is also clear that the legal standard applied was not the same as would apply in this Court. Accordingly, that decision is wholly irrelevant to these proceedings.

## CONCLUSION

For the foregoing reasons, defendants' motion to vacate the attachment should be DENIED, and this Court should grant FESCO such other and further relief as the Court may deem just and equitable.

Dated: New York, New York
February 28, 2008

BLANK ROME, LLP
Attorneys for Plaintiff
FAR EASTERN SHIPPING CO. PLC.

By:    */s/ Thomas H. Belknap, Jr.*
        Thomas H. Belknap, Jr. (TB 3188)
        A Member of the Firm
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel:  (212) 885-5000
Fax:  (212) 885-5001
tbelknap@blankrome.com

-14-