# EXHIBIT 1
## TO THE
## AFFIDAVIT OF THOMAS H. BELKNAP, JR.

BLANK ROME, LLP
Attorneys for Plaintiff
FAR EASTERN SHIPPING CO. PLC.
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Thomas H. Belknap, Jr.
Tel: (212) 885-5000
Fax: (212) 885-5001
tbelknap@blankrome.com



JAN 14 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| FAR EASTERN SHIPPING CO. PLC., | 9887<br>Docket No.: 07 Civ. 9887 (PAC) |
| Plaintiff, | **VERIFIED AMENDED COMPLAINT** |
| -against- | |
| SEA TRANSPORT CONTRACTORS LIMITED, MARACHART SHIPPING CO. LTD. and, SWORD TRADING S.A., AMBIENT SHIPHOLDING CO., S.A. and TOUGH TRADER MARITIME PTE LTD., | |
| Defendants. | |

Plaintiff, FAR EASTERN SHIPPING CO. PLC. ("FESCO"), complaining of the Defendants, SEA TRANSPORT CONTRACTORS LIMITED ("STC"), MARACHART SHIPPING CO. LTD. and("Marachart"), SWORD TRADING S.A. ("Sword"), AMBIENT SHIPHOLDING CO., S.A. ("Ambient"), and TOUGH TRADER MARITIME PTE LTD. ("Tough Trader"), (collectively "Defendants"), by its attorneys, Blank Rome, LLP, alleges upon information and belief:

601650.00601/6605309v.1

1.      This is an admiralty and maritime claim within the meaning of 28 U.S.C. § 1333 and Fed. R. Civ. P. Rule 9 (h).

2.      Plaintiff FESCO (hereafter "Plaintiff") is a Russian corporation with its principal office and place of business at 15, Aleutskaya Street, Vladivostok, Russia 690990 and with no office or place of business within this judicial district.

3.      Defendant STC is a corporation organized and existing under the laws of Liberia and with its principal place of business at 5 Kapodistrion Street, Athens, Greece and with no office or place of business within this judicial district. Defendant STC also operated from 24 Helmou Street, 145 65 Agios Stefanos, Attika, Greece.

4.      Defendant Marachart is a corporation organized and existing under the laws of Cyprus and with its principal place of business at 5 Kapodistrion Street, Athens, Greece and with no office or place of business within this judicial district. Defendant Marachart has a branch office at 24 Helmou Street, 145 65 Agios Stefanos, Attika, Greece.

5.      Defendant Sword is a corporation organized and existing under the laws of Panama and, on information and belief, had its principal place of business and mailing address c/o Marachart at 5 Kapodistrion Street, Athens, Greece and with no office or place of business within this judicial district. Defendant Sword also operated from 24 Helmou Street, 145 65 Agios Stefanos, Attika, Greece.

6.      Defendant Ambient is a corporation or other business entity organized and existing under the laws of the Republic of the Marshall Islands, with a registered office at Trust Company Camphx, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands and a principal place of business and mailing address c/o Marachart at 5 Kapodistrion Street, Athens, Greece and with no office or place of business within this judicial district.

7.      Defendant Tough Trader is a corporation or other business entity organized and existing under the laws of the Republic of Singapore, with a registered office at 4 Battery

Road #15-01 Bank of China Building, Singapore and a principal place of business and mailing address c/o Marachart at 5 Kapodistrion Street, Athens, Greece and with no office or place of business within this judicial district.

8.    By charter party dated September 9, 2005 (the "Charter"), Plaintiff, as the owner, time-chartered the ocean-going cargo vessel M/V CHELYABINSK (the "Vessel") to STC, as the charterer, for one time charter trip.

9.    That same day, by "back to back" time charter (the "Sub-charter"), STC sub-chartered the Vessel to Rustal Trading Ltd.

10.    Pursuant to the Charter and the Sub-charter, a part-cargo of rice was loaded aboard the Vessel at Nanjing, China. Bills of lading "Chelyabinsk 01-A," "Chelyabinsk 01-B" and "Chelyabinsk 02," all dated September 9, 2005 and providing for discharge at "Any African Port," were issued in respect of this cargo. The consignee on the "01-A" bill of lading was listed as "To the Order of Credit Agricole (Suisse)." The consignee on the "01-B" and "02" bills were listed as "To the Order of BNP Paribas (Suisse)."

11.    The Vessel thereafter proceeded to Kakinada, India where she loaded another cargo of rice, for which bills of lading "KKD/LT/01," "KKD/LT/02," "KKD/LT/03," "KKD/LT/04," and "KKD/LT/05" were issued, all dated October 11, 2005. All five bills called for discharge at Lome, Togo. The consignee on bills "01," "02," and "03" was listed as "To the Order of Credit Agricole." The consignee on bills "04" and "05" was listed as "To the Order of Banque Cantonale de Geneve, Geneva."

12.    Pursuant to STC's instructions, the Vessel thereafter proceeded to Abidjan in the Ivory Coast, where it discharged 6,000 tonnes of rice carried pursuant to bills of lading KKD/LT/03 and KKD/LT/05 against copies of those bills of lading and letters of indemnity issued by STC.

13.    STC thereafter ordered the Vessel to Douala, Cameroon to discharge the cargo being carried pursuant to the remaining bills of lading. Subsequently, however, STC rescinded that order and redirected the Vessel to Lome, Togo. On information and belief, this change of orders related to a dispute between STC and its sub-charterer, Rustal, over non-payment of hire.

14.    The Vessel arrived in Lome on or about December 23, 2005. Prior to her arrival, STC issued letters of indemnity in favor or Plaintiff by which it undertook *inter alia* as follows:

> 1.    To indemnify you, your servants and agents and to hold all of you harmless in respect of any liability, loss, damage or expense of whatever nature which you may sustain by reason of the ship proceeding and giving delivery of the cargo in accordance with our request.
>
> 2.    In the event of any proceedings being commenced against you or any of your servants or agents in connection with the ship proceeding and giving delivery of the cargo as aforesaid, to provide you or them on demand with sufficient funds to defend same.
>
> 3.    If, in connection with the delivery of the cargo as aforesaid, the ship, or any other ship or property in the same or associated ownership, management or control, should be arrested or detained or should the arrest or detention thereof be threatened, or should there be any interference in the use or trading of the vessel ... to provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of each such ship or property or to remove such interference and to indemnify you in respect of any liability, loss, damage or expense caused by such arrest or detention or threatened arrest or detention or such interference, whether or not such arrest or detention or threatened arrest or detention or such interference may be justified.

15.    STC obtained an order from the Lome Court of First Instance for the detention of the rice remaining on board the Vessel as security for STC's claim against its sub-charterer Rustal for unpaid hire.

16.    Thereafter, further proceedings and court applications were initiated in the courts in Lome involving various parties, including Plaintiff, STC, Rustal, and consignees of the above-referenced bills of lading in respect of the cargo remaining on board the Vessel.

17.    Ultimately, on or about February 3, 2006, the President of the Lome Court of Appeal affirmed an order that the cargo be discharged at Lome. This discharge occurred between February 4 and 18, 2006 against the letters of indemnity issued by STC.

18.    Upon discharge of the cargo, it was alleged on behalf of the cargo owners/consignees that there was damage to approximately 119.2 tonnes of the cargo. Ultimately, Plaintiff's protection and indemnity underwriters, commonly known as the UK P&I Club, issued security on behalf of Plaintiff in respect of all alleged damage to the cargo discharged at Lome in the form of a Club Letter of Undertaking in the amount of €113,411, which converts to US dollars as $164,000 (1 Euro = $1.44495). That claim remains outstanding against Plaintiff, and the Club Letter of Undertaking continues to stand as security for that claim.

19.    STC has failed to post security or indemnify Plaintiff in respect of its costs and expenses incurred in respect of this claim depite being put on notice of this claim.

20.    After all cargo was discharged from the Vessel in Lome, the cargo consignees in respect of the bills of lading relating to cargo discharged at Lome arrested the Vessel, not in respect of the cargo damage referenced in the previous paragraphs, but in respect of alleged losses resulting from the allegedly wrongful discharge and detention of the cargo by STC in Lome. This arrest was set aside by the court in Togo on February 24, 2006, and the Vessel was allowed to sail from Lome.

21.    Subsequently, however, on or about March 18, 2006, Credit Agricole (Suisse) S.A. and Banque Cantonale de Geneve S.A., as consignees on certain of the above-referenced bills of lading for cargo ultimately discharged at Lome, commenced an action in the High Court of the Republic of Singapore arresting the M/V VASILY GOLOVNIN, alleging she is a "sistership" of the Vessel, with common ownership by FESCO (*i.e.*, Plaintiff herein), and seeking security in respect of their claims against Plaintiff for wrongful discharge and detention of the cargo (the "Singapore Action"). Those consignees describe their claims in the Singapore Action as follows:

> ... damages for breach of written and/or oral contracts evidenced by and/or contained in various Bills of Lading dated in or around September and/or October 2005 and/or a Charterparty and/or for conversion and/or wrongful detention and/or wrongful interference and/or breach of bailment and/or breach of duty and/or negligence in and about the bailment, loading, handling, custody, care, delivery and discharge of Plaintiffs' cargo of rice and the carriage thereof on board the ship or vessel "CHELYABINSK" from Nanjing, China and Kakinada, India to Douala, Cameroon during September—December 2005 and/or for a declaration for an indemnity and/or for an indemnity for all loss and/or liability suffered and/or incurred and/or injury to the Plaintiff's reversionary interests in the said cargo of which Plaintiffs are or were owners and/or lawful bill of lading holders and/or insurers and/or persons in possession and/or entitled to immediate possession in the said cargo and/or which was at their risk which resulted in loss and/or damage and/or delay and/or expenses and/or liability being suffered and/or incurred.

22.    Substitute security in the form of UK P&I Club letters of undertaking in the total amount of $6,898,680 was given on behalf of Plaintiff to the cargo claimants in the Singapore Action to obtain the release of the M/V VASILY GOLOVNIN from arrest; however, that provision of security was subject to whatever defenses Plaintiff might have to the validity of the arrest. Plaintiff subsequently applied to set aside the arrest in the

Singapore Action and to dismiss that action. As of the date of this complaint, Plaintiff's application has been granted by the lower court but that order remains the subject of appeal by Credit Agricole to the Singapore Court of Appeal.

23.    Although duly demanded and obliged to do so under the letters of indemnity, STC has failed to post security to the cargo interests in respect of this claim and has failed to indemnify Plaintiff in respect of its costs and expenses incurred in respect of this claim.

24.    The cargo consignees' substantive claims against Plaintiff are subject to London arbitration, and on or about April 13, 2007 Credit Agricole (Suisse) S.A., Banque Cantonale de Geneve S.A. and BNP Paribas all commenced arbitration in London against Plaintiff pursuant to the bills of lading, seeking full recovery in respect of the above-referenced claims. In total, the cargo interests' principal claims are asserted to be $5,024,000.

## COUNT I – BREACH OF CONTRACT

25.    All of the foregoing factual and legal allegations are incorporated herein by reference as if set forth in full.

26.    STC breached the Charter by, *inter alia*, giving invalid orders to proceed to Lome and to deliver the cargo there.

27.    Additionally and/or alternatively, STC is obliged to indemnify Plaintiff in respect of its losses and liability complained of herein pursuant to clause 8 of the Charter.

28.    Additionally and/or alternatively, STC breached the letters of indemnity by, *inter alia*, failing to indemnify Plaintiff in respect of "any liability, loss, damage or expense of whatsoever nature which [Plaintiff] may sustain by reason of delivering the cargo in accordance with [STC's] request."

29.    Additionally and/or alternatively, STC breached the letters of indemnity by, *inter alia*, failing, once suit and arbitration were commenced by the cargo interests against Plaintiff, to provide it "with sufficient funds to defend to same."

30.    Additionally and/or alternatively, in respect of the arrests of Plaintiff's ships in Lome and again in Singapore, STC breached the letters of indemnity by, *inter alia*, failing to provide "such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property ... and to indemnify [Plaintiff] in respect of any liability, loss, damage or expense caused by such arrest or detention or threatened arrest ... whether or not such arrest or detention or such interference may be justified."

31.    As a result of STC's breaches of the charter and the letters of indemnity, Plaintiff has suffered substantial and material damages as more particularized below.

## COUNT II – ALTER EGO/VEIL PIERCING

32.    Additionally or alternatively to Count I above, all of which foregoing factual and legal allegations are incorporated herein by reference as if set forth in full, Defendants STC, Marachart and, Sword, Ambient and/or Tough Trader are alter egos of each other such that the corporate veils of those parties should be pierced so that Plaintiff may obtain recovery against Marachart and/or Sword and/or Ambient and/or Tough Trader directly in respect of its claims against STC.

33.    At all relevant times, Marachart and STC shared the same trading address at 5, Kapodistriou Street, Athens, Greece. On information and belief, Sword, Ambient and/or Tough Trader also shared and/or utilized that same address. On information and belief, all the above companies also operated from 24 Helmou Street, 145 65 Agios Stefanos, Attika, Greece.

34.    At all relevant times, Marachart had the following shareholders: Anastasios G. Raissis, Georgios L. Raissis, and Melina Raissis.

601650.00601/6605309v.1

35.    The directors of Marachart were as follows: Anastasios G. Raissis, Georgios L. Raissis and Petros D. Zachariadis.

36.    According to the Marachart website (www.marachart.gr), Georgios L. Raissis was the President of Marachart. Anastasios G. Raissis was its Vice President.

37.    On information and belief, at all relevant times Anastasios G. Raissis was a principal shareholder of STC.

38.    As is disclosed by Anastasios Raissis' declaration (the "Declaration") filed in connection with an action commenced by STC against Industries Chimiques du Senegal in the United States District Court for the Southern District of New York, 05 CV 10271 (RCC), he is also president of the board of directors and managing director of STC. He is also its legal representative pursuant to Greek law.

39.    The other directors of STC were George L. Raissis and Christos Tolios.

40.    Anastasios Raissis was the "controlling mind behind STC." (See Declaration at ¶ 10).

41.    Marachart and STC are both members of the "Raissis Group of Companies that was established in 1927 by [Anastasios Raissis'] late grandfather Leonidas Raissis." (See Declaration at ¶ 6).

42.    On at least one occasion, Marachart made a payment directly to Plaintiff in respect of outstanding hire owed by STC, as they did for the time period December 21, 2005 – January 5, 2006, notwithstanding that STC was the signatory to the Charter and Marachart was not.

43.    Although STC was the nominal charterer, Plaintiff routinely received communications/instructions directly from Marachart in respect of the Vessel. Indeed,

Captain John Mavrommatis, an employee of Marachart, signed the Letters of Indemnity referred to in paragraph 14 above for STC.

44.    Sword, the registered owner of the cargo vessel M/V GRAIN TRADER, was also a member of the Raissis Group. Anastasios Raissis was the signatory for the vessel under Greek law, meaning that he was legally responsible for the Vessel vis-à-vis the Greek Authorities.

45.    GRAIN TRADER's prior owner was Angle Maritime Ltd ("Angle"), a former member of the Raissis group of companies. The bill of sale for the sale of the vessel from Angle to Sword indicates that the sale price was $1. According to those records, Anastassios Raissis was "attorney-in-fact" for both parties in the transaction. Indeed, ignoring the corporate veil when it suited, Anastassios Raissis executed the bill of sale on behalf of Angle and the acceptance of sale on behalf of Sword.

46.    At all relevant times Sword's directors were George Raissis (who was also president), Anastasios Raissis (who was also treasurer), and Christos Tolios (who was also secretary). All of these individuals were also directors or employees of Marachart.

47.    According to the Anastasios Raissis declaration noted above, at all relevant times Christos Tolios was the "chief accountant of our companies for many years and is currently our advisor on accounting matters since he was retired a couple of years ago." (Declaration ¶ 11).

48.    George Raissis and Anastasios Raissis, as well numerous other of Marachart's, STC's and Sword's directors and officers, list their address as 24, Helmou Street, 14565 AG Stefanos, Athens, Greece. This is the same address listed by Sword with the Panama Registry.

49.    The Lloyd's MIU website referred to Marachart as being the parent company of Sword and beneficial owner of GRAIN TRADER.

50.    At all relevant times, Ambient, the registered owner of the cargo vessel M/V PIONEER TRADER, was and is a member of the Raissis Group. On information and belief, Anastasios Raissis and/or George Raissis was and is the signatory for the vessel under Greek law and was and is a shareholder, director and/or officer of Ambient.

51.    At all relevant times, Tough Trader, the registered owner of the cargo vessel M/V TOUGH TRADER, was and is a member of the Raissis Group. On information and belief, Anastasios Raissis and/or George Raissis was and is the signatory for the vessel under Greek law and was and is a shareholder, director and/or officer of Tough Trader.

52.    On at least three occasions in December 2007 and January 2008, Marachart has made payments by wire transfer in which it has indicated that it is making the transfers "c/o Ambient." On information and belief, Marachart regularly makes and receives payments to its own account for Ambient and Tough Trader.

53.    By instrument dated June 26, 2007, a first preferred ship mortgage was recorded in Panama in respect of the M/V PIONEER TRADER in favor of Laiki Bank (Hellas) S.A. According to that instrument, Laiki entered into a loan agreement with Sword, Ambient and Tough Trader as joint borrowers on a decreasing revolving credit facility up to $7 million, for which the M/V GRAIN TRADER, the M/V PIONEER TRADER and the M/V TOUGH TRADER were pledged as collateral.

54.    Marachart is identified as "Administrator" in respect of this loan transaction, and the instrument indicates that all notices shall be sent ". . . to the shipowner: c/o Marachart Shipping Company Limited, 5 Kapodistrion Street, Metamorfossi 144 52, Attiki, Greece . . . ." Marachart is also the "corporate guarantor" for each of Sword, Ambient and Tough Trader, whose accounts are considered collectively as "combined accounts" for the purposes of the loan facility.

55.    There is a definition of "Group" in the loan agreement which refers collectively to Sword, Ambient and Tough Trader and each other party in the corporate guarantee (which includes Marachart as "corporate guarantor") or those companies that enjoy "substantially the same beneficial ownership" that Sword, Ambient and Tough Trader enjoy or the ships that they own or that Marachart administers. In other words, all of those companies that are part of the Raissis group of companies are defined as being part of the "Group" within the loan agreement.

56.    In addition, one of the purposes of the loan is to refinance a debt that exists with EFG Eurobank Ergasias S.A., the same bank from which both STC and Marachart made their hire payments under the CHELYABINSK charter. Similarly, Marachart's lawyers, Reed Smith Richards Butler, are irrevocably appointed by Sword, Ambient and Tough Trader as their agent under the loan agreement.

57.    Further, the group of vessels GRAIN TRADER, PIONEER TRADER AND TOUGH TRADER are all entered with the Swedish Club. The Lloyd's MIU website refers to the fact that Marachart is the beneficial owner of these vessels and the Sea-Web website refers to Marachart as being the parent company of Tough Trader and Ambient.

58.    Marachart existed for the purpose of "broking and management of dry cargo vessels" (Declaration ¶ 7) and STC was formed "with the specific objective of entering/taking shipping Contracts of Affreightment ... and shipping individual cargoes." (Declaration ¶ 5).

59.    Sword, Ambient and Tough Trader existed for the specific purpose of owning the Raissis Group's substantial assetassets, the M/V GRAIN TRADER, M/V PIONEER TRADER and M/V TOUGH TRADER. At all relevant times, on information and belief, these vessels were under the exclusive management and control of Marachart, both operationally and financially.

60.    STC was formed so that the Raissis Group could charter vessels while attempting to shield the Group's assets from creditors. This was a strategy commonly pitched and employed by the Raissis Group, as is evidenced by the "Cargo Movement Analysis" prepared by "Anastasios G. Raissis, Marachart Shipping Co Ltd" for Industries Chimiques du Senegal ("ICS") which is attached as an Exhibit to Anastasios Raissis' declaration noted above, (see Declaration ¶ 33), in which Mr. Raissis recommends to ICS that it employ STC as charterer because "ICS has a lot of property in Senegal and it thus gives the various shipowners the chance to seek for security in the event of a dispute, by arresting its assets." By contrast, according to Mr. Raissis, "[t]he expertise of Marachart is the biggest asset of STC." (See Analysis at pp. 5-6). Simply put, STC was a tool utilized by the Raissis Group to engage in business while evading legal liabilities.

61.    Based on the foregoing, and on information and belief, Plaintiff alleges as follows:

> a. That Defendants have ignored and/or failed to observed corporate formalities between and among themselves, including but not limited to co-mingling funds and property, engaging in transactions among themselves on other than arms-length terms, and by guaranteeing, paying or satisfying the debts and obligations of each other when it suits their purposes or those of their overlapping shareholders and directors;
>
> b. By design and intent of Defendants, defendant STC was inadequately capitalized to fulfill its contractual obligations, particularly including those to Plaintiff, so that it could shield the "Raissis Group of Companies" and, specifically, George and Anastassios Raissis, from substantial liabilities;

c.  Corporate funds and assets of STC were diverted for the use or benefit of the "Raissis Group of Companies" and, specifically, George and Anastassios Raissis, or others, for the specific purpose, *inter alia*, of evading substantial liabilities;

d.  The Defendants have substantially overlapping shareholders, directors, officers and personnel and are all nothing more than various arms of "The Raissis Group of Companies" which operate in union for the principal benefit of the Raissis Group and/or George and Anastassios Raissis;

e.  The Defendants share office space, contact details, overhead and personnel, and their operations are inextricably intertwined;

f.  The individual defendants exercise no independent business discretion but rather function solely as fully controlled and dominated instruments of the "Raissis Group of Companies" and, specifically, George and Anastassios Raissis.

g.  Defendants have engaged in transactions among themselves, and with other companies controlled by the Raissis Group and their shareholders, on other than arms-length terms and have given or received valuable property and/or services to/from each other without due or adequate consideration;

h.  Defendants are not run as individual profit centers but rather function collectively as controlled and dominated instruments of the "Raissis Group of Companies" and, specifically, George and Anastassios Raissis.

    i.  Defendants have guaranteed, paid or otherwise satisfied the debts and obligations of each other without adequate consideration for so doing when it suits the purposes of the Raissis Group and/or their shareholders.

    j.  Defendants have co-mingled funds and/or other assets and have used each other's assets on other than an arms-length basis.

62.    In sum, the corporate form of each of the defendants is a sham and exists solely for the purpose of evading liabilities and defrauding creditors. As such, this Court should pierce the corporate veils of each of the defendants and should hold them all jointly and severally liable in respect of Plaintiff's claims herein.

## COUNT III – AGENCY FOR AN UNDISCLOSED PRINCIPAL

63.    Additionally or alternatively to Count II above, all of which foregoing factual and legal allegations are incorporated herein by reference as if set forth in full, STC at all relevant times acted as agent for undisclosed principals Marachart and/or Sword and/or Ambient and/or Tough Trader such that they are liable to the same extent as STC on all claims asserted herein.

## ENGLISH LAW/ARBITRATION/LONDON HIGH COURT

64.    Clause 45 of the Charter provides that English law shall govern any disputes arising under the Charter and that all disputes arising thereunder shall be arbitrated in London, England. In accordance with 9 U.S.C. § 8, Plaintiff hereby reserves its right to proceed in arbitration against STC in London pursuant to the Charter. By virtue of their roles as alter egos and/or principals of STC, any arbitration award issued against STC in connection with this dispute is equally binding upon Marachart and, Sword, Ambient and/or Tough Trader.

65. The letters of indemnity issued by Defendant in respect of the cargo are subject to English law and provide for jurisdiction in the High Court of Justice of England. Plaintiff hereby reserves its right to litigate against STC in London pursuant to the letters of indemnity. By virtue of their roles as alter egos and/or principals of STC, any decision of the London courts issued against STC in connection with this dispute is equally binding upon Marachart and, Sword, Ambient and/or Tough Trader.

## PLAINTIFF'S DAMAGES FOR WHICH ATTACHMENT IS SOUGHT

66. Plaintiff has suffered substantial direct damages as a result of STC's breach of and/or failure to make payments presently due and owing under the Charter, including but not limited to (1) STC's failure to pay the balance due on final account under the Charter in the amount of $644,058.57 and (2) additional costs in the amount of $55,584 incurred in respect of the Vessel's call at Abidjan due to STC's failure to supply bunkers to the vessel prior to redelivery. Plaintiff is fully entitled to recover all such damages, totaling **$699,642.57**, from Defendant pursuant to the Charter.

67. Alternatively to the preceding paragraph, Plaintiff has suffered substantial direct damages as a result of STC's breach of the Charter and/or other wrongful conduct which resulted in various arrests of the Vessel at the discharge port and which directly resulted in Plaintiff's loss of profits resulting from its inability to conclude a new fixture for the Vessel. This alternative claim is calculated as $628,200. With the additional cost of $55,534 referenced in the preceding paragraph, which is recoverable under either alternative theory, this alternative claim is calculated as $683,784.

68. In addition to the foregoing, Plaintiff has suffered substantial direct damages as a result of the arrest of the M/V VASILY GOLOVNIN in the Singapore Action, which damages are estimated as follows: (1) 15 days maintenance at Singapore ($109,800); (2) port charges resulting from the arrest ($9,700); (3) fuel consumption during the period of arrest ($39,730); and (4) loss of use/profit for the period of the arrest ($159,230). In total,

Plaintiff's direct damages in this respect are at least **$185,645**. Plaintiff is fully entitled to recover all such damages referenced in this paragraph from STC pursuant to the Charter and/or the letters of indemnity issued by STC in respect of the cargo.

69.     To the extent Plaintiff is found to have any liability to these cargo claimants in respect of the Singapore Action, the London arbitration, or otherwise, Plaintiff is entitled to full indemnification from STC for any such liability pursuant to the Charter and/or the letters of indemnity issued by STC in respect of the cargo. The cargo interests have alleged claims of **$5,024,000** in London arbitration and have actively pursued security from Plaintiff in respect of these claims, including arresting Plaintiff's vessel in Lome and then again in Singapore. Plaintiff was required to post security for the cargo interests' claims in the amount of nearly $6.9 million. Although this security was returned when the cargo interests' claim for security was denied by the lower court in Singapore, Credit Agricole has appealed from that decision and security in the amount of $4,290,680 will have to be reinstated by Plaintiff in the event the appeal is successful.

70.     To the extent Plaintiff is found to have any liability to the cargo claimants in respect of the cargo damage claim referenced above, Plaintiff is entitled to full indemnification from STC for any such liability pursuant to the Charter and/or the letters of indemnity issued by STC in respect of the cargo. Plaintiff has been required to post security in respect of this claim in the amount of 113,500 Euros which equals **$164,000** (assuming 1 Euro = $1.44495), and that security remains outstanding.

71.     In addition, to the foregoing, further to STC's obligation pursuant to the letters of indemnity to make funds available to defend the claims of the cargo interests from time to time as they may be required, Plaintiff has, as of the date of this Complaint, already incurred the following attorneys' fees and costs to defend the claims of the cargo interests: (1) Shaw & Croft/Bentleys, Stokes & Lowless attorneys' fees: $320,000; (2) Henri de Richemont attorneys' fees of $98,559.79; (3) ETIC and local counsel in Lome's fees of $91,764.02; and

(4) Rajah & Tann attorneys' fees of $143,352. Taken together these fees and costs already incurred total: **$653,675.81.**

72. Interest, attorneys' fees, and arbitrators' fees are recoverable by the successful party in London arbitration.

   a. As to interest, Plaintiff conservatively estimates four years' interest at 7.5% will be awarded (a) in respect of its claim for the balance due under the Charter, the additional costs incurred to bunker the vessel in Abidjan, and its losses incurred as a result of the wrongful arrest of the M/V VASILY GOLOVNIN in Singapore, all as more fully detailed above, in the amount of $274,439; and (b) in respect of the indemnity claims, as detailed above, in the amount of $1,608,280, all of which amounts are recoverable against STC pursuant to the Charter and/or the letters of indemnity issued by STC in respect of the cargo.

   b. As to legal costs, it is estimated that if they succeed (a) BNP Paribas will be awarded $650,000 of attorneys' fees and costs; (b) Credit Agricole will be awarded $1,000,000 of attorneys' fees and costs; (c) and that Banque Cantonale will be awarded $900,000 of attorneys' fees and costs; all of which Plaintiff is entitled to recover against STC pursuant to the Charter and the letters of indemnity issued by STC in respect of the cargo.

   c. Additionally, in addition to those attorneys' fees and costs incurred to date, claimed above, it is estimated that Plaintiff will incur an additional $500,000 in attorneys' fees and costs in defending the arrest action in Singapore and the cargo interests' claims in London arbitration, and in pursuing its claims against STC in London arbitration, all of which

amounts are recoverable against STC pursuant to the Charter and/or the letters of indemnity issued by STC in respect of the cargo.

d. Additionally, it is estimated that arbitrators' fees for the banks' claims against Plaintiff and for Plaintiff's claim against STC will be approximately $255,000, all of which is recoverable against STC pursuant to the Charter and/or the letters of indemnity issued by STC in respect of the cargo.

e. In total, Plaintiff estimates that a total of **$5,187,719** will be incurred and recoverable against STC pursuant to the Charter and the letters of indemnity in respect of the above-referenced items a-d, and this amount should be added to Plaintiff's claims as stated herein.

73.    Defendants Marachart and/or Sword and/or Ambient and/or Tough Trader are equally liable in respect of all the foregoing amounts because of their status as alter egos and/or undisclosed principals of STC.

74.    The total sum for which Process of Maritime Attachment and Garnishment is requested against all defendants is **$11,914,682.38**.

75.    Defendants cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but Defendants are believed to have or will have during the pendency of this action, assets within this district consisting of cash, funds, freight and/or hire credits in the hands of garnishees in New York.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all of Defendants' tangible or intangible property or any other funds held by any garnishee in the district which are due and owing or otherwise the property of to the Defendants, up to the amount of **$11,914,682.38** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.    That judgment be entered adjudging Defendants Marachart and/or Sword and/or Ambient and/or Tough Trader alter egos or undisclosed principals of Defendant STC and holding them fully liable to the same extent as STC in respect of the foregoing claims;

D.    That this Court retain jurisdiction over this matter through the entry of a judgment on an arbitration award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof.

E.    That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: New York, New York
       January 14, 2008

                                  BLANK ROME, LLP
                                  Attorneys for Plaintiff
                                  FAR EASTERN SHIPPING CO. PLC.

By:                                
                          Thomas H. Belknap, Jr. (TB 3188)
                            A Member of the Firm
                      The Chrysler Building
                      405 Lexington Avenue
                      New York, New York 10174
                      Tel:  (212) 885-5000
                      Fax:  (212) 885-5001
                      tbelknap@blankrome.com

## VERIFICATION

STATE OF NEW YORK     :
                              : ss.:

COUNTY OF NEW YORK   :

    THOMAS H. BELKNAP, JR., being duly sworn, deposes and says:

    1. I am a member of the firm of Blank Rome, LLP, attorneys for the Plaintiff herein. I have read the foregoing complaint and know the contents thereof and that the same are true to the best of my information and belief.

    2. The reason this verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is now within this district.

    3. The sources of deponent's information and the grounds for my belief are documents furnished and statements made by representatives of said corporation.

                                           Thomas H. Belknap, Jr.

Subscribed and sworn to before me
this 14th day of January, 2008.

_____
Notary Public

                KARL V. REDA
          Notary Public, State of New York
      No. 30-4783126, Qual. In Nassau Cty.
       Certificate Filed in New York County
     Commission Expires Nov. 30, 2009

BLANK ROME, LLP
Attorneys for Plaintiff
FAR EASTERN SHIPPING CO. PLC.
Thomas H. Belknap, Jr. (TB-3188)
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FAR EASTERN SHIPPING CO. PLC.,

               Plaintiff,

           -against-

SEA TRANSPORT CONTRACTORS
LIMITED, MARACHART SHIPPING
CO. LTD. and SWORD TRADING S.A.,
AMBIENT SHIPHOLDING CO., S.A. and
TOUGH TRADER MARITIME PTE
LTD.,

              Defendants

07 Civ. Civ. 9837

**AMENDED AFFIDAVIT UNDER
SUPPLEMENTAL RULE B**

---

STATE OF NEW YORK    )
                            )   ss:
COUNTY OF NEW YORK   )

      THOMAS H. BELKNAP, JR., being duly sworn, deposes and says:

      1.    I am a member of the Bar of this Honorable Court and a member of the firm of

Blank Rome, LLP, attorneys for the Plaintiff herein. I am familiar with the circumstances of the

verified amended complaint and submit this affidavit in support of Plaintiff's request for the

issuance of process of maritime attachment and garnishment of the property of defendants,

("Defendants"), foreign corporations, pursuant to Rule B of the Supplemental Rules for Certain

Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

900200.00001/6589270v.2

2.      As more fully alleged in the verified amended complaint filed in this matter,

Defendants AMBIENT SHIPHOLDING CO., S.A. and TOUGH TRADER MARITIME

PTE LTD., are parties to a maritime contract of charter party and/or alter egos or principals of a

party to such a contract and are foreign corporations with no offices or places of business within

this judicial district.

3.      Under my supervision, my office did a search of the New York State Secretary of

State, Division of Corporations, the Transportation Tickler, telephone assistance, and a general

internet search.

4.      In our search, we did not find any listing or reference to Defendants in this

judicial district or the state of New York. In the circumstances, I believe Defendants cannot be

found within this district.

THOMAS H. BELKNAP, JR.

Sworn to before me this
14th day January, 2008

Notary Public

KARL V REDA
Notary Public, State of New York
No. 30-4783126, Qual in Nassau Cty.
Certificate Filed in New York County
Commission Expires
Nov 30, 2009