# EXHIBIT 11
## TO THE
## AFFIDAVIT OF THOMAS H. BELKNAP, JR.

MORGAN & MORGAN
ABOGADOS ATTORNEYS AT LAW

114172
2007



### REPUBLICA DE PANAMA
PROVINCIA DE PANAMA

## NOTARIA NOVENA DEL CIRCUITO DE PANAMA

*Licdo. Javier Danilo Smith Chen*

Teléfonos: 302-2760
302-2761
Fax:    302-2762

GALERIAS OBARRIO
ENTRE VÍA ESPAÑA Y VÍA BRASIL
PRIMER PISO, OFICINA 70

Apartado Postal 0834-00288
Carrasquilla, P, R. de Panamá
e-mail: notaria9@tcarrier.net

**COPIA**
**ESCRITURA** No. 10985 DE 26 DE Junio DE 20 07

**POR LA CUAL** se protocoliza el documento de **PRIMERA HIPOTECA NAVAL PREFERIDA** sobre

la Nave denominada **PIONEER TRADER** otorgada por su propietario **AMBIENT SHIPHOLDING CO.**,

en favor de **LAIKI BANK (HELLAS) S.A.**, el cual fue debidamente autenticado y legalizado por el

**CONSULADO GENERAL DE PANAMA EN PIREO,GRECIA** actuando en sus funciones notariales.

**REPUBLICA DE PANAMA**
**PAPEL NOTARIAL**




## NOTARIA NOVENA DEL CIRCUITO DE PANAMA

ESCRITURA PUBLICA NUMERO DIEZ MIL NOVECIENTOS OCHENTA Y CINCO---------

----------------------------------(10985)-----------------------------

POR LA CUAL se protocoliza el documento de **PRIMERA HIPOTECA NAVAL**
**PREFERIDA** sobre la Nave denominada **PIONEER TRADER** otorgada por su
propietario **AMBIENT SHIPHOLDING CO.**, en favor de **LAIKI BANK (HELLAS)**
**S.A.**, el cual fue debidamente autenticado y legalizado por el
**CONSULADO GENERAL DE PANAMA EN PIREO,GRECIA** actuando en sus funciones
notariales.

Panamá, 26 de junio de 2007.

------------------------------------------------------------------------

En la ciudad de Panamá, Capital de la República y Cabecera del
Circuito Notarial del mismo nombre a los veintiséis (26) días del mes
de junio de dos mil siete (2007), ante mí, **JAVIER DANILO SMITH CHEN,**
Notario Público Noveno Primer Suplente del Circuito de Panamá, con
cédula de identidad personal  ocho - doscientos veintiséis -
novecientos dos **(8-226-902)**, compareció personalmente el Doctor
**ENRIQUE DE ALBA**, varón, mayor de edad, panameño, casado, abogado,
vecino de esta ciudad, con cédula de identidad personal número ocho -
ciento sesenta y tres - novecientos veintitrés **(8-163-923)** persona a
quien conozco y que actuando en nombre de la firma forense **MORGAN Y**
**MORGAN**, con domicilio en **MMG TOWER**, Calle cincuentitrés E (53E),
Urbanización Marbella, Piso dieciséis (16) de la ciudad de Panamá,
República de Panamá, en su calidad de Apoderado Especial de la Nave
denominada **PIONEER TRADER,** la cual es propiedad de **AMBIENT SHIPHOLDING**
**CO.**, y me presentó para su protocolización en esta Notaría, y en
efecto protocolizo, el documento que contiene la **PRIMERA HIPOTECA**
**NAVAL PREFERIDA** de la Nave denominada **PIONEER TRADER.**-----------------

------------------------------------------------------------------------

Dicha **PRIMERA HIPOTECA NAVAL PREFERIDA** fue autenticada por el
**CONSULADO GENERAL DE PANAMA EN PIREO,GRECIA**, actuando en sus funciones

notariales y debidamente traducida al español por Intérprete Público
Autorizado.----------------------------------------------------------

En este estado el compareciente por este medio me pidió que hiciera
constar, como en efecto lo hago, las siguientes declaraciones:
**Patente:** tres dos seis nueve cinco - cero siete **(32695-07)- Datos de
Inscripción del Título a favor de la Sociedad AMBIENT SHIPHOLDING CO.:
Ficha:** dos nueve nueve dos cuatro**(29924)- Documento:** uno uno dos ocho
cero cero ocho **(1128008)- Monto Hipotecario de la Nave:** Siete Millones
de Doláres de los Estados Unidos de América con cero cero centavos
**(US\$7,000,000.00).**--------------------------------------------------

Queda hecha la protocolización solicitada y se expedirán todas las
copias que soliciten los interesados.---------------------------------

El Notario advierte que una copia de este instrumento debe
registrarse y ser leída como le fue al compareciente en presencia de
los testigos instrumentales **Yulia Correa de Quintero,** mujer, panameña,
casada, con cédula de identidad personal número ocho - trescientos
ochenta - noventa y seis **(8-380-96)** y **Luis Alberto Paz,** varón, con
cédula de identidad personal número P E - cuatro- seiscientos setenta
y dos **(PE-4-672),** mayores de edad, panameños y vecinos de esta
ciudad.--------------------------------------------------------------

Estas personas a quienes conozco y que son hábiles para ejercer el
cargo, lo encontraron conforme, le impartieron su aprobación y firman
todos para constancia por ante mí, el Notario que doy fe.------------
**ESTA ESCRITURA LLEVA EL NUMERO DIEZ MIL NOVECIENTOS OCHENTA Y CINCO-
--------------------------------(10985)--------------------------------
(Fdo.) ENRIQUE DE ALBA --- Yulia Correa de Quintero --- Luis Alberto
Paz ---- JAVIER DANILO SMITH CHEN,** Notario Público Noveno Primer
Suplemente del Circuito de Panamá.-----------------------------------
A continuación se transcribe la traducción del documento antes
mencionado.---------------------------------------------------------



**REPUBLICA DE PANAMA**
PAPEL NOTARIAL

NOTARIA PANAMA

28. VI. 07.

**NOTARIA NOVENA DEL CIRCUITO DE PANAMA**

------------------------ "T R A D U C C I Ó N" ------------------------

(APARECE UN CERTIFICADO DE INSCRIPCIÓN PRELIMINAR QUE DICE: --- "EL

SUSCRITO, CÓNSUL GENERAL DE PANAMÁ EN PIREO, GRECIA, HACE CONSTAR QUE

EL ANTERIOR ES FIEL COPIA DEL DOCUMENTO QUE SIRVIÓ DE BASE A LA

INSCRIPCIÓN PRELIMINAR DE: **PRIMERA HIPOTECA**, DIGITALIZADO EN: FICHA:

**29924**, DOCUMENTO: **1087592**, EL DÍA **22/2/2007**. – (Fdo.) **ALEXANDRA DE**

**VALETOPULOS**, Encargada de Asuntos Consulares – Consulado de Panamá en

Pireo, Grecia. *Lleva el sello del Consulado General de Panamá – Pireo,*

*Grecia*"). --------------------- SELLO ------------------------------

-------------------------------------------------------------------------

Fechada 22 de febrero de 2007 ---- **AMBIENT SHIPHOLDING CO.** ---- y ----

**LAIKI BANK (HELLAS) S.A.** ---- **PRIMERA HIPOTECA NAVAL PREFERIDA** – m.n.

**"PIONEER TRADER"** ---- V&P Law Firm ------------------------------------

------------------------------ **ÍNDICE** ---------------------------------

1.  DEFINICIONES ------------------------------------------------- 1 -----
2.  CONSIDERACIONES PRELIMINARES ------------------------------- 10 -----
3.  OTORGAMIENTO, TRASPASO E HIPOTECA -------------------------- 11 -----
4.  PAGO POR EL ARMADOR ---------------------------------------- 12 -----
5.  SEGUROS ---------------------------------------------------- 14 -----
6.  CAUCIÓN ---------------------------------------------------- 16 -----
7.  COVENIOS DEL ARMADOR --------------------------------------- 18 -----
8.  PROTECCIÓN DE LA GARANTÍA ---------------------------------- 23 -----
9.  CASOS DE INCUMPLIMIENTO ------------------------------------ 24 -----
10. PODER PARA VENDER, ETC. ------------------------------------ 26 -----
11. RÉDITOS DE VENTA ------------------------------------------- 27 -----
12. ABOGADO ETC. ----------------------------------------------- 28 -----
13. CURADOR ETC. ----------------------------------------------- 28 -----
14. INDEMNIZACIÓN ---------------------------------------------- 29 -----
15. RENUNCIA --------------------------------------------------- 29 -----
16. GARANTÍA --------------------------------------------------- 29 -----

17. LIBERACIÓN DE GARANTÍA------------------------------------ 29-----

18. INVALIDEZ------------------------------------------------- 30-----

19. INDEMNIZACIÓN POR MONEDA--------------------------------- 30-----

20. CESIÓN Y TRANSFERENCIA------------------------------------ 30-----

21. AVISOS------------------------------------------------------- 30-----

22. LEY Y JURISDICCIÓN CORRESPONDIENTES----------------------- 31-----

23. PODER LEGAL------------------------------------------------- 32-----

24. CONFLICTO DE IDIOMA---------------------------------------- 33-----

25. DATOS DE REGISTRO------------------------------------------ 33-----

26. ACEPTACIÓN-------------------------------------------------- 33-----

Anexos---------------------------------------------------------------

A    LA NAVE--------------------------------------------------------

B    DETALLES PRINCIPALES DE LA HIPOTECA--------------------------------

C    EL CONTRATO FINANCIERO-----------------------------------------

----------------------------------------------------------------

ESTA PRIMERA HIPOTECA NAVAL PREFERIDA se suscribe el día 22 de febrero
de dos mil siete ---- POR ---- **AMBIENT SHIPHOLDING CO.**, una compañía
constituida y existente con arreglo a las leyes de la República de las
Islas de Marshall, con su oficina registrada en Trust Company Complex,
Ajeltake Road, Ajeltake Island, Majuro, Islas de Marshall MH96960 (el
"**Armador**") como armador/deudor hipotecario, cuya expresión incluye a
sus sucesores y causahabientes permitidos; ---- **A FAVOR DE:** ---- **LAIKI
BANK (HELLAS) S.A.**, una compañía debidamente constituida con arreglo a
las leyes de la República de Grecia, con su oficina registrada en 16,
Panepistimiou Street, Atenas, Grecia y actuando a través de su oficina
en 63, Iroon Polytechniou Avenue and Skouze Street, 185 36, (el
"**Acreedor Hipotecario**") como prestamista/acreedor hipotecario. ----- **1.
DEFINICIONES** ----- 1.01 En esta Hipoteca, los siguientes términos
tendrán los siguientes significados, salvo que el contexto requiera de
otra cosa: ---- "**Adelanto**" significa la suma principal de cada

**REPUBLICA DE PANAMA**
**PAPEL NOTARIAL**



28. XI. 07



**NOTARIA NOVENA DEL CIRCUITO DE PANAMA**

empréstito por los Prestatarios conforme al Contrato Financiero o, si
el contexto así lo requiere, la parte del mismo que esté por el
momento pendiente de pago al Acreedor Hipotecario conforme al Contrato
Financiero o, según sea el caso, la suma principal de dicha porción de
cada empréstito por los Prestatarios conforme al Contrato Financiero
para el cual los Prestatarios seleccionen un Período de Intereses
(como se define en el Contrato Financiero) de una duración particular;
---- **"Límite Aplicable"** significa la suma máxima de la Facilidad
disponible para retiro conforme al presente documento en cualquier
momento pertinente que es en la fecha del presente documento de Siete
millones de Dólares ($7,000,000) y que es reducida en cada Fecha de
Reducción por Ochocientos mil Dólares ($800,000) para el primer año
durante el cual la Facilidad esté disponible y por Trescientos mil
Dólares ($300,000) para cualquier año subsiguiente durante el cual la
Facilidad esté disponible y como fuera reducida adicionalmente de
acuerdo con cualquier otra estipulación del Contrato Financiero; ----
**"Margen Aplicable"** significa dos punto cincuenta por ciento (2.50%)
anual; ---- **"Corredores Aprobados"** significa los corredores de seguros
nombrados por el Armador con la aprobación previa del Acreedor
Hipotecario; ---- **"Cesión de Fletamento Aprobado"** significa respecto a
la Nave la cesión específica de primera prioridad de los derechos,
título e interés del Armador en el Fletamento por Tiempo Aprobado que
será suscrita por y entre el Armador y el Acreedor Hipotecario; ----
**"Prestatario A"** significa TOUGH TRADER MARITIME PTE LTD., una compañía
constituida y existente con arreglo a las leyes de la República de
Singapur, con su oficina registrada en 4 Battery Road, #15-01 Bank of
China Building, Singapore 049908, República de Singapur e incluye a sus
sucesores en título; ---- **"Prestatario B"** significa SWORD TRADING S.A.,
una compañía constituida y existente con arreglo a las leyes de la
República de Panamá, la oficina de cuyo Agente Residente es en Edificio

P.H. Bonanza Plaza, Oficina 3-B, Calle 41 Bella Vista, entre Justo Arosemena y Cuba, Ciudad de Panamá, República de Panamá; ---- **"Prestatarios"** significa colectivamente el Armador, el Prestatario A y el Prestatario B y, en singular, significa cualquiera de ellos; ---- **"Sociedad de Clasificación"** significa Lloyd's Register of Shipping o cualquier otra sociedad de clasificación miembro de la IACS que sea aprobada por escrito por el Acreedor Hipotecario; ---- **"Adquisición Obligatoria"** significa requisición para título u otra adquisición obligatoria, requisición, apropiación, expropiación, privación, decomiso o confiscación por cualquier motivo de la Nave por cualquier Entidad Gubernamental u otra autoridad competente, ya sea *de jure* o *de facto*, pero excluye la requisición para uso o arriendo, que no implique requisición de título; ---- **"Tasa por Mora"** significa la tasa a la que se hace referencia en la Cláusula 14.04 del Contrato Financiero; ---- **"Fecha del Requerimiento"** significa la fecha en la cual el Acreedor Hipotecario haga un requerimiento a los Prestatarios para la amortización de la Facilidad de acuerdo con la Cláusula 11 del Contrato Financiero; ---- **"Dólares"** y **"US$ y "$"** significa la moneda legal de tiempo en tiempo de los Estados Unidos de América; ---- **"Fecha de Retiro de Fondos"** significa, en relación con cada Adelanto, la fecha solicitada por los Prestatarios para que dicho Adelanto sea facilitado o (según el contexto requiera) la fecha en la cual dicho Adelanto sea en efecto facilitado. ---- **"Utilidades"** significa en relación con la Nave todo flete, arriendo y cualesquiera otras sumas sean cuales fueren que en cualquier momento fueran devengadas por o resultaran pagaderas por o a la cuenta del Armador o sus agentes, que surgieran de o como resultado de la propiedad, posesión, administración y/u operación de la Nave por el Armador o sus agentes o conforme a cualquier contrato de fletamento, contrato de transporte o de otra índole (incluyendo un contrato de salvamento o remolque) para el uso, la

REPUBLICA DE PANAMA
PAPEL NOTARIAL



NOTARIA
PANAMA



28. VI. 07

NOTARIA NOVENA DEL CIRCUITO DE PANAMA

operación o administración de la Nave, todos los pagos por cualquier variación de cualquier tal contrato y todos los daños por cualquier violación de cualquier tal contrato, toda avería gruesa y remuneración por salvamento y toda la compensación por requisición para arriendo; -- -- **"Cuenta de Utilidades"** significa en relación con la Nave la cuenta abierta a nombre del Armador con el Acreedor Hipotecario en Pireo, designada Cuenta de Utilidades AMBIENT SHIPHOLDING CO., en la cual todas las Utilidades de la Nave serán pagadas de acuerdo con la Cláusula 21.02 del Contrato Financiero y la Cláusula 7.04 de esta Hipoteca, cuya cuenta incluirá cualquier cuenta sustituta o designación modificada o número sea cual fuere; ---- **"Gravamen"** significa una hipoteca, prenda, crédito, carga (ya sea fija o flotante), cesión, pignoración, derecho de garantía real, retención de título, derecho preferencial o arreglo fiduciario y cualquier otro contrato o arreglo de garantía, ya sea existente actualmente o que surgiera en el futuro sobre los activos o ingresos del Armador, cualquier otra Parte de la Garantía, que no sea una prenda o crédito que surja por efecto de ley; ---- **"Aprobaciones Ambientales"** significa cualesquiera aprobaciones, licencias, permisos, certificaciones, excepciones o autorizaciones relacionadas con la Nave requeridas conforme a las Leyes Ambientales aplicables; ---- **"Reclamo Ambiental"** significa: --- (a) cualquier reclamo por cualquier autoridad gubernamental, judicial o reglamentaria que surja de un Incidente Ambiental o un presunto Incidente Ambiental o que se relacione con cualquier Ley Ambiental; o --- (b) cualquier reclamo por cualquier otra persona que se relacione con un Incidente Ambiental o a un presunto Incidente Ambiental; --- y **"reclamo"** significa un reclamo por daños, compensación, multas, recargos o cualquier otro pago de cualquier clase, ya sea o no similar a lo anterior; una orden o directriz de tomar, o no tomar, determinada acción o de desistir de o suspender determinada acción; y cualquier forma de acción de ejecución o reglamentaria,

incluyendo el secuestro o embargo de cualquier activo; ---- **"Incidente Ambiental"** significa: --- (a) cualquier liberación de Material de Importancia Medioambiental de una Nave Pertinente; o --- (b) cualquier incidente en el cual Material de Importancia Medioambiental fuera liberado de una nave, que no sea una Nave Pertinente, y que implique un abordaje entre una Nave Pertinente y cualquier otra nave o algún otro incidente de navegación u operación, en cualquier caso, en relación con el cual una Nave Pertinente sea real o potencialmente susceptible de ser secuestrada, embargada, detenida o decomisada y/o una Nave Pertinente y/o cualquier armador y/o cualquier operador o administrador de ésta sea culpable o de otro modo susceptible de cualquier acción legal o administrativa; o --- (c) cualquier otro incidente en el cual Material de Importancia Medioambiental sea liberado, de otro modo que no sea de una Nave Pertinente, y en relación con el cual cualquier Nave Pertinente sea real o potencialmente susceptible de secuestro y/o donde cualquier armador y/o cualquier operador o administrador de cualquier Nave Pertinente sea culpable o de otro modo susceptible de cualquier acción legal o administrativa; ---- **"Ley Ambiental"** significa cualquier ley relacionada con la contaminación o protección del ambiente, en el transporte de Material de Importancia Medioambiental o a liberaciones reales o amenazadas de Material de Importancia Medioambiental; ---- **"Material de Importancia Medioambiental"** significa hidrocarburos, productos de hidrocarburos y cualquier otra sustancia (incluyendo cualquier sustancia química, gas u otra sustancia tóxica o nociva), que sea (o sea capaz de ser o convertirse) contaminante, tóxica o nociva; -- -- **"Caso de Incumplimiento"** significa cualquiera de los casos a los que se hace referencia en la Cláusula 9; ---- **"Exceso de Riesgos"** significa en relación con la Nave la proporción de reclamos por averías gruesas y cargos de salvamento y bajo la cláusula corriente de responsabilidad en



**REPUBLICA DE PANAMA**
**PAPEL NOTARIAL**

NOTARIA
PANAMA

28.VI.07



REPUBLICA DE PANAMA

**NOTARIA NOVENA DEL CIRCUITO DE PANAMA**

abordaje, que no sea recobrable como consecuencia del valor al cual la

Nave fuera valorada para los efectos de dichos reclamos en exceso de su

valor asegurado; ---- "**Facilidad**" significa una facilidad de crédito

disminuyente rotativa por una suma de hasta Siete millones de Dólares

(US$ 7,000,000) que será suministrada por el Acreedor Hipotecario a los

Prestatarios mediante múltiples Adelantos, de conformidad con el

Contrato Financiero, como la misma fuera reducida de acuerdo con los

términos y condiciones del Contrato Financiero, o si el contexto así lo

requiere, la parte de la misma que esté por el momento pendiente de pago

al Acreedor Hipotecario conforme al Contrato Financiero; ---- "**Fecha de**

**Expiración de la Facilidad**" significa la fecha que cayera doce (12)

meses después de la fecha del Contrato Financiero (la "**Fecha de**

**Expiración de la Facilidad Original**") y en el caso de cualquier

renovación de la Facilidad de conformidad con las estipulaciones de la

Cláusula 11 cada fecha especificada por el Prestamista como la nueva

"**Fecha de Expiración de la Facilidad**"; ---- "**Contrato Financiero**"

significa el contrato financiero fechado el 17 de enero de 2007 entre

los Prestatarios y el Acreedor Hipotecario, de conformidad con el cual

el Acreedor Hipotecario ha convenido en suministrar la Facilidad a los

Prestatarios conforme a los términos y condiciones a los que allí se

hace referencia, como el mismo sea de tiempo en tiempo en adelante

reformado o suplementado (un borrador final de cuyo contrato

financiero se adjunta aquí como el Anexo C y se hace parte del

presente documento); ---- "**Cesión General**" la cesión general de

primera prioridad de igual fecha que el presente documento entre el

Armador y el Acreedor Hipotecario relativa a los Seguros, la

Compensación por Requisición y las Utilidades de la Nave para

garantizar el pago debido del Adeudo de modelo y contenido

satisfactorios para el Acreedor Hipotecario como el mismo fuera de

tiempo en tiempo reformado o suplementado en adelante; ---- "**Entidad**

Gubernamental" significa e incluye (ya sea o no que tenga una personería jurídica propia) cualquier autoridad gubernamental, junta, comisión, departamento, división, órgano, municipalidad, corte o agencia o tribunal nacional o local y cualquier asociación, organización o institución de lo cual cualquiera de los anteriores sea un miembro o a cuya jurisdicción cualquiera de los anteriores esté sujeto o en cuyas actividades cualquiera de los anteriores sea un participante; ---- "Grupo" tiene el significado que se le atribuye en el Contrato Financiero; ---- "Adeudo" significa el total de todas las sumas de tiempo en tiempo o en cualquier momento pendientes de pago, vencidas, adeudadas o pagaderas al Acreedor Hipotecario por los Prestatarios o cualquiera de ellos a título de principal, intereses, comisiones, costos y gastos o de otro modo, real o condicionalmente, conforme a los términos del Contrato Financiero y/o conforme a los demás Documentos de Garantía y/o en relación con ellos; ---- "Documentos de Seguros" significa todos los resguardos provisionales, contratos, pólizas, certificados de inscripción u otros documentos de seguros que evidencien o constituyan los Seguros de tiempo en tiempo vigentes; ---- "Seguros" significa todas las pólizas y contratos de seguros (expresión que incluye todas las inscripciones de la Nave en una asociación de protección e indemnización o mutua de casco o riesgos de guerra) o cualesquiera otros arreglos a manera de seguros que sean de tiempo en tiempo obtenidos o celebrados respecto a o en relación con la Nave o cualquier equipo a bordo de ella de conformidad con la Cláusula 5 e incluyendo todos los beneficios de los mismos, incluyendo todos los reclamos de cualquier naturaleza que fueren y la devolución de primas; ---- "Aseguradores" significa los suscriptores, compañías de seguros, asociaciones de seguros mutuos con o por los cuales los Seguros fueran obtenidos; ---- "Fecha de Determinación de Intereses" significa el Día Bancario que sea dos (2) Días Bancarios antes del inicio del Período de



**REPUBLICA DE PANAMA**
**PAPEL NOTARIAL**

NOTARIA NOVENA DEL CIRCUITO DE PANAMA

Intereses; ---- **"Fecha de Pago de Intereses"** significa respecto a cada Período de Intereses el último día de dicho Período de Intereses, siempre y cuando, que si cualquier tal fecha no fuera un Día Bancario, la Fecha de Pago de Intereses pertinente será el día próximo siguiente que sea un Día Bancario, salvo que dicho Día Bancario próximo siguiente cayera en otro mes calendario, en cuyo caso, la Fecha de Pago de Intereses pertinente será el Día Bancario inmediatamente anterior y siempre y cuando, además, que cuando dicho Período de Intereses sea de una duración de más de tres (3) meses, los intereses acumulados respecto a dicho Adelanto (o dicha parte del mismo) serán pagados cada tres (3) meses durante dicho Período de Intereses y el último día de dicho Período de Intereses; ---- **"Período de Intereses"** significa cada uno de los períodos sucesivos determinado de acuerdo con la Cláusula 6 del Contrato Financiero, durante el cual la Facilidad esté pendiente de pago y para el cual una Tasa de Interés hubiera de ser establecida conforme al Contrato Financiero; ---- **"Tasa de Interés"** significa para cada Adelanto (salvo según fuera estipulado en la Cláusula 7 del Contrato Financiero) la tasa de interés aplicable a dicho Adelanto (o cualquier parte de éste) durante cada Período de Intereses respecto al mismo que sea/sean concluyentemente certificada(s) por el Acreedor Hipotecario a los Prestatarios como el total de (a) el Margen Aplicable y (b) el LIBOR o el costo del Acreedor Hipotecario de financiar el Adelanto pertinente, para Períodos de Intereses de más de doce (12) meses; ---- **"Código ISM"** significa, en relación con su aplicación al Administrador, el Armador, la Nave y su operación: --- (a) El 'Código de Gestión Internacional para la Operación Segura de Naves y para la Prevención de la Contaminación', actualmente conocido o al que se hace referencia como el 'Código ISM', adoptado por la Asamblea de la Organización Marítima Internacional mediante Resolución A.741(18) del 4 de noviembre de 1993 e incorporada el 19 de mayo de 1994 al capítulo IX

de la Convención Internacional para la Seguridad de la Vida en el Mar de 1974 (SOLAS 1974); y --- (b) todas las demás resoluciones, circulares, códigos, normas, reglamentos y recomendaciones que sean actualmente o en el futuro emitidos por o en representación de la Organización Marítima Internacional o cualquier otra entidad con la responsabilidad de poner en práctica el Código ISM, incluyendo, sin limitación, las 'Normas sobre la implementación o administración del Código de Gestión de la Seguridad Internacional (ISM) por las Administraciones' producido por la Organización Marítima Internacional de conformidad con la Resolución A.788(19) adoptada el 25 de noviembre de 1995, como el mismo fuera reformado, suplementado o reemplazado de tiempo en tiempo; ---- "Documentación del Código ISM" incluye, en relación con la Nave: --- (a) el documento de cumplimiento (DOC) y el certificado de gestión de seguridad (SMC) expedido de conformidad con el Código ISM en relación con la Nave, dentro de los períodos especificados por el Código ISM; y --- (b) todos los demás documentos e información que sean pertinentes al ISM SMS y su implementación y verificación que el Acreedor Hipotecario pudiera requerir; y --- (c) cualesquiera otros documentos que sean preparados o que sean de otro modo pertinentes para establecer y mantener el cumplimiento de la Nave o el cumplimiento del Armador con el Código ISM que el Acreedor Hipotecario pudiera requerir; ---- "ISM SMS" significa, en relación con la Nave, el sistema de gestión de seguridad para la Nave que tenga que ser desarrollado, puesto en práctica y mantenido por el Armador conforme al Código ISM; ---- "Código ISPS" significa el Código Internacional de Protección de los Buques y de las Instalaciones Portuarias adoptado por la Asamblea de la Organización Marítima Internacional como el mismo hubiera sido o pueda ser reformado o suplementado de tiempo en tiempo; ---- "Documentación del Código ISPS" incluye en relación con la Nave: --- (a) el Certificado de Seguridad de Buque Internacional expedido de conformidad con el Código

**REPUBLICA DE PANAMA** REPUBLICA DE PANAMA
**PAPEL NOTARIAL**



NOTARIA
PANAMA

28.VI.07

**NOTARIA NOVENA DEL CIRCUITO DE PANAMA**

ISPS en relación con la Nave dentro de los períodos especificados por el Código ISPS; y --- (b) todos los demás documentos e información que sean pertinentes al Código ISPS y su implementación y verificación que el Acreedor Hipotecario requiera; ---- "LIBOR" significa, para un Período de Intereses: --- (a) la tasa anual igual a la cotización ofrecida para depósitos en Dólares o en la Moneda Alternativa (según sea el caso) por un período igual a, o lo más cerca posible igual a, el Período de Intereses pertinente que aparece en la página correspondiente del Servicio de Tasas de Dinero de la Pantalla Reuters a o alrededor de las 11:00 a.m. (hora de Londres) en la Fecha de Determinación de Intereses para dicho Período de Intereses (o en cualquier otro servicio que pudiera ser designado por la Asociación de Banqueros Británicos como el vendedor de información para los efectos de anunciar las Tasas de Ajuste de Intereses de la Asociación de Banqueros Británicos para Dólares o la Moneda Alternativa; o --- (b) si ninguna tasa fuera cotizada en la página correspondiente del Servicio de Tasas de Dinero de la Pantalla Reuters, la tasa anual determinada por el Acreedor Hipotecario como el medio aritmético (redondeado hacia arriba, de ser necesario, al próximo un dieciseisavo de uno por ciento) de las tasas anuales a las cuales depósitos en Dólares o en la Moneda Alternativa (según sea el caso) fueran ofrecidos al Acreedor Hipotecario por los principales bancos en el Mercado Interbancario de Londres o (en el caso de la Moneda Alternativa) en Luxemburgo y en el Mercado Interbancario de Atenas (a opción del Acreedor Hipotecario) a solicitud del Acreedor Hipotecario a o alrededor de las 11:00 a.m. (hora de Londres) de la Fecha de Determinación de Intereses para dicho Período de Intereses por un período igual a dicho Período de Intereses y para entrega el primer Día Bancario del mismo; ---- "Siniestro Mayor" significa, en relación con la Nave, cualquier siniestro a la Nave respecto al cual el reclamo o el total de los reclamos contra todos los aseguradores, antes del

ajuste por cualquier franquicia o deducible pertinente, excediera de US$150,000 o el equivalente en cualquier otra moneda; ---- **"Contrato de Administración"** significa el contrato de administración respecto a la Nave, suscrito por y entre el Armador y el Administrador, de modelo y contenido satisfactorios para el Acreedor Hipotecario, como el mismo fuera de tiempo variado o suplementado, con el consentimiento escrito previo del Acreedor Hipotecario; ---- **"Administrador"** significa MARACHART SHIPPING COMPANY LIMITED, una compañía constituida y existente con arreglo a las leyes de la República de Chipre, con su oficina registrada en Vasileos Georgiou, 4A, Agios Dometios, 2373 República de Chipre, con una oficina en 24 Helmou Street, 145 65 Agios Stefanos, Attiki, Grecia; ---- **"Valor de Mercado"** significa el valor de mercado de la Nave, determinado de acuerdo con las estipulaciones de la Cláusula 21.27 del Contrato Financiero y la Cláusula 7.28 de esta Hipoteca; ---- **"Hipoteca"** significa juntas la primera hipoteca preferida sobre la Nave a ser otorgada por el Armador al Acreedor Hipotecario para garantizar el pago debido del Adeudo de modelo y contenido satisfactorios para el Acreedor Hipotecario, como la misma sea de tiempo en tiempo reformada, variada o suplementada; ---- **"Naves Hipotecadas"** significa juntas las Naves y cada Otra Nave que esté hipotecada a favor del Acreedor Hipotecario como garantía del Adeudo; ---- **"Otras Naves"** significa la Nave A y la Nave B; ---- **"Créditos Permitidos"** significa cualquier crédito de abastecedor, transportista, trabajador o similar que surgiera en el transcurso normal de los negocios automáticamente por disposición legal o por efecto de ley y no a título de contrato respecto a sumas no aún vencidas y pagaderas, pero sin incluir cualquier crédito que surgiera de cualquier incumplimiento u omisión de las Partes de la Garantía o cualquiera de ellas; ---- **"Caso de Incumplimiento Potencial"** significa cualquier caso que únicamente con aviso o el transcurso del tiempo o una determinación del Acreedor Hipotecario y/o el cumplimiento



REPUBLICA DE PANAMA
PAPEL NOTARIAL



**NOTARIA NOVENA DEL CIRCUITO DE PANAMA**

de cualquier condición o cualquier combinación de lo anterior pudiera convertirse en un Caso de Incumplimiento; ---- **"Riesgos de Protección e Indemnización"** significa los riesgos corrientes cubiertos por una asociación de protección e indemnización administrada en Londres, lo que incluye, pero no se limita a, riesgos de contaminación y la proporción (si la hay) de cualesquiera sumas pagaderas a cualquier otra persona o personas que no sean recobrables en caso de abordaje bajo las pólizas de casco y maquinaria por motivo de la incorporación de las mismas de la Cláusula 1 de las Cláusulas de Tiempo (Casco) del Instituto (10/1/83) o la Cláusula 8 de las Cláusulas de Tiempo (Casco) del Instituto (11/1/1995) o la Cláusula de Responsabilidad en Abordaje Reformada del Instituto (10/1/71) o cualquier estipulación equivalente; ---- **"Nave Pertinente"** significa la Nave, cada Otra Nave y cualquier otra nave de tiempo en tiempo perteneciente a, administrada o dotada por, o fletada por entero o a casco desnudo al Armador o al Administrador o a cualquier otro miembro del Grupo; ---- **"Fecha de Reducción"** significa la fecha que cayera tres (3) meses después de la fecha del Contrato Financiero y cualquier fecha que cayera a intervalos trimestrales sucesivos conforme al mismo en el Período de Garantía, en cada una de cuyas fechas el monto de la Facilidad disponible conforme al Contrato Financiero será reducido de acuerdo con la cláusula 11.04 del Contrato Financiero. ---- **"Compensación por Requisición"** significa toda la compensación pagadera por motivo de cualquier Adquisición Obligatoria de la Nave; ---- **"Documentos de Garantía"** significa esta Hipoteca, la Cesión General, todos los demás documentos definidos como "Documentos de Garantía" en la Cláusula 2.01 del Contrato Financiero y (donde el contexto así lo admita) el Contrato Financiero y cualesquiera otros documentos otorgados como garantía del pago debido del Adeudo o cualquier parte del mismo ya sea de conformidad con la Cláusula 7.31 o de otro modo; ---- **"Período de Garantía"** significa el período durante el

cual los Documentos de Garantía continuaran vigentes y que finalizaran cuando el Adeudo fuera pagado en su totalidad; ---- **"Nave"** significa la nave motorizada PIONEER TRADER, descrita en el Anexo A del presente documento registrada según las leyes de la República de Panamá a nombre del Armador, e incluyendo cualquier acción o interés en la misma y el casco, motores, maquinaria, botes, haberes, enseres, aparejos, aparejos de repuesto, mobiliario, equipo, consumibles de combustible y otros pertrechos, pertenencias y accesorios de dicha nave, que estén a bordo o en tierra, incluyendo aquéllos que en el futuro sean puestos a bordo o que se conviertan en sus pertenencias o destinados para el uso a bordo si en tierra, de los que sea dueña actualmente o que adquiera en el futuro, y todas las adiciones, mejoras y reemplazos hechos o a ser hechos en o a dicha nave o cualquier parte de la misma y/o a dicho equipo; ---- **"Nave A"** significa la nave motorizada "TOUGH TRADER", una nave de carga a granel construida en 1980, con un peso muerto de 15,200 toneladas métricas y un peso liviano de 3,806 toneladas métricas, registrada como propiedad del Prestatario A bajo bandera de Singapur; ---- **"Nave B"** significa la nave motorizada "GRAIN TRADER", una nave de carga a granel construida en 1979, con un peso muerto de 30,084 toneladas métricas y un peso liviano de 7,456 toneladas métricas, registrada como propiedad del Prestatario B bajo bandera panameña; ---- **"Impuestos"** significa todos los impuestos, gravámenes, recaudos, aranceles, cargos, derechos, deducciones y retenciones actuales y futuros, y cualesquiera restricciones o condiciones que resultaran en un cargo (que no sean los impuestos sobre la renta neta total del Acreedor Hipotecario) e **"Impuesto"** e **"Imposición Fiscal"** serán interpretados asimismo; ---- **"Pérdida Total"** significa en relación con la Nave: --- 1. la pérdida total real o constructiva o comprometida o arreglada o convenida de la Nave; o --- 2. la Adquisición Obligatoria de la Nave; o --- 3. el apresamiento, embargo, secuestro, detención o confiscación de

REPUBLICA DE PANAMA
PAPEL NOTARIAL

NOTARIA
PANAMA

REPUBLICA DE PANAMA

28.XI.07

NOTARIA NOVENA DEL CIRCUITO DE PANAMA

la Nave por cualquier Entidad Gubernamental o por cualquier persona que

actuara o pretendiera actuar en representación de cualquier Entidad

Gubernamental si dicha Nave no fuera liberada o cancelada y restituida

al Armador dentro de sesenta (60) días o cualquier período menor

estipulado en los Seguros de Riesgos de Guerra; y ---- "Riesgos de

Guerra" significa todos los riesgos a los que se hace referencia en las

Cláusulas de Tiempo (Casco) del Instituto (10/1/83) y (11/1/95) lo que

incluye, pero no se limita a, el riesgo de minas, bloqueo y

atropamiento, nave desaparecida, confiscación y todos los riesgos

excluidos por la Cláusula 23 de las Cláusulas de Tiempo (Casco) del

Instituto (10/1/83) o la Cláusula 24 de las Cláusulas de Tiempo (Casco)

del Instituto (11/1/1995). ----- 1.02 Todos los demás términos que no

fueran específicamente aquí definidos (donde el contexto así lo

admita) tendrán los mismos significados que en el Contrato Financiero.

----- 1.03 En esta Hipoteca, el término "principal" significa todas las

sumas pagaderas por el Armador al Acreedor Hipotecario que no sean los

intereses. ----- 1.04 En esta Hipoteca, salvo que el contexto requiera

de otra cosa: ---- 1.04.01 las referencias a cláusulas, consideraciones

preliminares y anexos serán interpretados como referencias a cláusulas

de, y consideraciones preliminares y anexos a, esta Hipoteca y las

referencias a esta Hipoteca incluyen sus anexos; ---- 1.04.02 las

referencias a (o a cualquier estipulación específica de) esta Hipoteca

o cualesquiera otros documentos serán interpretadas como referencias a

esta Hipoteca, dicha estipulación o dicho documento como estuviera en

vigencia en el momento y como fuera reformado de acuerdo con los

términos del mismo o, según sea el caso, con el convenio de las partes

pertinentes; ---- 1.04.03 las palabras en plural incluirán el singular

y viceversa; ---- 1.04.04 las referencias a una persona serán

interpretadas como referencias a un individuo, firma, compañía,

sociedad, grupo no incorporado de personas o cualquier entidad

gubernamental; ---- 1.04.05 las referencias a una "garantía" incluyen referencias a una indemnización u otra aseveración contra pérdida financiera lo que incluye, pero no se limita a, una obligación de comprar activos o servicios como consecuencia de un incumplimiento por cualquier otra persona de pagar cualquier Adeudo y "garantía" será interpretada asimismo; y ---- 1.04.06 las referencias a disposiciones reglamentarias serán interpretadas como referencias a dichas disposiciones, como fueran reemplazadas o reformadas o modificadas de tiempo en tiempo. ----- 1.05 Esta Hipoteca se leerá junto con el Contrato Financiero, pero en caso de cualquier conflicto entre estos instrumentos, las estipulaciones del Contrato Financiero prevalecerán, siempre y cuando, sin embargo que esta Hipoteca se regirá siempre por la ley panameña. ----- 2.  CONSIDERACIONES PRELIMINARES ----- 2.01 El Armador es el dueño exclusivo, absoluto, legal y beneficioso de la totalidad de la Nave. ----- 2.02 El Acreedor Hipotecario y los Prestatarios han celebrado el Contrato Financiero de conformidad con el cual el Acreedor Hipotecario ha convenido en suministrarle a los Prestatarios la Facilidad mediante Adelantos múltiples para los fines a los que allí se referencia, siempre y cuando, sin embargo, que sujeto a los términos del Contrato Financiero en la medida que los Prestatarios pagaran por adelantado cualesquiera sumas tomadas en préstamo inicialmente respecto a la Facilidad, tendrán derecho a retomar en préstamo las sumas pagadas por adelantado en tal forma como capital de trabajo e inversiones hasta por el Límite Aplicable de tiempo en tiempo. ----- 2.03 De conformidad con el Contrato Financiero, los Prestatarios amortizarán la Facilidad al Acreedor Hipotecario en las fechas y en la forma a las que se hacen referencia en el Contrato Financiero y en las Cláusulas 4.01.01 y/o 4.01.02 y/o 4.01.03 y/o 4.01.04 del presente documento y pagará los intereses que devengue a la tasa, en las fechas y en la forma estipuladas en la Cláusula 4.01.05

REPÚBLICA DE PANAMÁ
PAPEL NOTARIAL

REPUBLICA

NOTARIA
PANAMA

28.VI.07

## NOTARIA NOVENA DEL CIRCUITO DE PANAMÁ

y/o 4.01.07 y/o 4.01.08 del presente documento. ----- 2.04 A fin de garantizar las obligaciones de los Prestatarios, conforme al Contrato Financiero y el pago de la suma principal de Siete Millones de Dólares (US$7,000,000) adelantada al Armador y a los otros Prestatarios en la fecha del presente documento (que es una Fecha de Retiro de Fondos) y todas las demás sumas de principal de tiempo en tiempo adelantadas por el Acreedor Hipotecario al Armador y a los otros Prestatarios de acuerdo con los términos del Contrato Financiero y los intereses que devengue y las comisiones y todas las demás sumas de dinero de tiempo en tiempo comprendidas en el Adeudo han autorizado debidamente el otorgamiento y la entrega de esta Primera Hipoteca Naval Preferida. ----
-- 2.05 El Contrato Financiero se incorpora a y forma parte integrante de esta Hipoteca, de manera que el término **"Hipoteca"** o **"esta Hipoteca"**, cuando sea utilizado, será interpretado como que significa esta Hipoteca y el Contrato Financiero. ----- 2.06 Esta Hipoteca es suplementaria al Contrato Financiero y a la garantía creada en tal forma. ----- 3.   **OTORGAMIENTO, TRASPASO E HIPOTECA** ----- 3.01 En acatamiento al Contrato Financiero y en consideración del acuerdo del Acreedor Hipotecario de facilitar la Facilidad a los Prestatarios a solicitud de, *inter alios*, el Armador y otra causa justa y onerosa (el recibo y la suficiencia de los cuales se acusa por este medio por el Armador) y a fin de garantizar el pago del Adeudo al Acreedor Hipotecario, y la ejecución de y el cumplimiento con los convenios, términos y condiciones contenidos en esta Hipoteca, el Contrato Financiero y los demás Documentos de Garantía, el Armador: ---- 3.01.01 ha otorgado, traspasado e hipotecado y por este medio otorga, traspasa, hipoteca y grava a y a favor del Acreedor Hipotecario, sus sucesores y causahabientes, a título de una Primera Hipoteca Naval Preferida y Gravamen de acuerdo con las estipulaciones del Capítulo V, Título IV del Libro Segundo del Código de Comercio de la República de Panamá,

todo el derecho, título e interés del Armador en y sobre la totalidad de la Nave (que el Armador garantiza por este medio que se encuentra libre en la fecha del presente documento de cualquier otro derecho de garantía real, crédito, carga o gravámenes sean cuales fueren que no sea a favor del Acreedor Hipotecario) tener y poseer los mismos al Acreedor Hipotecario, sus sucesores y causahabientes para siempre conforme a los términos aquí contenidos que se establecen para la exigibilidad del pago del Adeudo y para garantizar la ejecución y la observancia de y el cumplimiento con los convenios, términos y condiciones contenidos en esta Hipoteca y en el Contrato Financiero; y ---- 3.01.02 por este medio conviene y pacta que la Nave será tenida sujeto a esta Hipoteca, la cual será tenida por el Acreedor Hipotecario para el pago del Adeudo de manera que el cargo creado por este medio sea una garantía continua hasta que el Adeudo haya sido pagado al Acreedor Hipotecario en su totalidad. ---- Siempre y cuando, solamente y la condición del presente documento es tal que si el Armador o sus respectivos sucesores y causahabientes permitidos pagaran o hicieran amortizar al Acreedor Hipotecario, sus sucesores o causahabientes, el Adeudo como y cuando el mismo se venciera y fuera pagadero de acuerdo con los términos del Contrato Financiero y de esta Hipoteca, y observaran y cumplieran con los convenios, términos y condiciones contenidos en el Contrato Financiero y en esta Hipoteca, en forma expresa o implícita, que deban ser ejecutados, observados o cumplidos por y por parte del Armador, entonces el Acreedor Hipotecario, a solicitud y a costo del Armador, liberará y cancelará esta Hipoteca y otorgará dicho instrumento de cancelación o liberación, según sea requerido a tal efecto. ----- 3.02 No obstante cualquier cosa en sentido contrario aquí contenida, no es la intención que cualquier estipulación de esta Hipoteca renuncie al grado preferido de esta Hipoteca y que si cualquier estipulación o parte de la misma aquí fuera interpretada como

**REPUBLICA DE PANAMA**
PAPEL NOTARIAL

NOTARIA
PANAMA

REPUBLICA DE PANAMA

28. VI. 07

0006400

302133

**NOTARIA NOVENA DEL CIRCUITO DE PANAMA**

una renuncia al grado preferido de esta Hipoteca, entonces dicha estipulación será en tal medida nula y sin efecto. ----- **4. PAGO POR EL ARMADOR** ----- 4.01 El Armador pacta con el Acreedor Hipotecario como sigue: ---- 4.01.01 Sujeto según lo estipulado en el Contrato Financiero, el total de todas las sumas pendientes de pago de la Facilidad será amortizado por los Prestatarios en la anterior de: --- i) la Fecha de Expiración de la Facilidad Original o, sujeto a la Cláusula 11.04 del Contrato Financiero y la Cláusula 4.01.04 de esta Hipoteca en el caso de cualquier extensión o renovación de la Facilidad de conformidad con la Cláusula 11.02 del Contrato Financiero, las estipulaciones de la cual están representadas en la Cláusula 4.01.02 de esta Hipoteca, el último Día Bancario del período especificado en el aviso del Acreedor Hipotecario al que se hace referencia en la Cláusula 11.03 del Contrato Financiero y en la Cláusula 4.01.03 de esta Hipoteca; y --- ii) la Fecha del Requerimiento, siempre y cuando, sin embargo, que salvo que un Caso de Incumplimiento ha ocurrido el Acreedor Hipotecario dará un días aviso escrito previo de noventa (90) días al Armador de su intención de hacer un requerimiento para la amortización conforme al Contrato Financiero. --- En vista de lo cual en cualquier tal caso, la Facilidad será cancelada y ningún Adelanto adicional tendrá que ser retirado. ---- 4.01.02 El Armador y los otros Prestatarios podrá solicitar que el Acreedor Hipotecario consienta por escrito en la extensión de la Facilidad por períodos adicionales de hasta doce (12) meses, siempre y cuando, que dicha solicitud deberá ser dirigida al Acreedor Hipotecario por lo menos veinte (20) Días Bancarios antes de la Fecha de Expiración de la Facilidad Original o (en caso que la Facilidad ya haya sido extendida de conformidad con los términos de la Cláusula 11.02 del Contrato Financiero que están representados en esta Cláusula) veinte (20) Días Bancarios antes de la Fecha de Expiración de la Facilidad pertinente especificada en el aviso

del Acreedor Hipotecario al que se hace referencia en la Cláusula 11.03 del Contrato Financiero y la Cláusula 4.01.03 de esta Hipoteca, Y SIEMPRE Y CUANDO, ADEMÁS, que el Acreedor Hipotecario podrá a su discreción, siempre que de su consentimiento a dicha extensión de acuerdo con la Cláusula 11.03 del Contrato Financiero y la Cláusula 4.01.03 de esta Hipoteca ajustar el Límite Aplicable según lo estime apropiado. ---- 4.01.03 El Acreedor Hipotecario podrá (a su entera y absoluta discreción) mediante aviso por escrito a los Prestatarios, consentir en la solicitud del Armador y los otros Prestatarios a los que se hace referencia en la Cláusula 4.01.02 anterior y convenir en la extensión de la Facilidad por uno o más períodos adicionales hasta por doce (12) meses. Si el Acreedor Hipotecario no da dicho aviso según lo antedicho, todas las sumas pendientes de pago de la Facilidad serán amortizables de acuerdo con la Cláusula 4.01.01(i). Cualquier tal aviso será sin perjuicio al derecho del Acreedor Hipotecario a hacer el requerimiento al Armador y los otros Prestatarios en cualquier momento como se menciona en la Cláusula 4.01.01 (ii). ---- 4.01.04 El Armador acepta y acuerda que, en cada Fecha de Reducción, la suma máxima de la Facilidad disponible según el Contrato Financiero será reducida al Límite Aplicable y en caso que en cualquier Fecha de Reducción la suma principal pendiente de pago de todos los Adelantos retirados antes de dicha Fecha de Reducción excede del Límite Aplicable, el Armador se compromete a pagar al Acreedor Hipotecario en dicha Fecha de Reducción dicha parte de la Facilidad que sea requerida a fin de reducir la Facilidad al Límite Aplicable. ---- 4.01.05 Sujeto a los términos del Contrato Financiero, el Armador y los otros Prestatarios pagarán al Acreedor Hipotecario en cada Fecha de Pago de Intereses, intereses a la Tasa de Interés respecto a cada Adelanto (o la parte pertinente del mismo) que se acumularan a la Tasa de Interés para cada Período de Intereses relacionado con la misma vencidos en cada Fecha de Pago de

**REPÚBLICA DE PANAMÁ**
**PAPEL NOTARIAL**

NOTARIA
PANAMA

REPUBLICA DE PANAMA

28.VI.07



**NOTARIA NOVENA DEL CIRCUITO DE PANAMA**

Intereses respecto a la misma, siempre y cuando, que si cualquier tal
Período de Intereses fuera de una duración de más de tres (3) meses,
los intereses acumulados respecto a dicho Adelanto (o dicha parte del
mismo) serán pagados cada tres (3) meses durante dicho Período de
Intereses y el último día de dicho Período de Intereses. ---- 4.01.06
El Armador y los otros Prestatarios pagarán todos los gastos, reclamos,
obligaciones, pérdidas, costos, aranceles, derechos, cargos u otros
dineros que fueran indicados en esta Hipoteca y/o en el Contrato
Financiero como pagaderos por el Armador y/o los Prestatarios a o
recobrables del Armador y/o los Prestatarios por el Acreedor
Hipotecario (o respecto a los cuales el Armador conviniera en esta
Hipoteca en indemnizar al Acreedor Hipotecario) al requerimiento según
lo especificado en el Contrato Financiero y/o en las fechas y en la
forma especificadas en esta Hipoteca. ---- 4.01.07 El Armador pagará al
Acreedor Hipotecario intereses al requerimiento sobre cualesquiera
dineros (ya fuera principal, interés, comisiones o de otra índole), que
sean según esta Hipoteca y/o el Contrato Financiero y/o cualesquiera
otros Documentos de Garantía expresados como vencidos y que no fueran
pagados en sus fechas de vencimiento, a la Tasa por Mora, a partir de
la fecha en que quedaron vencidos hasta la fecha real de pago (tanto
antes como después de sentencia); siempre y cuando, sin embargo, que
esta estipulación no afectará el derecho del Acreedor Hipotecario a
recibir los intereses calculados a la Tasa por Mora establecida en los
Documentos de Garantía desde la fecha antes de hecho el requerimiento
según sea otro modo estipulado en el presente documento o en los demás
Documentos de Garantía en relación con los asuntos a los que aquí y
allí se hace referencia. ---- 4.01.08 El Armador pagará intereses sobre
cualesquiera tales gastos, reclamos, obligaciones, pérdidas, costos,
aranceles, derechos, cargos u otros dineros a los que se hace
referencia en la Cláusula 4.01.06 desde la fecha en la cual el gasto,

reclamo, obligación, pérdida, costo, arancel, derecho, cargo u otro dinero pertinente fuera pagado o incurrido por el Acreedor Hipotecario (tanto antes como después de cualquier sentencia pertinente) a la Tasa por Mora, cuyos intereses serán pagaderos al requerimiento. ---- 4.01.09 El Armador pagará toda y cada otra suma de dinero que se adeudara o pudiera adeudarse al Acreedor Hipotecario conforme al Contrato Financiero, esta Hipoteca y los demás Documentos de Garantía de los cuales el Armador fuera o llegara a ser parte en las fechas y en la forma especificadas en éste o aquéllos. ----- 4.02 El certificado de un dignatario del Acreedor Hipotecario en cuanto al monto del Adeudo o la Tasa de Interés o la Tasa por Mora será (salvo por error evidente) concluyente y de cumplimiento forzoso para el Armador. ----- 4.03 Si cualquier deducción o retención tuviera que ser efectuada por ley de cualquier tal pago respecto a los Impuestos, el Armador pagará una suma incrementada de manera que después de cualquier tal deducción o retención, el Acreedor Hipotecario recibirá y retendrá una suma neta igual al monto que hubiera recibido y retenido si tal deducción o retención no hubiera sido efectuada, y el Armador pagará las sumas deducidas o retenidas en tal forma a la autoridad fiscal o de otra índole pertinente, dentro del plazo estipulado por ley para dicho pago. El Armador indemnizará al Acreedor Hipotecario contra cualesquiera pérdidas o costos incurridos por ello por motivo de cualquier falta del Armador de deducir dichos Impuestos. ----- 5.  SEGUROS ----- 5.01 El Armador se compromete por este medio con el Acreedor Hipotecario en que durante todo el Período de Garantía, el Armador (a costo suyo y conforme a los términos, por las sumas y con los Aseguradores que fueran de tiempo en tiempo aprobados por escrito por el Acreedor Hipotecario) cumplirá con las siguientes estipulaciones de esta Cláusula 5, excepto que el Acreedor Hipotecario permita lo contrario: ---- 5.01.01 asegurar y mantener la Nave asegurada en Dólares o en





**REPUBLICA DE PANAMA**
**PAPEL NOTARIAL**

**NOTARIA NOVENA DEL CIRCUITO DE PANAMA**

cualquier otra moneda que pudiera ser aprobada por escrito por el
Acreedor Hipotecario, por el Valor Asegurable total de la Nave, pero en
ningún caso por una suma total para todas las Naves Hipotecadas que sea
menos de la mayor de (i) los Valores de Mercado de todas las Naves
Hipotecadas y (ii) ciento treinta por ciento (130%) del monto de la
Facilidad, contra riesgos de incendio, marítimos y de otra índole
(incluyendo Exceso de Riesgos) y Riesgos de Guerra cubiertos por
pólizas de casco y maquinaria; ---- 5.01.02 inscribir la Nave a nombre
del Armador por su valor y tonelaje completos en una asociación de
protección e indemnización aprobada por el Acreedor Hipotecario con
responsabilidad ilimitada, si estuviera disponible, o de otro modo con
la cobertura estándar más alta posible que por el momento es de Mil
millones de Dólares de Estados Unidos (US$ 1,000,000,000) por
contaminación de hidrocarburos y por exceso de derrame de hidrocarburos
y seguros contra responsabilidad por contaminación por la cobertura
estándar más alta posible contra todos los Riesgos de Protección e
Indemnización; ---- 5.01.03 si la Nave entrara en aguas territoriales
de los EUA por cualquier motivo sea cual fuere, obtener los seguros
adicionales para cubrir los riesgos que pudieran ser necesarios a fin
de obtener un Certificado de Responsabilidad Financiera del
Guardacostas de Estados Unidos; ---- 5.01.04 a solicitud del Acreedor
Hipotecario obtener Seguros de lucro y/o Utilidades cesantes respecto a
la Nave (según sea requerido por el Acreedor Hipotecario) respecto a
contratos de fletamento con una duración que exceda de seis (6) meses y
de otro modo en los términos y por las sumas que el Acreedor
Hipotecario le ordene al Armador como necesarias o apropiadas; ----
5.01.05 obtener los Seguros adicionales que fueran razonablemente
solicitados por el Acreedor Hipotecario para mantener el alcance de la
cobertura de los Seguros existente; ---- 5.01.06 renovar los Seguros
por lo menos catorce (14) días antes de que los Seguros pertinentes

expiren y a conseguir que los Corredores Aprobados confirmen con prontitud por escrito al Acreedor Hipotecario como y cuando cada tal renovación sea efectuada; ---- 5.01.07 pagar puntualmente todas las primas, cuotas, contribuciones u otras sumas pagaderas respecto a los Seguros y presentar todos los recibos pertinentes cuando sea requerido por escrito por el Acreedor Hipotecario; ---- 5.01.08 pagarle al Acreedor Hipotecario al requerimiento todas las primas o las demás sumas pagaderas por el Acreedor Hipotecario al obtener una póliza del interés del acreedor hipotecario y si fuera requerido por el Acreedor Hipotecario, una póliza de seguros del interés del acreedor hipotecario (peligros adicionales) a nombre del Acreedor Hipotecario por una suma asegurada mínima para las Naves Hipotecadas de ciento diez por ciento (110%) de la Facilidad y con la redacción y las condiciones que sean aceptables para el Acreedor Hipotecario; ---- 5.01.09 hacer arreglos para el otorgamiento de las garantías que fueran de tiempo en tiempo requeridas por cualquier asociación de Protección e Indemnización o de Riesgos de Guerra; ---- 5.01.10 dar aviso de cesión de los Seguros a los Aseguradores en el modelo del Anexo 2 de la Cesión General y conseguir que una copia del aviso de cesión sea endosada sobre o adjunta a los Documentos de Seguros; ---- 5.01.11 conseguir que los Documentos de Seguros sean depositados con los Corredores Aprobados y que dichos corredores le suministren al Acreedor Hipotecario copias certificadas de los mismos y emitir al Acreedor Hipotecario una carta o cartas de compromiso en el modelo que el Acreedor Hipotecario razonablemente requiera; ---- 5.01.12 conseguir que las asociaciones de Protección e Indemnización y/o de Riesgos de Guerra en las cuales la Nave estuviera inscrita le suministren al Acreedor Hipotecario una carta o cartas de compromiso en su formulario estándar y le suministren al Acreedor Hipotecario una copia del certificado de inscripción; ---- 5.01.13 conseguir que los Documentos de Seguros (incluyendo todos los

**REPUBLICA DE PANAMA** 
**PAPEL NOTARIAL**

NOTARIA
PANAMA



## NOTARIA NOVENA DEL CIRCUITO DE PANAMA

certificados de inscripción en cualquier asociación de Protección e Indemnización y/o de Riesgos de Guerra) contengan una cláusula de pérdidas pagaderas en el modelo del Anexo 3 o del Anexo 4 (según sea apropiado) de la Cesión General; ---- 5.01.14 conseguir que los Documentos de Seguros dispongan que el crédito o compensación por primas o cuotas sin cancelar esté limitado solamente a las primas o cuotas adeudadas en relación con los Seguros sobre la Nave y que catorce (14) días de preaviso escrito le sean dados al Acreedor Hipotecario por los Aseguradores (cuyo aviso será dado aún si los Aseguradores no hubieran recibido una indagatoria debida del Acreedor Hipotecario) en caso de cancelación o terminación de los Seguros y en caso de la falta de pago de las primas o cuotas, el derecho a pagar dichas primas o cuotas dentro de un plazo razonable; ---- 5.01.15 suministrarle con prontitud al Acreedor Hipotecario información completa respecto a cualesquiera siniestros o daño a la Nave por una suma en exceso de US$ 150,000 o como consecuencia de la cual la Nave se haya convertido o pueda convertirse en Pérdida Total; ---- 5.01.16 a solicitud del Acreedor Hipotecario, suministrarle al Acreedor Hipotecario, a costo del Armador, un informe detallado expedido por una firma de corredores o consultores de seguros marítimos nombrada por el Acreedor Hipotecario en relación con los Seguros; ---- 5.01.17 no realizar ningún acto ni voluntariamente asentir ni permitir que se realice cualquier acto mediante el cual cualquier Seguro fuera o pudiera ser suspendido o anulado y no asentir ni permitir que la Nave participe en cualquier viaje ni transporte cualquier carga que no esté permitida conforme a los Seguros vigentes sin cubrir primero a la Nave por el monto aquí estipulado con seguros satisfactorios para el Acreedor Hipotecario por dicho viaje o el transcurso de dicha carga; -- -- 5.01.18 (sin limitar la generalidad de lo anterior) especialmente no permitir que la Nave entre a o comercie en cualquier zona que sea

declarada una zona de guerra por cualquier Gobierno o por los Aseguradores de Riesgos de Guerra de la Nave, salvo que el Armador hubiera obtenido y a costo suyo, los seguros especiales que los Aseguradores de Riesgos de Guerra pudieran requerir; y ---- 5.01.19 conseguir que todas las sumas pagaderas conforme a los Seguros sean pagadas de acuerdo con la cláusula de pérdidas pagaderas según el modelo del Anexo 3 o del Anexo 4 (según sea apropiado) de la Cesión General y aplicar todas las sumas que sean pagadas al Armador hacia la reparación del daño y la reparación de la pérdida respecto a la cual dichas sumas hayan sido recibidas; ----- 6. CAUCIONES ---- El Armador asevera y garantiza al Acreedor Hipotecario que los siguientes asuntos son ciertos en la fecha de esta Hipoteca, y conviene en que seguirán siendo ciertos durante todo el Período de Garantía: ---- a) es una sociedad debidamente constituida y válidamente existente con arreglo a las leyes de la República de las Islas de Marshall, tiene pleno poder y autoridad para ser dueño de sus activos y para ejercer sus negocios en cada jurisdicción en la cual es dueña de activos o ejerce negocios; ---- b) es dueño legal y tiene posesión legítima de la totalidad de la Nave libre de cualquier derecho de garantía real, crédito, carga o gravamen sea cual fuere, a excepción de esta Hipoteca y según fuera de otro modo permitido por esta Hipoteca; ---- c) está debidamente autorizado para hipotecar la totalidad de la Nave y está debidamente autorizado para otorgar y entregar esta Hipoteca y todos los consentimientos necesarios para autorizarlo para otorgar esta Hipoteca han sido obtenidos; ---- d) toda medida social necesaria y requerida por ley para el otorgamiento y entrega de esta Hipoteca ha sido debida y efectivamente tomada; ---- e) no existe ninguna restricción en su Pacto Social y/o sus Estatutos o ningún acuerdo o instrumento del cual fuera parte que le prohíba celebrar u otorgar y entregar esta Hipoteca o de ejecutar todos los términos, convenios y condiciones contenidos en dichos instrumentos; --





**REPUBLICA DE PANAMA**
**PAPEL NOTARIAL**

## NOTARIA NOVENA DEL CIRCUITO DE PANAMA

-- f) esta Hipoteca constituye las obligaciones legales, válidas y vinculantes para él exigibles de acuerdo con sus términos; ---- g) no existen ningunas acciones, litigios o procedimientos pendientes o, a su leal saber y entender, amenazados contra o que lo afecten a él en derecho o en equidad o en derecho marítimo o ante cualquier tribunal o comisión, nacional o extranjero, o de cualquier agencia gubernamental, nacional o extranjera; ---- h) la Nave está hermética, a prueba de agua y fuerte, y bien y suficientemente aparejada, enjarciada, amueblada y equipada y en todo sentido en condiciones de navegabilidad; ---- i) la Nave está asegurada de acuerdo con los términos del Contrato Financiero y esta Hipoteca; ---- j) el Armador no ha vendido ni transferido ni convenido en vender o transferir, la Nave o cualquier acción en la misma; y ---- k) las aseveraciones y garantías contenidas en la Cláusula 16 del Contrato Financiero son ciertas y correctas respecto a los hechos y circunstancias existentes en la fecha de esta Hipoteca y son por este medio repetidos y modificados como si figuraran aquí expuestos en su totalidad. ----- 6.02 El Armador asevera y garantiza además por este medio al Acreedor Hipotecario que: ---- a) antes del otorgamiento de esta Hipoteca y la Cesión General no ha cedido, transferido, pignorado o gravado la Nave, las Utilidades, los Seguros y/o la Compensación por Requisición y conviene además con el Acreedor Hipotecario en que no lo hará durante el Período de Garantía, sin el consentimiento escrito previo del Acreedor Hipotecario, que el Acreedor Hipotecario tendrá pleno poder para retener. ---- b) todos los requisitos del Código ISM y el Código ISPS en lo que concierne al Armador y a la Nave se han cumplido; ---- c) el Armador y el Administrador han cumplido con las estipulaciones de todas las Leyes Ambientales respecto a la Nave; ---- d) el Armador y el Administrador han obtenido todas las Aprobaciones Ambientales y están en cumplimiento con todas estas Aprobaciones Ambientales respecto a la Nave; ---- e) ni

el Armador ni el Administrador han recibido aviso de cualquier Reclamo Ambiental que alegue que ya bien el Armador o el Administrador no está en cumplimiento con cualquier Ley Ambiental o con cualquier Aprobación Ambiental respecto a la Nave; ---- f) no existe ningún Reclamo Ambiental pendiente contra el Armador y/o el Administrador y/o la Nave; y ---- g) ningún Incidente Ambiental ha ocurrido que diera o pudiera dar lugar a cualquier Reclamo Ambiental contra el Armador y/o el Administrador y/o la Nave. ----- 7. **CONVENIOS DE LOS ARMADORES** ---- El Armador conviene además por este medio con el Acreedor Hipotecario en que durante todo el Período de Garantía deberá cumplir con las siguientes estipulaciones de esta Cláusula 7, excepto que el Acreedor Hipotecario permita lo contrario: ----- 7.01 no nombrar un administrador de la Nave que no sea el Administrador; ----- 7.02 registrar permanentemente la Nave conforme a las leyes y la bandera de la República de Panamá dentro de tres (3) meses a partir de su inscripción provisional y mantener la Nave registrada y matriculada a nombre del Armador como una nave panameña en el Registro de Naves y en el Registro Público de la República de Panamá (o bajo cualquier otro registro o en cualquier otro puerto en el cual el Acreedor Hipotecario pudiera convenir) y no realizar ni permitir que se realice cualquier cosa mediante la cual dicho registro y/o matrícula pudiera ser anulado o puesto en peligro y, sin perjuicio de la generalidad de lo anterior, el Armador otorgará y registrará dentro de tres (3) meses de la fecha del presente documento cualesquiera y todos los documentos o cosas que pudieran ser necesarios o aconsejables para registrar y matricular permanentemente la Nave como una nave panameña, y suministrar con prontitud al Acreedor Hipotecario de tiempo en tiempo las pruebas que el Acreedor Hipotecario pudiera solicitar para su satisfacción respecto al cumplimiento por el Armador con las estipulaciones de esta subcláusula 7.02; ----- 7.03 mantener la personería jurídica del



**REPUBLICA DE PANAMA**
**PAPEL NOTARIAL**



NOTARIA NOVENA DEL CIRCUITO DE PANAMA

Armador conforme a las leyes de la República de las Islas de Marshall y cumplir con toda legislación aplicable pertinente al Armador; ----- 7.04 pagar y conseguir el pago de todas las Utilidades de la Nave a la Cuenta de Utilidades; ----- 7.05 pagar cuando se venzan y sean pagaderos todos los impuestos, exacciones, contribuciones, cargos gubernamentales, multas y recargos legalmente impuestos sobre y exigibles contra la Nave, salvo que se impugnaran de buena fe por el Armador mediante los procedimientos apropiados; ----- 7.06 no vender, transferir, hipotecar, gravar, pignorar ni abandonar (salvo en caso de necesidad marítima) la Nave o cualquier equipo perteneciente a la misma o cualquier acción o interés en la misma ni ceder los Seguros o las Utilidades sin el consentimiento escrito previo del Acreedor Hipotecario, el cual tendrá pleno poder para retener; ----- 7.07 no hacer ni permitir que la Nave sea operada en cualquier forma contraria a cualquier ley o reglamentos en cualquier jurisdicción pertinente incluyendo, sin limitación, el Código ISM y el Código ISPS y no participar en ningún comercio ilegal ni en el transporte de ninguna carga que exponga a la Nave a recargo, decomiso o apresamiento, y en caso de hostilidades en cualquier parte del mundo (ya sea o no una guerra declarada) no emplear la Nave ni voluntariamente asentir a su empleo en el transporte de cualesquiera artículos de contrabando; ----- 7.08 no crear ni permitir que se cree o continúe cualquier crédito o Gravámenes sobre la Nave y/o cualquier equipo perteneciente a la misma y/o los Seguros y/o las Utilidades (que no sean Créditos Permitidos) y/o satisfacer todos los reclamos y demandas que, si no fueran pagados pudieran, en derecho o por disposición legal o de otro modo, crear un crédito o gravamen y (sin perjuicio de la generalidad de lo anterior) encargarse de que ningún crédito o gravamen sea creado o permitido o continúe sobre la Nave por cualquier motivo sea cual fuere; ----- 7.09 a solicitud escrita del Acreedor Hipotecario, suministrar evidencia

satisfactoria de que los salarios, prestaciones, seguros y contribuciones a pensión del Capitán y los tripulantes de la Nave se vienen pagando de acuerdo con el Contrato de Empleo en relación con la Nave y los reglamentos pertinentes, y que todas las deducciones de la remuneración del Capitán y los tripulantes respecto a cualquier obligación fiscal (incluyendo todas las contribuciones al seguro social) se vienen haciendo y contabilizando a la autoridad pertinente y que el Capitán no tiene reclamo por desembolsos que no sean aquéllos debidamente incurridos por él en el transcurso normal de la Nave en el viaje entonces en curso; ----- 7.10 si cualquier mandamiento judicial o procedimientos fueran emitidos contra la Nave o si la Nave fuera de otro modo embargada, secuestrada o detenida mediante cualquier procedimiento en cualquier corte o tribunal o por cualquier gobierno u otra autoridad, notificarle de inmediato al Acreedor Hipotecario al respecto por telefax confirmado por carta y tan pronto como sea prácticamente posible en adelante, conseguir que la Nave sea liberada y que todos los créditos o Gravámenes (a excepción de esta Hipoteca y cualesquiera Créditos Permitidos) sobre la misma sean levantados; ----- 7.11 sin el consentimiento escrito previo del Acreedor Hipotecario (el cual tendrá plena facultad de retener) no fletar la Nave por viaje o por tiempo o colocarla bajo contrato de empleo por cualquier período que, al ser agregado con cualquier período de extensión opcional contenido en dicho fletamento o contrato, excediera de seis (6) meses de duración, siempre y cuando, sin embargo, que en caso de que la Nave fuera empleada (con el consentimiento escrito previo del Acreedor Hipotecario) conforme a cualquier fletamento por entero o a casco desnudo o cualquier fletamento que, al ser agregado a cualesquiera períodos opcionales contenidos en dicho fletamento excedería de seis (6) meses de duración, se le suministrará al Acreedor Hipotecario de inmediato (a) detalles y evidencia documentaria satisfactoria para el

REPUBLICA DE PANAMA
PAPEL NOTARIAL



NOTARIA
PANAMA

28.VI.0



302133

## NOTARIA NOVENA DEL CIRCUITO DE PANAMA

Acreedor Hipotecario a su entera discreción respecto al nuevo empleo (b) a solicitud del Acreedor Hipotecario, una cesión específica a favor del Acreedor Hipotecario del beneficio de dicho fletamento junto con un aviso de cualquier tal cesión dirigido al fletador pertinente y endosado con un acuse de recibo por el fletador pertinente, todo de modelo y contenido satisfactorios para el Acreedor Hipotecario y (c) a solicitud del Acreedor Hipotecario, un contrato de subordinación específico de los derechos de dicho fletador a los derechos del Acreedor Hipotecario; ----- 7.12 sin el consentimiento escrito previo del Acreedor Hipotecario (el cual tendrá pleno poder para retener) no fletar por entero la Nave por cualquier período sea cual fuere; ----- 7.13 sin el consentimiento escrito previo del Acreedor Hipotecario (el cual tendrá pleno poder para retener) no entregar la Nave a la posesión de cualquier persona o personas para que efectúen reparaciones o renovaciones a la Nave, cuyo costo excederá de la suma de US$150,000, salvo que dicha persona o personas hayan dado un compromiso escrito al Acreedor Hipotecario de no ejercer ningún crédito o derecho de detención sobre la Nave respecto al costo de dichas reparaciones o renovaciones; ----- 7.14 en todo momento y a costo suyo, mantener la Nave en condición de navegabilidad y en buen estado de funcionamiento y reparación de acuerdo con la práctica de propietario de nave y la práctica de administración de nave de primera clase, y mantener la Nave en condición tal que la haga merecedora del grado de clasificación más alto con la Sociedad de Clasificación, libre de recomendaciones y anotaciones, que no se hubieran cumplido de acuerdo con sus términos, y suministrarle al Acreedor Hipotecario un certificado expedido por la Sociedad de Clasificación de que dicho grado de clasificación se ha mantenido, y copias de todos los demás certificados de clasificación que el Acreedor Hipotecario pudiera solicitar de tiempo en tiempo; --- -- 7.15 someter la Nave regularmente a los arqueos periódicos o de otra

índole que puedan ser requeridos para efectos de clasificación y, de ser así requerido por el Acreedor Hipotecario por escrito, suministrarle y conseguir que se le suministre al Acreedor Hipotecario copias de todos los informes de arqueo expedidos respecto a la misma; ----- 7.16 notificarle al Acreedor Hipotecario de inmediato por telefax de cualquier recomendación o requisito impuesto por la Sociedad de Clasificación, los Aseguradores o por cualquier otra autoridad competente que no fuera cumplido de acuerdo con sus puntos; ----- 7.17 darle al Acreedor Hipotecario preaviso razonable de cualquier encarenamiento propuesto o de cualquier arqueo sumergido de manera que el Acreedor Hipotecario (si así lo desea) pueda hacer arreglos para que un representante esté presente; ----- 7.18 autorizar a la Sociedad de Clasificación y a todas las demás autoridades reglamentarias para que le divulguen al Acreedor Hipotecario cualquier información o documentos solicitados por el Acreedor Hipotecario en relación con la clasificación, reparación, mantenimiento o navegabilidad de la Nave; ----- 7.19 cumplir en todo momento con todos los requisitos legales, que fueran impuestos por ley, reglamento, derecho consuetudinario o de otro modo y tener a bordo de la Nave como y cuando fuera legalmente requerido, certificados válidos que demuestren el cumplimiento con los mismos; ----- 7.20 sin perjuicio de la Cláusula 7.19, tomar todas las precauciones necesarias y apropiadas para impedir cualesquiera violaciones de la Ley de Abuso Antidrogas de 1986 de los Estados Unidos de América o cualquier ley similar aplicable a la Nave en cualquier jurisdicción en o a la cual la Nave fuera empleada o comerciara, o que fuera de otro modo aplicable a la Nave y/o al Armador y, si el Acreedor Hipotecario así lo requiere, celebrar un "Contrato de Iniciativa de Transportista" con el Servicio de Aduanas de los Estados Unidos y conseguir que dicho acuerdo (o cualquier acuerdo similar introducido en adelante por cualquier agencia de los Estados Unidos de América) sea





**REPUBLICA DE PANAMA**
**PAPEL NOTARIAL**

NOTARIA
PANAMA

**NOTARIA NOVENA DEL CIRCUITO DE PANAMA**

mantenido en pleno vigor y efecto por el Armador; ----- 7.21 cumplir con, y conseguir que el Administrador y todos los sirvientes y agentes del Armador y el Administrador cumplan con, el Código ISM, la Documentación del Código ISM, el Código ISPS, la Documentación del Código ISPS, todas las Leyes Ambientales y toda ley de cualquier estado o gobierno en relación con la Nave, incluyendo, sin limitación, requisitos relacionados con la tripulación, presentación de planes de respuesta a derrames de petróleo, designación de individuos calificados y que establezcan la responsabilidad financiera; ----- 7.22 tener o conseguir que el Administrador tenga toda la Documentación ISM y la Documentación del Código ISPS apropiada y suministrarle al Acreedor Hipotecario copias de la Documentación del Código ISM y la Documentación del Código ISPS pertinente debidamente emitidas al Armador, el Administrador y la Nave de conformidad con el Código ISM y el Código ISPS; ----- 7.23 mantener, o conseguir que se mantenga, a bordo de la Nave una copia de toda la Documentación del Código ISM y la Documentación del Código ISPS pertinente respectivamente; ----- 7.24 ejecutar y cancelar debidamente todos los deberes y obligaciones impuestos sobre el Armador conforme a cualquier fletamento, conocimiento de embarque u otro contrato relacionado con la Nave; ----- 7.25 no remover ni permitir la remoción de cualquier parte de la Nave o cualquier equipo perteneciente a la misma, no hacer ni permitir que se haga ninguna alteración en la estructura, tipo o velocidad de la Nave que reduzca materialmente el valor de la Nave (salvo que dicha remoción o alteración fuera requerida por disposición legal o por la Sociedad de Clasificación) sin el consentimiento escrito previo del Acreedor Hipotecario, el cual tendrá pleno poder para retener; ----- 7.26 en todo momento razonable y siempre que medie aviso razonable, permitir al Acreedor Hipotecario o a su representante autorizado acceso total y completo a la Nave para los efectos de inspeccionar el estado y la

condición de la Nave, y su carga y papeles o cualquier equipo perteneciente a la misma, y a solicitud escrita del Acreedor Hipotecario entregar para su inspección copias de cualesquiera y todos los contratos y documentos relacionados con la Nave o cualquier equipo perteneciente a la misma, estuvieran o no a bordo; ----- 7.27 mantener al Acreedor Hipotecario plenamente informado en cuanto al uso, el empleo y la posición de la Nave y suministrarle expeditamente al Acreedor Hipotecario información concerniente a la clasificación, condición y seguros de la Nave de tiempo en tiempo como y cuando así fuera requerido por escrito por el Acreedor Hipotecario; ----- 7.28 cuando así fuera solicitado por el Acreedor Hipotecario, nombrar y conseguir que dos (2) agentes marítimos de compraventa independientes fueran nombrados, designados por el Acreedor Hipotecario para hacer avalúos de la Nave sin ninguna inspección física y en base a una compra entre partes desinteresadas por un comprador dispuesto de un vendedor dispuesto y sin tomar en cuenta ningún contrato de fletamento; todos los costos y comisiones pagaderos en relación con dichos avalúos serán pagados por el Armador y el valor de la Nave será determinado tomando en cuenta el promedio de los avalúos antedichos; ----- 7.29 en caso de Adquisición Obligatoria de la Nave por cualquier Entidad Gubernamental, otorgar y conseguir el otorgamiento de cualquier cesión que el Acreedor Hipotecario solicite en relación con cualesquiera y todas las sumas que dicha Entidad Gubernamental sea responsable de pagar como compensación para dicha Nave o para su uso y, si es recibido por dicho Armador, pagar y conseguir el pago de dichas sumas inmediatamente al Acreedor Hipotecario; ----- 7.30 nombrar y garantizar que el Administrador siga nombrado como administrador de la Nave y no variar ni terminar este nombramiento sin el consentimiento escrito previo del Acreedor Hipotecario; ----- 7.31 otorgar cualquier documento o documentos adicionales requeridos por el Acreedor Hipotecario a fin de



**REPUBLICA DE PANAMA**
PAPEL NOTARIAL

NOTARIA PANAMA

REPUBLICA DE PANAMA

28.VII.07    B/0000400

P 302133

### NOTARIA NOVENA DEL CIRCUITO DE PANAMA

perfeccionar o completar la garantía creada por los Documentos de Garantía; ----- 7.32 otorgar y entregar al Acreedor Hipotecario los documentos de transferencia que el Acreedor Hipotecario pudiera requerir en caso de venta de la Nave de conformidad con cualquier poder para vender contenido en esta Hipoteca o que el Acreedor Hipotecario pudiera tener por ley; ----- 7.33 no emplear la Nave ni permitir su empleo en cualquier forma contraria a cualquier ley o reglamento en cualquier jurisdicción pertinente lo que incluye, pero no se limita a, el Código ISM y el Código ISPS; ----- 7.34 notificarle de inmediato al Acreedor Hipotecario por fax, confirmado de inmediato por carta, de: -- -- (i) cualquier siniestro respecto a la Nave que sea o tenga posibilidades de ser o convertirse en un Siniestro Mayor; ---- (ii) cualquier ocurrencia como resultado de la cual la Nave se haya convertido o que, con el transcurso del tiempo o de otro modo, pueda convertirse en Pérdida Total; ---- (iii) cualquier requisito o recomendación hecho por cualquier asegurador o sociedad de clasificación o por cualquier autoridad competente que no fuera cumplido de acuerdo con sus términos; ---- (iv) cualquier secuestro o detención de la Nave, cualquier ejercicio o presunto ejercicio de cualquier crédito sobre la Nave o cualquier equipo perteneciente a la misma o sus Utilidades o sus Seguros o cualquier requisición de la Nave para arriendo; ---- (v) cualquier encarcenamiento propuesto de la Nave; ---- (vi) cualquier Reclamo Ambiental hecho contra él o en relación con la Nave, o cualquier Incidente Ambiental; ---- (vii) cualquier reclamo por violación del Código ISM o del Código ISPS, sea hecho contra él y, en la medida que se percate de dicho reclamo, contra el Administrador o de otro modo en relación con la Nave; o ---- (viii) cualquier otro asunto, caso o incidente, real o amenazado cuyo efecto fuera o pudiera resultar en que el Código ISM o el Código ISPS, no fuera cumplido; ---- y notificar y conseguir que el Acreedor Hipotecario sea notificado por

escrito en forma regular y con los detalles que el Acreedor Hipotecario requiera de la respuesta del Armador o de cualquier otra persona a cualquiera de estos asuntos o cosas; ----- 7.35 cumplir y dar satisfacción a todos los requisitos y formalidades establecidos por la ley panameña para perfeccionar esta Hipoteca como un crédito preferido válido y exigible sobre la Nave y suministrarle al Acreedor Hipotecario de tiempo en tiempo las pruebas que el Acreedor Hipotecario requieran razonablemente para su satisfacción respecto al cumplimiento por el Armador con las estipulaciones de esta Cláusula y sin limitar la generalidad de lo anterior, mantener a bordo de la Nave una copia certificada de esta Hipoteca según lo requerido por ley y colocar y en todo momento y lugar conservar dicha copia certificada de esta Hipoteca y de cualquier cesión de esta Hipoteca (de ser así solicitado por cualquier cesionario) a bordo de la Nave con sus papeles, y hacer que cada dicha copia certificada y dichos papeles les sean mostrados a cualesquiera y todas las personas que tengan negocios con la Nave que pudieran dar lugar a cualquier crédito sobre la misma, que no sea un crédito para salarios de la tripulación y salvamento y a cualquier representante del Acreedor Hipotecario y colocar y mantener prominentemente en el Cuarto de Navegación y en el camarote del Capitán de la Nave un aviso enmarcado debidamente llenado impreso en letra corriente de un tamaño tal que el área de impresión cubra un espacio de no menos de seis pulgadas de ancho por nueve pulgadas de alto, que rece como sigue: --- "AVISO DE PRIMERA HIPOTECA NAVAL PREFERIDA --- Esta Nave es propiedad de **AMBIENT SHIPHOLDING CO.** de la República de las Islas de Marshall, y está sujeta a una Primera Hipoteca Preferida a favor de **LAIKI BANK (HELLAS) S.A.**, de conformidad con las estipulaciones del Capítulo V, Título IV del Libro Segundo del Código de Comercio de la República de Panamá y otras leyes pertinentes y de acuerdo también con los términos de dicha Hipoteca, una copia



**REPUBLICA DE PANAMA**
**PAPEL NOTARIAL**

**NOTARIA NOVENA DEL CIRCUITO DE PANAMA**

certificada de la cual reposa entre los papeles de la Nave. Por lo
tanto, ni el Armador ni el Capitán ni ningún dignatario o agente ni
ningún fletador de esta Nave ni ninguna otra persona sea cual fuere
tiene ningún poder, derecho o autoridad de ninguna clase para crear,
incurrir o permitir la imposición sobre esta Nave de cualesquiera
compromisos o gravámenes, excepto para salarios de la tripulación
acumulados por no más de tres (3) meses o salvamento"; y ----- 7.36
cumplir con todas las leyes, reglamentos, tratados y convenciones
aplicables al Armador y a la Nave y llevar en la Nave todos los
certificados y otros documentos que sean    de tiempo en tiempo
requeridos para evidenciar dicho cumplimiento. ----- 8. **PROTECCIÓN DE**
**LA GARANTÍA** ----- 8.01 El Acreedor Hipotecario, sin perjuicio de sus
demás derechos y poderes conforme al presente documento, tendrá el
derecho, pero sin estar bajo ningún deber en cualquier momento de tomar
las medidas que estime necesarias para los efectos de proteger la
garantía creada por los Documentos de Garantía y el Armador le pagará
al Acreedor Hipotecario al requerimiento todas las sumas pagadas por el
Acreedor Hipotecario en proporcionar dicha protección de la garantía
con intereses a la Tasa por Mora, desde la fecha de pago de dichas
sumas por el Acreedor Hipotecario hasta la fecha de amortización por el
Armador al Acreedor Hipotecario, ya bien antes o después de sentencia.
----- 8.02 Sin perjuicio de la generalidad de la Cláusula 8.01: ----
8.02.01 en caso de un incumplimiento en la ejecución de las
estipulaciones de la Cláusula 5 del presente documento, el Acreedor
Hipotecario tendrá el derecho a asegurar la Nave según lo estipulado en
la Cláusula 5 y a pagar cualesquiera primas o cuotas sin cancelar
entonces pendientes de pago; ---- 8.02.02 en caso de un incumplimiento
en la ejecución de las Cláusulas 7.13 y/o 7.14, el Acreedor Hipotecario
tendrá el derecho a realizar los arqueos y las reparaciones que estime
necesarios; ---- 8.02.03 en caso de un incumplimiento en la ejecución