CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Defendant,
SEA TRANSPORT CONTRACTORS LIMITED
366 Main Street
Port Washington, New York 110050
Telephone:    516-767-3600
Telefax:       516-767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
FAR EASTERN SHIPPING CO., PLC,                :
                                              :
                                              :
                    Plaintiff,                :      07 CV 9887 (PAC)
                                              :
     - against -                              :
                                              :
                                              :
SEA TRANSPORT CONTRACTORS LIMITED, :
MARACHART SHIPPING CO., LTD.,                 :
SWORD TRADING S.A., AMBIENT                   :
SHIPHOLDING CO., S.A., and                    :
TOUGH TRADER MARITIME PTE LTD.,               :
                                              :
                    Defendants.               :
-----------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANT
SEA TRANSPORT CONTRACTORS LIMITED'S
MOTION TO VACATE
<u>THE PROCESS OF MARITIME ATTACHMENT</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………………...………...…ii

LEGAL ARGUMENT…………………………………………….......................................1

    I.     PLAINTIFF'S CLAIMS ARE OVERSTATED BY AT LEAST
           TEN MILLIONS DOLLARS ($10,000,000.00)……………………..………1

    II.    PLAINTIFF'S REMAINING CLAIMS ARE NOT RIPE………………..2

CONCLUSION…………………………………….......................................................5

## LEGAL ARGUMENT

### POINT I

### PLAINTIFF'S CLAIMS ARE OVERSTATED BY AT LEAST TEN MILLION DOLLARS ($10,000,000.00)

Plaintiff Far Eastern Shipping Co. Plc. ("FESCO") in its Memorandum of Law in Opposition to the Motion by Sea Transport Contractors Inc. to Vacate Attachment ("Memo in Opp. to STC") argues that its pleadings are sufficient to withstand the motion by Defendant Sea Transport Contractors Inc. ("STC") to vacate the Process of Maritime Attachment in this action. *See*, Memo in Opp. to STC at 1. However, this argument misstates STC's motion. STC specifically stated in its Memorandum of Law in Support of Defendant Sea Transport Contractors Limited's Motion to Vacate the Process of Maritime Attachment ("STC Memo in Support") that "Defendant STC requests the Court to assume the allegations set forth in the Plaintiff's Amended Complaint, dated January 14, 2008, to be true." *See*, STC Memo in Support, page 1. Instead, FESCO implicitly admits that out of its exorbitant claims of $11,914,682.38, no more than claims for $1,913,402.30 are actually ripe. *See*, Memo of Law in Opp. at page 4.[1]

No explanation for the overly exorbitant sum sought is given. FESCO simply states that, since it has only succeeded in restraining $287,015.89, "the present attachments are not implicated by STC's motion." *See*, Memo in Opp. to STC, page 3. This is not a sufficient explanation for why STC should have a Process of Maritime Attachment issued by this Court in the amount of $11,914,682.38 in force against it in

---

[1] The $1,913,402.30 includes assumed interest of $274,439.00, estimated attorneys' fees in the amount of $100,000.00, both of which are clearly estimates for amounts that have not yet accrued. These additional amounts should not be added to the $1,538,963.30 which is the largest possible amount of ripe claims alleged by Plaintiff FESCO in this matter.

1

New York, the international world's banking center for U.S. dollars, particularly when most of the claims against it are not even ripe. Additionally, it should be noted by this Court that the weight of authority is, at a minimum, split with regard to it contingent indemnity claims. *See*, Great E. Shipping Co., LTD. v. Phoenix Shipping Corp., 2007 U.S. Dist. LEXIS 88911, *8 (S.D.N.Y. Dec. 4, 2007) (wherein the Court ordered a particular law firm, in cases "where the parties are governed by the Inter-Club New York Produce Exchange Agreement of 1996 and the law of England, in any application for *ex parte* relief based on a contingent indemnity claim, bring to the court's attention the split of authorities in the Southern District of New York concerning the viability of plaintiff's application for maritime attachment."). If, for no other reason than that the claims of Plaintiff have been greatly overstated by more than eight times their actual quantum, the Process of Maritime Attachment issued by this Court should be vacated.

## POINT II

### PLAINTIFF'S REMAINING CLAIMS ARE NOT RIPE

FESCO, in the first instance, relies on the case of Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd.. 485 F. Supp. 2d 399, 404 (S.D.N.Y. 2007) (summarizing split in case law regarding maritime indemnity claims). In Navlamar, however the plaintiff had been required to file a million dollar bank guarantee in the Aden Commercial Court. *See*, id. In the case at hand, however, FESCO states that while "the cargo interests on the mis-delivery claim have already commenced numerous suits against FESCO and have actively pursued security against FESCO ... these efforts of the cargo interests have thus far been thwarted." Memo of Law in Opp. to STC at pages 4 -5.

2

While it is beyond the purview of the memorandum to delve into the sufficiency of the cargo interests' claims against FESCO, it is noteworthy that no such claim has been successful.

Furthermore, FESCO relies on a line of English cases regarding claim accrual for purposes of determining whether a claim has been time barred (*See*, Telfair Shipping Corp. v. Intersea Carriers S.A. (The "Caroline P"), [1984] 2 Lloyd's Rep. 466 (issue was whether the plaintiff's claim was time barred), Bosma v. Larsen, [1966] 1 Lloyd's Rep. 22 (application of a time bar to a claim under a charterparty clause) *and* Cathiship S.A. v. Altanasuns Ltd. (The "Catherine Helen"), [1998] 2 Lloyd's Rep. 511 (holding that the claim was time barred).

The only English case relied on by FESCO that is not a time bar case is Total Liban S.A.L. v. Vitol Energy S.A., [1999] 2 Lloyd's Rep. 700 which held that, under the peculiar circumstances of that particular case it was not required that the party's damages be based upon a payment made at the time its claim was asserted for its cause of action to be "ripe". That result occurred because the Total Liban case involved an assignment of rights that would have made the case impossible for the plaintiff to pursue unless the court relaxed the need for ripeness. *See*, id. at page 705. In fact, Total Liban was not an indemnification case. The case involved an indemnitor, B, which lacked any funds to pay its indemnitee, C, prior to recovery from the wrongdoer, A. *See*, id. at 701. Therefore B assigned to C its right to recover from A. *See*, id. A then claimed to the court that C could not recover because C was standing in B's shoes, and B had not paid anything to C. *See*, id. Therefore the case was not whether an indemnitee could recover directly, but whether, standing in the shoes of the indemnitor, the cause of action was

3

barred because of the "general rule of English law that liability without payment [does] not constitute a recoverable loss." Id. at 704. In the non-indemnification case of Total Liban, the court found that the rule, often referred to as the "pay to be paid" rule, should not prevent recovery in such an unreasonable way. See, id. at 709. In this regard, the Total Liban court specifically stated that its decision was based on "encouraging sensible commercial arrangements which … involve the principal protagonists and minimize unnecessary legal proceedings involving intermediaries in the chain." See, id. at 705. These commercial arrangements are sensible in cases such as that which occurred in the Total Liban where an indemnitor could not attempt recovery because it could not afford to ("was impecunious"), but its indemnitor was not. See, id. at 705. The court in Total Liban clearly felt that such a sensible arrangement should not prevent recovery.

While attorneys for STC are not English barristers or solicitors, it would seem clear that, similar to American jurisprudence, English case law precedent can be limited to the peculiar facts and circumstances of a particular case. The Total Liban case is noticeably distinguishable on the facts from the case at hand, as are all the other time bar English cases cited by FESCO in its Memo of Law in Opp. to STC. In this case, the cargo interests, similar to "C" in the Total Liban case, directly sued FESCO, which is in a similar position to "A" in the Total Liban case. While none of these claims have succeeded and courts in Togo and Singapore have set aside these claims, one claim "remains the subject of appeal … to the Singapore Court of Appeal." See, Amended Complaint at ¶ 22. In this case, A (FESCO) now claims indemnification from STC, which is similar to "B" in the Total Liban case. However, unlike the "sensible commercial arrangement" in Total Liban which facilitated the suit between A and C, this

4

case is about trying to bring B (STC) into the dispute between A and C while no liability has yet determined in those cases and there is a substantial chance that C may, in fact, never be found liable to A. Distinct from the case at hand, in <u>Total Liban</u>, if A was liable to B, then B was liable to C, so it was sensible for B and C to arrange for C to sue A directly. Conversely, in the case at hand, FESCO, C, having been sued by the cargo interests, A, wants to bring in its indemnitor, STC or B, in order to ease its burden prematurely and without actually having been found liable to the cargo interests, A. Clearly <u>Total Liban</u>, or even the English time bar suits, do not provide support for FESCO's premature attempt to raise unripe claims and obtain security for them in New York.

Under these circumstances, FESCO has not met its burden of proof in this case of demonstrating that the Process of Maritime Attachment should not be vacated in whole or in part because it is not based upon an extant maritime claim under Rule B of the Supplemental Rules of the Federal Rules of Civil Procedure for Admiralty or Maritime Claims.

## CONCLUSION

Under these conditions, FESCO has not met its considerable burden under Supplemental Rule E(4)(f) of the Federal Rules of Civil Procedure of demonstrating to this Court that the Process of Maritime Attachment in this case should not be vacated because English law supports its claims. *See*, 29 James W.N. Moore, MOORE'S FEDERAL PRACTICE, § 7.05.04 [5] (3rd Ed. 2005). Furthermore, it is clear that Plaintiff's claims are not ripe in any amount greater than $1,538,963.30, and, therefore, at a minimum, the

5

Process of Maritime Attachment should be reduced accordingly, if not vacated in its entirety.

Dated: Port Washington, New York
       March 3, 2008

                                          CHALOS O'CONNOR & DUFFY, LLP
                                          Attorneys for Defendant
                                          SEA TRANSPORT CONTRACTORS, LTD.

By: _____
     Owen F. Duffy (OD-3144)
     George E. Murray (GM-4172)
     366 Main Street
     Port Washington, New York 11050
     Tel:    516-767-3600
     Telefax: 516-767-3605
     Email: ofd@codus-law.com